**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **WILBER ENSLEY, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17CV024** |
| | ) | |
| **CITY OF RICHMOND, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT**
**OF CITY OF RICHMOND'S MOTION TO DISMISS**

In this action five Plaintiffs sue the City of Richmond ("City") and nine individual Defendants related to the Plaintiffs' incarcerations for various drug and weapons crimes in 2009 and early 2012. All the Plaintiffs pled guilty to the crimes in question after being indicted or waiving indictment, following independent actions by prosecutors. But their arrest warrants were later found to be defective and the Plaintiffs' sentences were vacated, leading to shortened sentences for all of them.

However, in court filings referenced in the Complaint, the federal government confirmed that, based on their investigation, the probable cause information for at least three of the warrants was accurate, *and* was provided by a "reliable informant," though ones who were misidentified. Not content with their shortened sentences because of those mistakes, the Plaintiffs here sue the City and several Richmond Police Department ("RPD") supervisors for failing to stop Defendant Jason Norton from improperly preparing and executing those warrants. The Plaintiffs demand millions of dollars in damages for the time they spent in prison, for crimes they clearly committed and admitted to committing.

The Plaintiffs have characterized this as a "malicious prosecution" case because their claims would be time-barred under an unlawful arrest theory, provided that the date of the arrest accrues the claims here. But their malicious prosecution theory fails for three reasons: first, the indictments or waiver of indictment established probable cause. Second, those also break the causal connection between the arrests and the Plaintiffs' prison sentences, for which they blame only the City and RPD supervisors, no prosecutors. Third, there are no allegations that the Defendants misled or pressured the prosecutors, who acted independently. The fruit of the poisonous tree doctrine does not apply to civil proceedings. This undermines all the federal claims.

Under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978), the Plaintiffs allege that the City had an impermissible custom, or showed deliberate indifference, regarding their treatment of Norton and the confidential informant program. But the Complaint lacks adequate support for either theory. As for custom, it alleges only one clear, warrant-related incident by Norton, known to the City's policymaker prior to these arrests, for which Norton was disciplined by that policymaker.

With regard to indifference, the Complaint admits that the RPD reprimanded Norton not just once, but twice following internal investigations. The RPD also took steps to improve the informant program once they and federal authorities discovered disturbing patterns in Norton's warrants. This is the opposite of deliberate indifference.

Besides one *Monell* claim (Count IV), the only other claim against the City is for deprivation of liberty (Count VII), which is time barred or fails under the malicious prosecution theory. The court should dismiss both claims against the City with prejudice, and dismiss all the other federal claims.

# I. FACTUAL BACKGROUND

The City takes as true the factual allegations in the Amended Complaint solely because that is required under Rule 12. Many of the facts alleged in the Complaint concern issues with Norton not directly related to the Plaintiffs' injuries, or warrant practices not causally connected to those injuries. Only facts *prior* to these arrests, which are related to Norton's handling of warrants, are relevant under *Monell*.

Broadly speaking, the Plaintiff's primary allegations against Norton are that he lied and broke the law (Compl. ¶ 26), and the City is liable for not taking sufficient action against him through its named policymaker, former Police Chief Bryan Norwood (*id.* ¶ 149). The Plaintiffs begin by alleging that Norton improperly took money from informants without reporting it, and did not always arrest people when he should have. *Id.* ¶¶ 28-34. But the only clear allegations about Norton that involved Norwood are from two reprimands he issued to Norton on March 24, 2011. *Id.* ¶¶ 35, 37. The first concerned his failure to arrest someone seized with drugs, contrary to arrest procedures. *Id.* ¶ 35. Only the second one concerned Norton's work with warrants. More specifically, the second reprimand concerned (1) inconsistent signatures on N-10 forms needed to pay confidential informants, and (2) Norton's listing the name of an informant who was not listed for that July 2010 case. *Id.* ¶¶ 37, 123.

After discussing those two reprimands, the Plaintiffs list other times when Norton was allegedly dishonest about missing a court date in July 2012 (*id.* ¶ 38), exaggerated about his field work in November 2012 (*id.* ¶ 39), made up an excuse for missing a training exercise in December 2012 (*id.* ¶ 40), and had another incident involving a missed court date in February 2013 (*id.* ¶ 41), and allegedly drank too much in March

2013 (*id.* ¶ 42). But all these other incidents occurred *after* the last arrest here, which was in February 2012. Compl. ¶ 109. Contemporaneous or subsequent conduct cannot provide notice for a constitutional violation. *See Connick v. Thompson*, 563 U.S. 51, 63, n.7 (2011)(citation omitted); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)(conduct occurring after alleged violation could not cause that violation).

Moreover, these scattered accusations, not directly related to Plaintiffs alleged injuries, are like the numerous accusations leveled against a police department in *Carter v. Morris*, 164 F.3d 215, 218-219 (4th Cir. 1999), where the Fourth Circuit found that the plaintiff's shot-gun allegations lacked the "close fit" to her own injuries needed to establish an unconstitutional custom under *Monell*. Just because Norton may or may not have made inaccurate statements about missing a court date, or missing training (after these arrests, no less), does not mean he would commit fraud on a warrant.

The Plaintiffs then detail a problem the RPD allegedly had with signatures on N-10 forms used for paying informants, namely that RPD officers regularly claimed to have witnessed payments that, in fact, they did not. Compl. ¶¶ 55-57, 70. Even if true, the Plaintiffs fail to show how *that* practice directly affected *their* sentences. The Plaintiffs also allege another problem specific to Norton, namely his inaccurate descriptions of informant "resumes" (*id.* ¶¶ 61-64). But that was discovered by the RPD during the investigations that began in mid-to-late 2012, after the last arrest at issue here.

The Complaint then details the arrest, indictment, and guilty pleas of each of the Plaintiffs, Wilber Ensley (*id.* ¶¶ 65-69), Covey Andrews (*id.* ¶¶ 81-89), Shamar Archer (*id.* ¶¶ 90-102), Deunte Humphries and Jamar Gilliam (*id.* ¶¶ 103-111). Those paragraphs include issues related to each of their arrest warrants.

The Complaint describes how in mid-2012, federal prosecutors "noticed irregularities in Norton's affidavits in support of search warrants." *Id.* ¶ 77. This led to a federal investigation related to Norton's warrants which was concluded in the spring of 2015. *Id.* It is unclear why this took nearly three years. It may be telling that no federal charges were ever brought against Norton following that investigation.

Very importantly, in August 2012 the RPD assigned Defendant Brian Corrigan the job of examining and improving the department's confidential informant program. *Id.* ¶ 131. Once the federal prosecutors and the RPD saw the troubling pattern in Norton's warrants, they began to investigate and take steps to address them. These federal and RPD efforts from mid-to-late 2012 came after all of the arrests at issue here, which occurred in 2009 and in February 2012. *Id.* ¶¶ 65, 87, 99, 109.

Here, the court should pay careful attention to the leap made in the Complaint with regard to this reprimand. At the end of paragraph 123, the Complaint alleges that: "Thus, as of March 2011, the RPD knew of Norton's involvement in forged signatures on N-10 forms, *and thus knew that Norton had likely lied about his sources in applying for warrants*" (emphasis added). First, this paragraph allegedly quotes an internal investigation report stating that signatures on two N-10 forms "'did not match'." That is not the same as concluding that one was "forged."

Second, the first part of this sentence does not lead to the conclusory allegation in the second part. Just because one or more RPD supervisors knew of this reprimand, and so knew that Norton may have been improperly completing N-10 forms, and that he listed an unregistered informant, does not mean they knew he was lying about sources in other warrant applications. The court should not accept that conclusion. Nor should the

court accept the conclusion that Norton's warrant errors were anything more than careless. Court documents cited below show that the mistakes were simply careless.

In paragraph 124 the Complaint again makes the conclusory allegation that "Defendant Norwood and other [unidentified] Supervisory Defendants were aware or should have been aware" of the conduct behind Norton's other March 2011 reprimand, for using an unregistered informant in 2009. Defendant Norwood may have signed off on this reprimand, but the Plaintiffs fail to draw a clear, direct link between this non-warrant reprimand and their injuries.

The Complaint then makes another conclusory statement that this effort "strongly suggests that RPD leadership, including certain [unnamed] Supervisory Defendants," knew or should have known about recordkeeping problems with the informant program. *Id.* ¶ 134. That is speculation, and nowhere is it alleged that policymaker Norwood knew of that problem prior to 2012. Once he did, he assigned Brian Corrigan the task of addressing those needs. As discussed below, finding gaps or problems with administrative policies is not sufficient to establish municipal liability.

Only two Counts are directed at the City: Count IV, where Bryan Norwood is identified as the City's policymaker and the City is accused of violating the standards under *Monell*, and Count VII for deprivation of liberty. For the reasons detailed below, both Counts should be dismissed, along with the punitive damage claim against the City.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court accepts all the properly pled allegations as true and construes all facts in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 12(b)(6); *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504 (4th Cir. 1999). But a court "need not

accept as true mere legal conclusions couched as factual allegations." *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted). A court may consider matters on the public record without converting the motion to one for summary judgment. *Papasan*, 478 U.S. at 286 n.1. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion to dismiss the complaint…not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

### III. ARGUMENT

**A. The Malicious Prosecution Basis Is Undermined By The Intervening Indictments Or Waiver Of Indictment; And Nowhere Do The Plaintiffs Allege Defendant Involvement in Those Prosecutorial Proceedings.**

#### 1. The Plaintiffs' Statute Of Limitation Problem.

It is first important to ascertain precisely what cause of action the Plaintiffs are alleging. As the court knows, federal courts borrow the state's limitation period for personal injury torts for § 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007)(citations omitted). In Virginia, the statute of limitations for personal injuries is two years. Va. Code § 8.01-243. But the question of when a § 1983 claim *accrues* is a

question of federal law. *Wallace*, 549 U.S. at 388. A § 1983 claim accrues when the Plaintiff has "a complete and present cause of action." *Id.*

Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. *Miller v. Prince George's County*, 475 F.3d 621 (2007). For such claims, the Fourth Circuit takes the position established by Justice Scalia in a footnote in *Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 (1994), that claims challenging an unlawful search "do not necessarily imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of *Heck*. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015). Consequently, the cause of action accrues when the Plaintiff "knows or has reason to know of his injury." *Wallace*, 549 U.S at 387; *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 389 (4th Cir. 2014)(citing *Wallace, id.*).

As a preliminary matter, and as set forth in the Memorandum of Law filed for Defendant Norwood, the Plaintiffs do not appear to have alleged facts to establish standing under the Fourth Amendment, to show they had an expectation of privacy in the locations of the searches. *See Rakas v. Illinois*, 439 U.S. 128, 140-50 (1978). Even if they do allege facts to establish standing, any Fourth Amendment claim is time-barred.

Both this court and the Fourth Circuit hold that a plaintiff has notice of a potential § 1983 claim at the time of a search and seizure. *See, e.g., Smith v. McCarthy,* 349 F. App'x 851, 857 (4th Cir. 2009); *Craddock v. Fisher,* Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015). These cases and others cited by other Defendants show that in the Fourth Circuit, § 1983 claims alleging an illegal search and seizure accrue at the time of the search, arrest or seizure. Here, that would mean all the claims are time-barred since the arrests occurred in 2009 and February 2012.

That is when the Plaintiffs, either questioning their arrests or Norton himself, could have challenged the warrants to test the information in them.[1] Consequently, any search and seizure claim is time-barred. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)(dismissing § 1983 suit filed more than two years after search).

To avoid this problem, the Plaintiffs attempt to make out a malicious prosecution basis for their claims. For those a plaintiff must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)(citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). The key inquiry is to determine at what point each plaintiff was seized "pursuant to legal process," and whether or not criminal proceedings were "terminated" in the Plaintiffs favor.

The Complaint and criminal documents referenced in it yield the following:

Wilbur Ensley: He was arrested on January 20, 2009, contemporaneous with the execution of the search warrant. Compl. ¶ 65. On April 13, 2009. Officers found contraband at his home. *Id.* ¶ 74. He pled guilty in federal court to possessing drugs with the intent to distribute, and to possession of a firearm. Compl. ¶ 76; ECF 3:09-cr-00032-HEH-DJN, Doc. 14, p.2. Before pleading guilty he was duly indicted by a grand jury. *Id.*, Doc. 7. On or about April 5, 2015, this court vacated Ensley's sentence and he was released from prison. Compl. ¶ 80.

---

[1] Alternatively, the very latest date the Plaintiffs knew or had reason to know of their injuries was when they moved to vacate their sentences. This would still leave Ensley's, Andrews', and Archer's claims time-barred: they moved to vacate in 2014. Compl. ¶¶ 78, 88, 101. Under this alternative theory, discovery would be needed to determine whether Humphries' and Gilliam's claims are time-barred: the Commonwealth moved to vacate their sentences in July 2015, but they may have known about these warrant issues earlier.

Covey Andrews: He was arrested on September 11, 2009, contemporaneous with the execution of the search warrant, where contraband was "allegedly" discovered. Compl. ¶ 87. On October 19, 2009, the U.S. Government indicted him on federal charges. *Id.* On December 22, 2009, April 13, 2009, Andrews pled guilty to possession of heroin with the intent to distribute, and to possession of a firearm in furtherance of a drug crime. *Id.*; ECF 3:09-cr-00368-HEH-DJN, Doc. 13, p.1. On or about April 1, 2015, this court vacated his sentence and he was released from prison. Compl. ¶ 89.

Shamar Archer: He was arrested on October 9, 2009, under a search warrant. Compl. ¶ 99. Archer waived indictment and pled guilty to possession of cocaine with intent to distribute and possession of ammunition by a felon. ECF 3:09-cr-00436-HEH-DJN, Doc. 17, p.1. On or about April 2, 2015, this court vacated his sentence and he was released from prison. Compl. ¶ 102.

Deunte Humphries: He was arrested on February 24, 2012, under a search warrant. Compl. ¶ 109. On August 6, 2012, he was indicted on drug charges in two state court criminal actions. *See* EXHIBITS A and B. On September 28, 2012, he pled guilty to multiple drug charges. Compl. ¶ 110. On November 19, 2012, he was sentenced to 14 months in jail. *Id*. After problems were discovered with the warrant Norton obtained in that case, on August 3, 2015, a circuit court judge vacated Humphries' two convictions and dismissed those indictments.[2] Compl. ¶ 111; EXHIBIT C.

---

[2] The City maintains that this order, and the one vacating Plaintiff Gilliam's sentence, may be void because they were entered well after 21 days following the initial sentencing orders. *See Locklear v. Commonwealth,* 46 Va. App. 488 (2005)(interpreting Va. Sup. Ct. R. 1:1). If these latest orders are void, Humphries and Gilliam would be unable to meet the "favorable termination" requirement for malicious prosecution.

Jamar Gilliam: He was also arrested sometime between February 23 and 24, 2012, under a search warrant. Compl. ¶ 109. On August 6, 2012, he was indicted on drug charges in two state court criminal actions. *See* EXHIBITS D and E. He pled guilty in to drug charges on October 2, 2013. Compl. ¶ 110. On November 6, 2013, he was sentenced to 24 months in jail under a plea agreement. Compl. ¶ 110. On September 16, 2015, a circuit court judge vacated his sentences and dismissed his indictments. EXHIBIT F.

As to each Plaintiff, there are three possible accrual dates for their cause of action: (1) the date of the search and arrest, (2) the date of their indictments, or (3) the date when their criminal proceedings terminated in their favor. For the first two (whether couched as an unlawful search, arrest, or seizure), the two year statute of limitations has expired.

The Plaintiffs focus entirely on alleging that Defendant Norton falsified search warrant affidavits and, conducted illegal searches, which were not supported by probable cause. Because the entire Complaint focuses on whether the warrants (and not the subsequent indictments) were supported by probable cause, *all of the Plaintiff's claims, no matter how couched, are really just § 1983 claims alleging unlawful search and seizure*. To the extent the court rules that any such claims based upon illegal search are now time-barred, the Plaintiffs' claims survive only under a malicious prosecution theory, which also fails for the reasons stated below.

## 2. The Malicious Prosecution Theory Fails.

Because the only possible cause of action is under a malicious prosecution theory, the Plaintiffs bear a heavy additional burden in this case. As explained above, to avoid being time-barred, each Plaintiff must relate his claim to the indictment upon which his

prosecution and incarceration was based, because it is those charges that were subsequently vacated by the federal and state courts.

Even if this court finds that one or more of the Plaintiffs can meet the favorable termination prong, no Plaintiff has pled or can plausibly plead any facts establishing a malicious prosecution claim because each of those indictments was supported by probable cause as a matter of law. Even if the indictments were not supported by probable cause, the actions of prosecutors (and the Plaintiffs through guilty pleas) broke the causal chain between the Defendants and any harm to the Plaintiffs.

The Fourth Circuit has stated that "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Evans v. Chalmers*, 703 F.3d at 648. Because § 1983 constitutional torts "require a demonstration of both but-for and proximate causation" *id.* at 674 (citing *Murray v. Earle*, 405 F.3d 278, 289-90 (5ᵗʰ Cir. 2005) and *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)), "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" *id*. (citation omitted). Such intervening acts "of other participants in the criminal justice system' insulate a police officer from liability," except in certain circumstances not present here.[3] *Id.*

_____

[3] The three "circumstances" that override the superseding cause by "other participants" are: "when [an officer] lied to or misled the prosecutor…failed to disclose exculpatory evidence to the prosecutor….or unduly pressured the prosecutor to seek the indictment." *Evans* at 647-48 (internal citations omitted). The Court in *Evans* stated this rule as "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Id.* at 648 (internal citation omitted). There is no such evidence alleged here.

The Fourth Circuit has also recognized that "[it] has long since been settled by the Supreme Court that 'an indictment "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the existence of probable cause.'" *Durham v. Horner*, 690 F. 3d 183, 189 (2012)(citation omitted). The *Durham* court noted, however, that "notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" *Id*. (internal citation omitted). As in *Durham*, there is no allegation here that Norton testified before any of the grand juries. (By information and belief, that is because he did not.) Therefore, as in *Durham*, "the grand jury's probable cause determination and its [ ] indictments were the proximate cause of the Plaintiff's arrest and detention." *Id*.

In addition, each indictment was justified by the presences of drugs or weapons. Court documents in the underlying criminal cases confirm this, including the U.S. Government's Supplemental Response to Ensley's Motion to Vacate. It confirmed that Ensley possessed cocaine with intent to distribute, cocaine base, drug packaging materials, digital scales, a firearm, ammunition, and $6,530 in cash. It also states that the FBI investigation "has made clear . . . *that the probable cause information in the affidavit in this case is accurate, and was provided by a reliable informant*" (emphasis added), though one who was unfortunately misidentified.[4] The Government made this same statement in the Andrews and Archer criminal cases as well.[5] Perhaps this explains why Norton was not prosecuted, and shows why these Plaintiffs deserve no recovery.

---

[4] ECF 3:09-cr-00032-HEH-DJN, Doc. 29, p.2.
[5] ECF 3:09-cr-00368-HEH-DJN, Doc. 47, p.2 (Andrews); ECF 3:09-cr-00436-HEH-DJN, Doc. 35, p.2 (Archer).

Whether or not evidence was obtained lawfully goes to whether the search was lawful, and whether the initial seizure was lawful, *not* whether the indictments were supported by probable cause. Unlawfully obtained evidence can still support probable cause. *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D.V.A. 2009)("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")(quoting *Townes*, 176 F.3d at 148-49); *Sommerville v. Dobson*, 2011 U.S. Dist. LEXIS 156380, *36 (E.D.V.A. 2011)(same).

Again, any claim implicating Officer Norton and others, including the City, for knowingly obtaining a tainted search or arrest warrant, is time-barred. A case in point is *Miller v. Prince George's County*, 475 F.3d 621 (2007), where the plaintiff's unfavorable situation was remedied before formal prosecution began. Here, not only were the charges pursued based upon indictments (with intervening actions by prosecutors and grand juries) or a waiver of indictment, but there were intervening actions by the Plaintiffs themselves through guilty pleas. Other than one perfunctory, three-sentence motion to suppress that was denied (ECF 3:09-cr-00368-HEH-DJN, Doc. 4), no Plaintiff contested the presences of drugs, weapons, or both. If they were innocent, they would have known at the outset that there were deficiencies in the warrant applications.

Here, *Cramer v. Crutchfield* is again relevant, where a truck driver sued a police officer for unlawful search and seizure and malicious prosecution more than two years after his arrest. The Fourth Circuit affirmed the district court's dismissal, holding that Virginia's tolling statute (Virginia Code § 8.01-229) provided no basis to delay accrual of the plaintiff's claim past the date of the search. The *Cramer* court looked at the malicious prosecution claim as a common law tort and found it to be meritless because, as a matter

of law, a magistrate's finding and a court conviction both established probable cause. *Id.* 945-46. Applying this holding here should lead to dismissal, where probable cause was established as a matter of law.

As noted by Defendants Gleason, Sipple, and Russel, the Plaintiffs' demand for relief runs counter to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes,* 176 F.3d at 148. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.*; *Ware*, 652 F. Supp. 2d at 706 (noting that the plaintiff obtained an enormous benefit prior to filing suit, as the Commonwealth's Attorney elected not to pursue charges against him).

**B. There Is Neither Proximate Cause Nor Damages Under Any Theory.**

As noted above, the fruit of the poisonous tree doctrine does not apply to civil proceedings like this one. *Ware*, 652 F. Supp. 2d at 705 ("the fruit of the poisonous tree doctrine is not available to assist a section 1983 claimant.")(quoting *Townes*, 176 F.3d at 148-49). Without this doctrine, an unlawful search imposes no liability on an investigating police officer for a subsequent arrest. *Id.* Given that, there can be no liability for any of the Defendants. The Plaintiffs cannot use this theory to claim causation because of careless mistakes Norton made on their warrants. The intervening indictments or waiver of indictments and the Plaintiffs' own guilty pleas further sever the causal chain between the warrants and their sentences. Given these facts and law, all the

claims should be dismissed with prejudice as to all the Defendants. Furthermore, and for the same reasons, no Plaintiff can say that he was damaged by the seizure of contraband.

### C. The Plaintiffs Fail To State A Claim Against The City Under *Monell*.

Because there is no actionable constitutional violation here, there is no basis for municipal liability. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999)(no underlying constitutional violation, no municipal liability). However, if the court finds sufficient allegations to form the basis for a constitutional violation, there are insufficient facts alleged to establish municipal liability under *Monell.* At the outset, the City notes that the Complaint has no allegations about any City policy or custom for malicious prosecution.

To establish a claim under *Monell*, a plaintiff must show a custom or practice either through (1) an express policy, such as an ordinance or regulation; (2) the affirmative decisions of policy makers, (3) omissions by such policy makers showing "manifest deliberate indifference to the rights of citizens," or (4) a custom that is "'so 'persistent and widespread' and 'so permanent and well settled as to constitute "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4ᵗʰ Cir. 1999)(internal citations omitted). Here there are no allegations of a formal policy or affirmative act by former Police Chief Norwood, the City's policymaker,[6] leading to the

---

[6] A "policymaker" is someone with "the responsibility and authority to implement final municipal policy with respect to a particular course of action." *Riddick v. School Bd. of the City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000)(emphasis deleted). A local government can be liable for a decision made by an individual "whose edicts or acts may fairly be said to represent official policy." *Id.* But simply "going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Policymaking authority invoking § 1983 liability is "authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). Whether an official has policymaking authority is a question

Plaintiffs' injuries. Consequently, the Plaintiffs must allege facts showing either an omission that rises to the level of deliberate indifference, or a widespread and permanent custom with the "force of law" related directly to their injuries.

A plaintiff must also plead that a municipality's policy or custom actually caused the constitutional violation. *Monell*, 436 U.S. at 658. Merely pleading "the magic words of causation" is not enough. *Brown v. Mitchell*, 308 F. Supp.2d 682, 694 (E.D. Va. 2004). A court need not accept conclusory statements about the legal effect of alleged facts. *Id.* Listing a myriad of wrongs with a person or department is insufficient: there must be a precise causal-link between them and a plaintiff's injury. *Carter*, 164 F.3d at 216.

More specifically, prior alleged constitutional violations must be very similar to the one causing a plaintiff's injury. In *Connick v. Thompson*, the Supreme Court considered a case where a former prisoner sued a district attorney for failure to disclose exculpatory blood evidence that eventually led to the plaintiff being found innocent. The Court held that four prior *Brady* violations by attorneys in that office did not adequate notice about the specific *Brady* violation at issue there, which concerned blood sample lab evidence. 563 U.S. at 62-63. That is why only warrant-related allegations matter here.

---

of state law. *Praprotnik,* 485 U.S. at 124. State law authorizes the City to form a police force and provides that a locality's chief law-enforcement officer is its chief of police. Va. Code § 15.2-1701. Under City Code §§ 2-271 and 2-272, respectively, the Chief of Police has general management and control of the RPD and is responsible for the "discipline" and "good conduct" of the department. The Complaint appropriately identifies former Chief Norwood as a policymaker. Compl. ¶ 149.

### 1. No Omission Rising To Deliberate Indifference.

The Fourth Circuit has also warned that a plaintiff's theory is most likely to fall within the forbidden realm of *respondeat superior* liability when alleging "municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom." *Id.* at 218 (citation omitted). In such cases, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id.*

Under this standard the Plaintiffs' allegations fail to show deliberate indifference, either regarding Norton or informant practices more broadly. As for Norton, Chief Norwood showed the opposite of deliberate indifference: he approved two disciplinary actions against Norton after internal investigations, though only one of which concerned his work with warrants. In *Carter*, a police department's investigation of a prior incident showed the opposite of deliberate indifference. *Id.* at 219-220. The same is true here.

As for informant polices, Norwood again showed the opposite of deliberate indifference by having Brian Corrigan examine and improve the confidential informant program once the problems associated with Norton came to light in 2012. Compl. ¶¶ 121-123. The Plaintiffs even characterize that effort as one designed to "clean up the informant program." Compl. ¶ 134. The City should not be found liable for errors and omissions that, when realized by federal authorities and the RPD, were acted upon. Allegations about administrative problems at the RPD are not enough to establish liability. *See Rizzo v. Goode*, 423 U.S. 362, 370-377 (1976)(allegation of administrative negligence failed to state a claim under § 1983)(cited in *Polk County v. Dodson*, 454 U.S.

312, 326 (1981) for the proposition that general allegations of administrative negligence fail to state a constitutional claim cognizable under § 1983).

The attempts to point to several problems Norton allegedly had, and of insufficient responses (the Plaintiffs claim) by RPD supervisors, are unavailing under Fourth Circuit precedent. As noted, much of the conduct alleged in the Complaint came after the last arrest. Compl. ¶¶ 38-42. The allegations about Norton's pre-arrest conduct include rumors and hearsay (*id.* ¶¶ 113-120), and statements obtained *after* these arrests, during the federal investigation about pre-arrest incidents (*id.* ¶¶ 27-34), and the patterns spotted later in 2012 regarding Norton's informant resumes (*id.* ¶¶ 61, 71, 95-96). *His two March 2011 reprimands are the only incidents clearly known to Norwood prior to the last arrest in February 2012. Id. ¶¶ 35, 37.*

Norwood's decision to reprimand, rather than fire Norton, is not actionable under Fourth Circuit precedent. One case that is illustrative is *Riddick v. School Bd.*, 238 F.3d 518, 524 (4th Cir. 2000), where the plaintiffs sued when they discovered that a teacher was secretly videotaping young girls in a locker room. The teacher had been accused of inappropriate videotaping girls before but the defendant school board did not find that earlier incident inappropriate. *Id.* at 520-521. The Fourth Circuit found that the earlier incident, and the school board's failure to discipline or terminate, even if negligent, was not enough to establish deliberate indifference. *Id.* at 526.

The court in *Riddick* looked at similar cases where police officers or teachers were accused of wrong doing and were later sued for similar wrong doing. In *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997), a county was sued over a police officer's sexual

assault when it was discovered that the officer was disciplined, but not fired, for an earlier alleged assault. The court in *Wellhem* stated:

> With the benefit of hindsight, [the decisions of the County] were clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official County "policy."

104 F.3d at 627. This holding is relevant here, since Norton was reprimanded twice by the City's policymaker, but not fired before the arrests took place.

The *Riddick* court also cited *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993), where a school teacher was earlier accused of child molestation and was disciplined, but not fired. The court found that the earlier action by the school district may have been negligent, but it was not enough to establish deliberate indifference. The *Riddick* court also cited *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir, 1998), where the Fifth Circuit found no deliberate indifference even where a school principal made a "tragic error in judgment" about earlier alleged child molestation by a teacher, who later molested the plaintiffs. Here Norwood was disciplining Norton as allegations about him were confirmed through investigations. Norwood's decision only to discipline Norton did not show deliberate indifference.

### 2. There Was No Actionable Municipal Custom.

As the Fourth Circuit has stated, "a municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.'" *Riddick*, 238 F.3d at 524 (citation omitted)(emphasis in original).

The facts above show that there was no deliberate, "widespread and permanent" practice forming an actionable municipal custom. *Carter,* 164 F.3d at 220. The allegations show that the N-10, informant resume, and record keeping issues were addressed by policymaker Norwood by assigning Brian Corrigan to address those and other issues within the confidential informant program. Compl. ¶ 131-134. The same is true of the alleged record keeping problems: it might show negligence at some level, but not a deliberate, permanent practice under *Monell.*

The one warrant practice that was allegedly "deliberate" (by subordinates, not Norwood) was the alleged failure of some RPD officers to properly witness payments on N-10 forms. Although this features prominently in the Complaint (*id.* ¶¶ 55-58, 69-70, 73, 84-85, 92, 105, 123, 128-130), there is also no clear nexus between that problem and the Plaintiffs' prison sentences. Without that nexus even constitutional violations, let alone procedural ones, cannot support a claim. And nowhere does the Complaint allege (nor could it) that the City deliberately drove this N-10 practice.

In *Carter v. Morris,* the plaintiff pointed to a number of incidents involving a police department to show an unconstitutional policy or custom under *Monell.* The plaintiff pointed to "prior instances of excessive force and the discouragement of citizen complaints," which lacked the clear, direct connection to her own alleged injuries. 164 F.3d at 216-217, 219. The Fourth Circuit affirmed the dismissal of that case, holding that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury, or that it was the moving force behind her deprivation." *Id.* at 281. Applying that holding here also supports dismissal of the *Monell* claim.

In *Jenkins v. Woody*, 2015 U.S. Dist. LEXIS 166569 (E.D. Va. Dec. 11, 2015), this court dismissed claims where a plaintiff sued a medical services provider, claiming that its policies led to the death of an inmate in the Richmond City Jail. The plaintiff claimed that the care provider failed to improve its care policies, do adequate case investigations, do root cause analyses and, under *Monell*, that it failed to adequately investigate "prior negative patient outcomes." *Id.* *11-12, 17. This court properly found that those allegations of causation were conclusory and refused to infer causal links. *Id.* * 20. The same is true of the many conclusory allegations here.

With regard to the informant program, the Plaintiffs' allegations about N-10 forms and poor record keeping hit the barrier noted in *Jenkins*, namely that "'municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be means by which [a] particular [constitutional deprivation] . . . might have been averted.'" *Id.* *16 (citing *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)). That is precisely what the Plaintiffs try to do here, using 20-20 hindsight to impose liability on the City. As noted above, allegations about administrative problems are not enough to establish liability. *Rizzo*, 423 U.S. at 370-377.

### D. The Facts Alleged Do Not Support A "Deprivation of Liberty" Claim Under Section 1983.

"[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996). As noted above, the claims alleging "deprivation of liberty" are barred by the statute of limitations. Even assuming the Plaintiffs can make such a claim here, it would have to be a claim grounded in the "fabrication of evidence" recognized in *Washington v. Wilmore*, 407 F.3d 274 (2005).

But that claim would also be time-barred because any fabrication is wrapped into the warrant application, which produced incriminating evidence establishing probable cause. The only "deprivation of liberty" claim here that is not time barred is one alleging malicious prosecution, as defined in the Fourth Circuit. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000). That theory fails as explained above. There is no proper Fourteenth Amendment claim under this theory. *See, e.g., Cooper v. Lippa*, 2012 U.S. Dist. LEXIS 56822, *13 (E.D. Va. Apr. 23, 2012)(concerning state criminal charges).

### D. The Punitive Damage Claim against the City Must Be Dismissed.

The City asks the Court to dismiss the punitive damage request made by the Plaintiffs against the City. The Supreme Court of the United States has stated that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, the Court should dismiss the Plaintiffs' request for punitive damages against the City.

## IV. CONCLUSION

For the reasons stated above all claims should be dismissed with prejudice.

Respectfully Submitted,

_____/s/_____
Stephen M. Hall, Esquire (VSB # 44132)
Deputy City Attorney
Richard E. Hill, Jr., Esquire (VSB #44164)
Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia  23219
Telephone:  (804) 646-7953
Facsimile:  (804) 646-79396
Email:  Stephen.Hall@richmondgov.com
Email:  Richard.E.Hill@richmondgov.com
*Counsel for Defendant City of Richmond*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____/s/ _____
Stephen M. Hall (VSB #44132)
Deputy City Attorney
900 East Broad Street, Room 400
Richmond, VA 23219
Telephone: (804) 646-7953
Facsimile: (804) 646-7939
Stephen.hall@richmondgov.com
*Counsel for Defendant City of Richmond*