UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILBER ENSLEY, *et al.*,

    Plaintiffs,

v.                                                   Civil Action No. 3:17CV024

CITY OF RICHMOND, VIRGINIA, *et al.*,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GLEASON, SIPPLE, AND RUSSELL'S RULE 12(b)(6) MOTION TO DISMISS

Defendants Christopher Gleason ("Gleason"), Charles Sipple ("Sipple"), and Roger Russell ("Russell") (collectively the "Defendants"), by counsel, submit the following Memorandum of Law in Support of their Rule 12(b)(6 ) Motion to Dismiss.

## I. INTRODUCTION

Plaintiffs' lengthy and rambling Complaint fails to establish any viable claim against the Defendants. The five Plaintiffs, Wilber Ensley ("Ensley"), Covey Andrews ("Andrews"), Shamar Archer ("Archer"), Deunte Humphries ("Humphries"), and Jamar Gilliam ("Gilliam"), who pled guilty to narcotic offenses, claim damages for wrongful imprisonment because of search warrants procured by Detective Jason Norton ("Norton"). All the counts against Defendants Gleason, Sipple and Russell are vague as to Plaintiffs' causes of action. However, the Plaintiffs insist in the factual allegations that every stage of their criminal proceedings was somehow unlawful, beginning with the searches that led to their arrests.

Plaintiffs fail to allege sufficient facts to establish their standing to challenge the searches in question. They are required to show a legitimate expectation of privacy in the places searched

and have not done so.  Even if the Plaintiffs do have standing and the searches were unlawful, they were not the proximate cause of the Plaintiffs' imprisonment.  Plaintiffs do not claim damages resulting from the searches themselves; and, thus, they fail to state a plausible claim for relief.

Furthermore, any claim arising from the searches is barred by the two-year statute of limitations governing Section 1983 suits in Virginia.  Courts within the Fourth Circuit, and beyond, have held that a tort action arising from a search or seizure accrues when the incident occurred.

Even if Plaintiffs' claims were not time-barred, the Complaint fails to establish the basic elements of a Section 1983 claim against a supervisor.  Plaintiffs do not allege that the Defendants personally violated their constitutional rights in any way.  Further, the Complaint does not identify the constitutional violation committed by Norton that the Defendants failed to rectify.  Assuming this violation relates to the warrants in question, Plaintiffs do not allege sufficient facts to show that prior to their arrests, the Defendants knew or should have known of any misconduct by Norton concerning search warrants.  In an attempt to establish knowledge, Plaintiffs rely on gossip within the Richmond Police Department (the "Department") and examples of Norton's behavior that are entirely unrelated to the warrants in question, and the majority of which occurred after the Plaintiffs' arrests.  These allegations do not support Plaintiffs' claims, and the Complaint fails to establish a causal link exists between any action by the Defendants and the Plaintiffs' alleged injuries.

Finally, the Defendants are entitled to qualified immunity as a matter of law.  The Complaint does not allege sufficient facts to show that a reasonable law enforcement officer

would have known that any action taken by Gleason, Sipple, or Russell violated the Plaintiffs' constitutional rights.

Plaintiffs have not pled any plausible claim for relief to survive a motion to dismiss.

## II. BACKGROUND

From its introduction, Plaintiffs' Complaint focuses primarily on their imprisonment following conviction. *See* Compl. ¶¶ 1-3. They contend that their arrests and "[e]very single day of those 6,220 days spent in prison" were in violation of the United States Constitution. *Id*. at ¶¶ 3-4. Plaintiffs allege that the search warrants "based on [Norton's] lies were completely invalid," but they do not claim that the searches violated their constitutional rights. *Id*. at ¶ 64. Indeed, the headings for Sections C through F (mislabeled as "E") in the Complaint reference only the "Fraudulent Arrest" of each Plaintiff. *Id*. at 21, 27, 30, 36.

Plaintiffs allege that Norton falsified informant resumes on the affidavits used to procure search warrants. Specifically, they claim that, "[i]n some warrant applications, he attempted to establish the same informant's reliability using entirely different sets of facts and in other warrant applications, he attempted to establish different informants' reliability using the exact same set of facts." *Id*. at ¶ 61.

Plaintiffs claim that but-for this misconduct, they would not have been arrested, indicted, or imprisoned. *Id*. at ¶¶ 80, 87-89, 99-102, 109-111, 135. They allege repeatedly that Norton's use of invalid search warrants resulted in their incarceration. But, they do not claim that they incurred damages from the searches themselves, by violation of their privacy rights, property rights, or otherwise.

The Complaint alleges that Norton was a "sloppy, dishonest, and corrupt officer []," and that his misconduct was well-known throughout the Department. *Id*. at ¶¶ 25-26. The specific

instances of misconduct that Plaintiffs cite include Norton's absence from court appearances and Department trainings, his possible involvement with local gangs, and one instance of public intoxication.  *Id*. at ¶¶ 38-45.  Importantly, the absences and drinking incident occurred after Plaintiffs' arrests.[1]  *Id*. at ¶¶ 38-43.  Regarding Norton's gang involvement, Plaintiffs allege that a surveillance tape showed local gang members discussing whether Norton could assist them by "supplying or looking after guys in the gang."  *Id.* at ¶ 44.  Plaintiffs also claim that Norton failed to arrest a known gang member and befriended another suspect on social media.  *Id*. at ¶¶ 44-45.  Plaintiffs do not allege when any of these incidents occurred.

Plaintiffs emphasize two reprimands that Norton received in March 2011.  The first concerned an incident in February 2009, in which Norton confiscated narcotics during a "hand-to-hand" drug buy, but did not arrest the suspects.  *Id*. at ¶¶ 35, 121.  Plaintiffs allege that other similar incidents occurred in 2008 and 2009; but, notably, they do not allege that the other incidents were reported to the Department.  *Id*. at ¶¶ 27-34.  The second incident occurred in July 2010.  Norton was suspected of forging signatures on the Department's N-10 forms, used to document payments to confidential informants.  *Id*. at ¶ 123.  While the events underlying Norton's reprimands occurred prior to some or all of the arrests, the Department did take disciplinary action.  And none of these incidents concerned search warrant affidavits.

The Complaint also discusses the FBI's 2012 investigation of Norton at length, citing interviews with several Richmond police officers, none of whom are parties to this suit. *Id*. at ¶¶ 113-18.  The officers described rumors about Norton that had circulated within the Department, including that Norton made up "affidavit verbiage" to obtain search warrants, was "buddy" with

---

[1] Wilber Ensley was arrested on January 20, 2009, Covey Andrews on September 11, 2009, Shamar Archer on October 9, 2009, and Duente Humphries and Jamar Gilliam February 23, 2012.  *Id.* at ¶¶ 74, 87, 99, 109.

informants, and had poor record keeping skills. *Id*. But, the officers did not mention any specific instances of misconduct that were reported to Norton's supervisors.

Plaintiffs allege that Gleason, Sipple, Russell, and Norton's other supervisors "knew or should have known that Norton posed a serious risk of constitutional injury[,]" and that they "had the opportunity to prevent or limit these harms but . . . failed to intervene in a timely and/or effective manner." *Id*. at ¶ 112. In support of this claim, Plaintiffs point to the rumors uncovered in the FBI investigation, the formal reprimands that Norton received in 2011, and broader problems in the Department's confidential informant program. Plaintiffs allege that officers often neglected the informants' resume sheets and routinely failed to sign N-10 forms to verify payments made to informants, as required by Department policy. *Id*. at ¶¶ 127-35.

All five Plaintiffs have been released from prison at this time. Andrews filed a petition for habeas corpus on August 12, 2014. *Id*. at ¶ 88. Archer petitioned the court to void his guilty plea on September 18, 2014. *Id*. at ¶¶ 101. Ensley filed a habeas corpus petition on September 19, 2014. *Id*. at ¶¶ 78-79. State prosecutors moved to vacate Gilliam's conviction on July 1, 2015, and moved to vacate Humphries conviction on July 6, 2015. *Id*. at ¶¶ 111. All of these motions were granted.

Plaintiffs sue Gleason, Sipple, and Russell in their individual capacity. *Id*. at ¶¶ 16-18. Gleason is named in Count II, the "Supervisory Claim" by Ensley, Archer, and Andrews; Count III, the "Supervisory Claim" by Humphries and Gilliam; Count V, the claim for "Deprivation of Liberty" by Ensley, Archer, and Andrews; and Count VI, an additional claim by Humphries and Gilliam. *Id*. at 49-52. Sipple and Russell are named only in Counts II and V. *Id*. Counts II and III allege that the named defendants knew that Norton's misconduct either caused or posed a risk of constitutional injury, but failed to adequately respond. *Id*. at 49-50. Neither count specifies

the misconduct in question or the constitutional injury suffered by the Plaintiffs.  Counts V and VI allege that the named defendants knew that Norton engaged in conduct that violated the Plaintiffs' constitutional rights and had the opportunity to rectify his conduct, but failed to do so. *Id.* at 51-52.  These counts also fail to identify the misconduct or injuries in questions.

### III. STANDARD OF REVIEW

A pleading must provide the adverse party with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 80 (1957)).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955).  A complaint does not need detailed factual allegations, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action," without more, is insufficient.  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65. Allegations allowing only an inference of possible misconduct do not suffice, as they do not show that the plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

At the motion to dismiss stage, all well-pled facts are accepted as true and construed in the light most favorable to the plaintiff.  *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015).  However, the Court is not required to accept legal conclusions couched as factual allegations, *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014), or "unwarranted inferences, unreasonable conclusions, or arguments."  *United Stated ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

# IV. ARGUMENT

**A.** **Plaintiffs do not have standing to contest the searches.**

To challenge the searches under the Fourth Amendment, Plaintiffs have the burden to show that they had a legitimate expectation of privacy in the areas searched. *United States v. Horowitz*, 806 F.2d 1222, 1224 (4th Cir 1986) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1, 99 S. Ct. 421, 424, 58 L. Ed. 2d 387 (1978)). Plaintiffs do not allege that they owned or had any substantial connection to the homes (or vehicle) where the searches occurred. Brief guests do not have a legitimate expectation of privacy in the residence they are visiting. *See Minnesota v. Carter*, 525 U.S. 83, 91, 119 S. Ct. 469, 474, 142 L. Ed. 2d 373 (1998). Plaintiffs do not have standing to challenge the searches under the facts alleged.

**B.** **Even if Plaintiffs had standing and the searches were unlawful, the Complaint does not allege a plausible basis for recovery because the searches were not the proximate cause of the injuries claimed.**

Plaintiffs cannot establish a causal link between Norton's misconduct and their imprisonment. Unlawful imprisonment is the only injury claimed. Plaintiffs do not allege damages resulting from the searches or their arrests, except that those events led to their incarceration.[2]

Constitutional torts require proof of both but-for and proximate causation. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citation omitted). With respect to proximate cause, the Fourth Circuit has held that an investigating officer may not be liable for subsequent

---

[2] To establish liability under Section 1983, Plaintiffs must show that the Defendants violated their "federal constitutional or statutory rights, and thereby caused injury." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 529 (E.D. Va. 2015) (quoting *Woodson v. City of Richmond*, 2 F. Supp. 3d 804, 809 (E.D. Va. 2014)).

constitutional injuries when the causal chain is broken by intervening acts of other participants in the criminal justice system, such as prosecutors, grand juries, and judges. *Id.*[3]

It is well-settled that the exclusionary rule and its extension, the "fruit of the poisonous tree" doctrine, are not available to Section 1983 plaintiffs. *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (noting that the United States Supreme Court has never applied the exclusionary rule to civil cases); *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (citing *Townes v. City of N.Y.*, 176 F.3d 138, 148-49 (2nd Cir. 1999)); *Sommerville v. Dobson*, Civil Action No. 4:10cv67, 2011 U.S. Dist. LEXIS 156380, *36-38 (E.D. Va. Mar. 8, 2011). Thus, an unlawful search does not impose liability on an investigating officer for a subsequent seizure, if probable cause existed at the time.

Despite the established case law, Plaintiffs' claims depend entirely on the concept embodied by the "fruit of the poisonous tree" doctrine – that evidence obtained as a direct result of an unlawful search and seizure is tainted. *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 3385, 82 L. Ed. 2d (1984). This doctrine is an evidentiary rule restricted to criminal cases. It does not follow that an allegedly unconstitutional search supports a civil claim for unlawful imprisonment. Section 1983 claims require proximate cause; and, any number of events, including an arrest, indictment, or guilty plea, breaks the causal chain.

The Court in *Ware* addressed facts similar to those at issue here. In that case the investigating officer, responding to a harassment complaint, entered a residence without a warrant to question the suspect plaintiff. 652 F. Supp. 2d at 697. An altercation ensued. *Id.*

---

[3] The *Evans* Court identified three exceptions to this rule. An officer may remain liable for an unlawful seizure following indictment if he – lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor, or unduly pressured the prosecutor to seek the indictment. 703 F.3d at 647-48. Plaintiffs do not allege that Norton engaged in any such conduct.

The investigating officer called back-up and arrested the plaintiff for disorderly conduct, obstruction of justice, and assault and battery of a police officer. *Id.* at 697-700. In the subsequent civil suit, the plaintiff alleged several constitutional violations, including "false arrest and illegal imprisonment." *Id.* at 700. The plaintiff argued that his arrest was unlawful, regardless of whether the arresting officers had probable cause, because the officer, who first arrived at the scene, violated his right to privacy by forcibly entering the home. *Id.* at 705. The Court rejected this claim and held that the legality of the officer's entry was irrelevant to the question of probable cause. *Id.* at 706.

Plaintiffs rely on the same erroneous theory of liability here. Ensley alleges that, "[w]ere it not for Jason Norton's willful and malicious lies, as well as the . . . Department's woeful mismanagement, [his] unconstitutional arrest and detention would have never occurred." Compl. ¶ 80. Andrews, Archer, Humphries, and Gilliam make the same claim. *See id.* at ¶¶ 87-89, 99-102, 109-11. This theory ignores the requirement for proximate cause. The existence of probable cause breaks any causal link between the search warrants and Plaintiff's arrests. Further, the indictments and Plaintiffs' own guilty pleas sever any link between Norton's conduct and Plaintiff's imprisonment.

There is no question that the arresting officers had probable cause. A warrantless arrest is reasonable under the Fourth Amendment when probable cause exists. *United States v. Watson*, 423 U.S. 411, 423-24, 96 S. Ct. 820, 827-28, 46 L. Ed. 2d 589 (1976). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to believe] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979).

Plaintiffs do not dispute that the searches uncovered contraband in their possession. *See id.* at 74, 87, 99, 109. Possession may be actual or constructive. *United States v. Daley*, 107 Fed. Appx. 334, 337 (4th Cir. 2004) (citing *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992)). Constructive possession is established by proof that "the defendant exercised, or had the power to exercise, dominion and control over the item." *Id.* Ensley, Archer, Humphries, and Gilliam were present when the searches occurred. Compl. ¶¶ 74, 99, 109. Andrews "was connected to the Mercedes" where contraband was found. *Id.* at ¶ 87. While presence alone is not sufficient to prove possession, *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984), Plaintiffs do not dispute their guilt. Indeed, they voluntarily pled guilty to the charges against them. Compl. ¶¶ 76, 87, 100, 110.

In addition, Plaintiffs' demand for relief is contrary to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes*, 176 F.3d at 148. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.*; *see also Hector v. Wyatt*, 235 F.3d 154, 157 (3rd Cir. 2000) (following *Townes*); *Ware*, 652 F. Supp. 2d at 706 (noting that the plaintiff obtained an enormous benefit prior to filing suit, as the Commonwealth's Attorney elected not to pursue charges against him).

In this case, all five Plaintiffs were released from prison prior to filing suit. Their convictions and/or sentences were vacated. Thus, they have already benefitted from Norton's alleged misconduct. Any monetary compensation for their imprisonment would be an enormous windfall, for which there is no justification.

**C.    Any claim arising from the searches in question is barred by the applicable two-year statute of limitations.**

Even if Plaintiffs did allege a compensable injury resulting from the searches, those claims are time-barred.  In Section 1983 actions, the forum state's statute of limitations for personal injury suits applies.  *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007) (citations omitted).  In Virginia, personal injury actions must be brought within two years following the date of injury.  Va. Code Ann. § 8.01-243.  However, the question of when a Section 1983 action accrues is governed by federal law.  *Wallace*, 549 U.S. at 388, 127 S. Ct. at 1095.

"Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).  Courts have held that actions arising from an unlawful search accrue at the time of the search.  *See Smith v. McCarthy*, 349 Fed. Appx. 851, 857 (4th Cir. 2009); *Gonzales v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (collecting cases holding that claims for Fourth Amendment violations necessarily accrue at the time of the search or seizure); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981); *Craddock v. Fisher*, Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, *11 (E.D. Va. Apr. 21, 2015).  Such claims do not imply the invalidity of a conviction and are not barred by the accrual rule applied in such cases as *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 197 (4th Cir. 2015).  *See Heck v. Humphrey*, 512 U.S. 477, 487 n. 7, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

The search leading to Ensley's arrest occurred on January 20, 2009.  Compl. ¶ 74.  The search of Andrews' car occurred on September 11, 2009.  *Id.* at ¶ 87.  Archer was arrested during a search conducted on October 9, 2009, and both Humphries and Gilliam were arrested during a

search on February 23-24, 2012. *Id.* at ¶ 99, 109. Plaintiffs filed suit on January 13, 2017, nearly five years after the last arrest. Thus, Plaintiffs failed to meet the statute of limitations.

Plaintiffs had ample opportunity to challenge the searches during the two years following their arrests, but failed to do so. The *Cramer* and *Craddock* cases are instructive at this juncture. In *Cramer*, the arresting officer searched the plaintiff's vehicle without a warrant and seized an illegal radar detection device. 648 F.2d at 944. The plaintiff did not contest the search during his criminal trial. *Id.* at 945. When he filed suit more than two years later, the district court dismissed his claim for unlawful search and seizure as untimely, and the Fourth Circuit affirmed. *Id.*

The plaintiff in *Craddock* claimed that the search warrant for his residence was invalid because, among other reasons, the affidavit contained false statements by the investigating officer. 2015 U.S. Dist. LEXIS 52412 at *5. The Court dismissed the plaintiff's claim under the statute of limitations and noted, "[n]othing in [the] Complaint suggests that [the plaintiff] lacked awareness that the search took place as of the date of the search." *Id.* at *11.

Here, all five Plaintiffs were immediately aware that the searches had occurred, as they were either present at the time or were arrested shortly thereafter. And like the plaintiff in *Cramer*, none of the five Plaintiffs in this case contested the search during their criminal proceedings. Instead, they acknowledged their guilt and pled guilty. Years have now passed since the searches occurred, and the Plaintiffs have waived their right to challenge their validity.

Alternatively, the Complaint clearly establishes that Ensley, Andrews, and Archer knew of potential problems with Norton's search warrants by, at least, September 2014. Andrews filed his petition for habeas corpus on August 12, 2014, Archer filed a petition to vacate his conviction on September 18, 2014, and Ensley filed his habeas corpus petition on September 19, 2014.

Compl. ¶¶ 78-79, 88, 101. As stated in the Complaint, Plaintiffs filed these petitions because of concerns raised in the FBI's investigation. *Id.* Plaintiffs cannot reasonably deny that they had sufficient knowledge of their civil claims on or before the date of filing, more than two years before they initiated this action. Ensley's, Andrews', and Archer's claims are, undoubtedly, time-barred.

**D.      Even if their claims were timely, Plaintiffs fail to state a plausible claim against Gleason, Sipple, or Russell.**

Plaintiffs' do not allege any personal misconduct by Gleason, Sipple, or Russell that deprived them of their constitutional rights. As the Supreme Court of the United States held is *Iqbal*, "each [g]overnment official, his or her title notwithstanding, is only liable for his her own misconduct." 556 U.S. at 677, 129 S. Ct. at 1949. Furthermore, it is firmly established that a Section 1983 plaintiff cannot merely allege that a supervisor is liable because of the nature of his position, as the doctrine of *respondeat superior* does not apply to constitutional claims. *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94, 98 S. Ct. 2018, 2036-37, 56 L. Ed. 2d 611 (1978)). Rather, the plaintiff must plead sufficient allegations to show "a plausible nexus . . . between the supervisor's actions and the constitutional deprivation." *Id.* (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3rd Cir. 2010)).

The Complaint does not allege any personal acts of misconduct by Gleason, Sipple, or Russell. The Complaint does not allege the Defendants applied for the search warrants, participated in the searches, arrested the Plaintiffs., or participated in their criminal proceedings. Rather, Counts II and III assert claims for supervisory liability. To the extent this theory survives *Iqbal*, it requires proof of three distinct elements, which the Complaint does not

establish. Plaintiffs' theory of liability in Counts V and VI is unclear. These counts are vague, duplicative, and fail to state a plausible claim.

The Fourth Circuit has held that a claim for supervisory liability requires proof that – (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practice, and (3) there was an affirmative causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Importantly, liability does not arise from the supervisor's negligence, or even gross negligence, in failing to detect and prevent misconduct. *Armstrong v. City of Greensboro*, 1:15CV282, 2016 U.S. Dist. LEXIS 73008, *29 (M.D.N.C. June 6, 2016) (citation omitted). The supervisor must know about the misconduct and either facilitate it, condone it, or turn a blind eye to it. *Id.*

Counts II and III merely recite the elements listed above. It is unclear what misconduct the Defendants failed to address, but Plaintiffs' only constitutional claim against Norton is for malicious prosecution in Count I. The Fourth Circuit has held that while a malicious prosecution claim under Section 1983, technically, does not exist, what is commonly known as a federal malicious prosecution claim "is simply a claim founded on a *Fourth Amendment* seizure that incorporates elements of the analogous common law tort . . . specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citation omitted) (emphasis in original). As discussed above, any seizure, from the time of Plaintiffs' arrests onward, is not proximately related to the search warrants in question. And Plaintiffs do not allege that Norton arrested them or that he was involved in their

criminal proceedings following arrest.  The supervisory claims fail for these reasons.  Because Plaintiffs' allegations are so unclear, we address Norton's behavior in obtaining the warrants with respect to each element.

> **i.**   **The Complaint does not establish that the Defendants had actual or constructive knowledge of any relevant misconduct by Norton.**

Plaintiffs do not allege that the Defendants had actual knowledge of any misconduct by Norton, and they do not allege sufficient facts to show constructive knowledge.  Constructive knowledge is that which "one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 175 (4th Cir. 2014) (citing Black's Law Dictionary (9th ed. 2009)).  In Section 1983 cases constructive knowledge "can be alleged in multiple ways, including the existence of written reports . . . or the supervisor's high level of responsibility coupled with the violation alleged to have occurred on hers or his watch."  *Woodsen*, 88 F. Supp. 3d at 573 (citing *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)).

Plaintiffs' allegations concerning Norton's misconduct and systemic problems in the Department are broad in both time and scope.  However, the alleged cause of Plaintiffs' constitutional injuries is specific – that Norton obtained search warrants by falsifying the informant resumes contained in the warrant affidavits.  Compl. 21-40.  However, Plaintiffs do not allege that Gleason, Sipple, or Russell received any report of misconduct, oral or written, concerning search warrant affidavits.  Nor do Plaintiffs allege that any of the Defendants were responsible for overseeing Norton's search warrants.  The fact that Gleason, Sipple, and Russell supervised Norton in some capacity does not impute this responsibility to them.  Further, Plaintiffs' particular complaints about the warrants show that it is entirely implausible that the Defendants had knowledge of any wrongdoing.

The Complaint scrutinizes each of the four search warrants in question. With respect to the January 2009 warrant used against Ensley, Plaintiffs point out similarities between the informant resume on that warrant and a resume for a different informant used in October 2009 to obtain the warrant used against Archer. *Id*. at ¶ 71, 95. Allegedly, there were also differences between the January 2009 resume and a resume for the same informant used in September 2009 to obtain the warrant for Andrews' car. *Id*. at ¶ 72, 86. Plaintiffs further allege that the resume used to obtain Archer's warrant in October 2009 was noticeably different from two other resumes for the same informant used in March 2010 and in February 2012 for the warrant used against Humphries and Gilliam. *Id*. at ¶¶ 96, 106. Finally, Plaintiffs allege that the February 2012 resume is nearly identical to a resume used for a different informant in July 2012. *Id*. at ¶ 107.

The similarities and differences noted in the informant resumes concern the length of Norton's relationship with the informant and the number of search warrants and arrests that resulted from tips provided by that informant. While they may be noticeable in hindsight, these details are minute and virtually interchangeable among any number of informants employed by the Department. Further, Plaintiffs compare only six informant resumes used months apart. The alleged inconsistencies would be extremely difficult, if not impossible, for any supervisor to notice, even if he was required to do so. But this is not what Plaintiffs allege. Plaintiffs claim that because Norton missed appointments, drank in public, and received reprimands for two isolated and unrelated incidents, the Defendants should have suspected problems in four of Norton's search warrants obtained over a three-year period.

Plaintiffs attempt to buttress their argument by pointing to the N-10 forms used in each case. They allege that the informants' signatures on three of these forms were forged. *Id*. at ¶¶

69, 84, 92.  Even if this is true, the signatures were not suspected as forgeries until the FBI investigated Norton in 2012 and interviewed the informants who purportedly signed the forms. *Id*. at ¶¶ 69, 84, 93.  The Complaint provides no basis to conclude that the Defendants could or should have known about these three possible forgeries, but merely asserts that the Defendants should have suspected a problem.  Further, the "pervasive problem" concerning N-10 forms that Plaintiffs allege pertained to witness signatures, not the informants' signatures.  To the extent Plaintiffs allege that the Defendants or other officers would have discovered Norton's misconduct had every N-10 form been signed by the witnessing officer at the time of payment, this claim is speculative at best.

In essence, the Complaint suggests that because Gleason, Sipple, and Russell held supervisory roles, they should have suspected that Norton posed a risk to the public and discovered the same inconsistencies in the subject warrants that the FBI uncovered years later.  This theory of vicarious liability is inapplicable here.

ii.    **The facts pled do not establish that Norton's conduct posed a pervasive and unreasonable risk of constitutional injury.**

Plaintiffs allege isolated incidents of misconduct, which do not amount to a pervasive and unreasonable risk.  Establishing such risk requires proof that the conduct in question is widespread or has been used on several different occasions.  *Shaw*, 13 F.3d at 799 (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)); *see also Chennault v. Mitchell*, 923 F. Supp. 2d 765, 788 (E.D. Va. 2013) (dismissing claim against defendant sheriff because the plaintiff failed to allege a pattern of constitutional violations resulting in similar injuries).

*Shaw v. Stroud* involved a claim against the former supervisor of a state trooper, who shot and killed a detainee during a traffic stop.  13 F.3d at 797.  Although the defendant no longer supervised the trooper at the time of the shooting, he received at least three reports about

the trooper's use of excessive force during his tenure, and blatantly dismissed the complaints. *Id.* at 795. Under these facts the Court denied the defendant's motion for summary judgment and allowed the plaintiff's supervisory claim to go forward. *Id.* at 799-800.

Conversely, in *Jackson v. Brickey*, the Court granted the defendant police chief's motion to dismiss the supervisory claim against him. 771 F. Supp. 2d at 603. The plaintiff filed suit, challenging his arrest for obstruction of justice. *Id.* at 596. In response to the defendant's motion to dismiss, the Court found that the plaintiff alleged sufficient facts to show that the arresting officer lacked probable cause to arrest him. *Id.* at 601. However, the Court also held that the plaintiff did not state a plausible claim for supervisory liability because he did not allege that the police chief was aware of other instances in which suspects were arrested without probable cause. *Id.* at 603 ("[The plaintiff] asserts wholly inapposite allegations of misconduct by other members of the . . . police department. These unrelated allegations do nothing to support the three elements required of supervisor liability . . .").

This case is dissimilar to *Shaw* and analogous to *Jackson*. The Plaintiffs do not allege any instances prior to Ensley's arrest, in which Norton falsified a warrant affidavit. The Plaintiffs do not allege that the Defendants were aware of any other instances of similar misconduct by Norton or another officer, nor do they allege that the Defendants ignored or discounted such conduct. Alleging five isolated incidents is grossly insufficient to show widespread and pervasive misconduct. To the extent Plaintiffs rely on the information uncovered during the FBI interviews, generalized gossip within the Department does not establish a pattern of behavior either.

Plaintiffs point to other examples of Norton's misconduct on the job and suggest that, in the aggregate, this behavior showed that Norton posed a risk to the public. Even if these

allegations are true, Norton's unexplained absences, excessive drinking, dealings with local gangs, failure to arrest suspects after confiscating contraband, and even forging N-10 forms are completely unrelated to the search warrant process. Although the N-10 forms were used to document payments to informants, Plaintiffs do not allege any connection between the N-10 forms and warrant affidavits. Based on the facts alleged, Norton was not required to complete the N-10 form before obtaining a warrant; and, even if he was, Plaintiffs do not allege that Norton's supervisors were responsible for verifying the signatures on the N-10 forms. Norton was reprimanded on one occasion for possibly forging signatures. But this is an isolated incident, which occurred after Ensley, Archer, and Andrews were arrested, and for which Norton was properly disciplined by the department. It does not establish a pattern of constitutional violations.

### iii. The Complaint if devoid of any allegations showing that the Defendants either authorized Norton's behavior or deliberately ignored it.

The Complaint provides no basis to conclude that the Defendants either facilitated, condoned, or turned a blind eye to Norton's conduct. Without knowledge of wrongdoing, Defendants' tacit authorization is implausible. Further, the Plaintiffs bear a heavy burden in proving deliberate indifference or tacit authorization because, "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . [or] to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 372-73. Thus, proof of a single incident or isolated incidents is usually insufficient. *Id.*

Plaintiffs do not allege any prior instances of Norton's misconduct involving search warrant affidavits. Norton's reprimands represent two isolated incidents involving unrelated conduct. The remaining allegations of misconduct are irrelevant. Even in the light most

favorable to them, Plaintiffs do not allege a plausible basis to show that the Defendants ratified Norton's falsification of search warrant affidavits.  Thus, there can be not causal link between the Defendants' conduct and any injury sustained by the Plaintiffs.

> iv.     **To the extent Plaintiffs allege bystander liability, these claims fail as well.**

It is unclear what claims the Plaintiffs seek to assert in Counts V and VI.  To the extent Plaintiffs allege that Gleason, Sipple, and Russell are liable for Norton's conduct as bystander officers, this theory fails for the same reasons as Plaintiffs supervisory claims.  "[A]n officer may be liable . . . on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

This claim requires actual knowledge, which the Complaint does not allege.  The Complaint does not establish constructive knowledge of a constitutional violation either. Plaintiffs did not challenge Norton's search warrants at the time of their arrests.  In fact, they all pled guilty to the offenses charged.  The FBI and the Commonwealth Attorney's Office did not begin investigating Norton until years later.  And again, there were no reports of similar instances in the past to provide the Defendants notice of Norton's misconduct.  Plaintiffs do not allege a plausible claim under the theory of bystander liability.

**E.     The Defendants are entitled to qualified immunity as a matter of law.**

Gleason, Sipple, and Russell are protected by qualified immunity because a reasonable officer would not conclude that their conduct violated the Plaintiffs' constitutional rights. Though often asserted in the summary judgment phase, a defendant may raise the defense of qualified immunity in a motion to dismiss as well.  *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 (E.D. Va. 2013).  Qualified immunity protects government officials from civil liability to the

extent that their conduct does not violate clearly established statutory or constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001).

Addressing a qualified immunity defense requires two determinations – first, whether a constitutional right was violated, and, second, whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right. *Cloaninger v. McDevitt*, 555 F.3d 324, 330-31 (4th Cir. 2011). Whether qualified immunity applies is a purely legal question when the reasonableness of the officer's actions does not depend on disputed facts. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).

Even if the searches at issue violated the Plaintiffs' Fourth Amendment rights, these rights were not clearly established. When determining whether a right was clearly established, the officer's conduct is viewed objectively in light of the relevant facts and circumstances at the time of the violation. *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989)).

In this case Norton obtained and executed four facially valid search warrants, resulting in the arrests of five criminal suspects. All five Plaintiffs pled guilty to numerous criminal charges. Even if the warrants were defective, the Defendants had no reason to suspect wrongdoing. Further, there is no allegation that the Defendants were required to review, verify, or approve Norton's search warrant affidavits before they were submitted. Under these facts there is no basis to conclude that a reasonable officer would know, or even suspect, that any action by the Defendants violated the Plaintiffs' constitutional protections.

## V. CONCLUSION

For the reasons stated herein, the Defendants' motion should be granted, and Plaintiffs' claims against Gleason, Sipple, and Russell should be dismissed with prejudice.

CHRISTOPHER GLEASON, CHARLES SIPPLE, and ROGER RUSSELL

*/s/*_____

D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason, Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 3rd day of March, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing (NEF) to the following counsel of record:

Mark J. Krudys
The Krudys Law Firm, PLC
Suntrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950 Telephone
(804) 381-4458 Facsimile
mkrudys@krudys.com
*Counsel for Plaintiffs*

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
(804) 289-8682 Telephone
jpreis@richmond.edu
*Counsel for Plaintiffs*

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
(804) 343-1900 Telephone
(804) 343-1901 Facsimile
amyaustinlawyer@gmail.com
*Counsel for Plaintiffs*

Stephen M. Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad Street
Richmond, VA 23219
(804) 646-7953 Telephone
(804) 646-7939 Facsimile
Stephen.Hall@richmondgov.com
Richard.HillJr@richmondgov.com
*Counsel for Defendant City of Richmond*

David P. Corrigan
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
(804) 747-5200 Telephone
(804) 747-6085 Facsimile
dcorrigan@hccw.com
sfisher@hccw.com
*Counsel for Defendant Norton*

Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods LLP
Gateway Plaza
800 E. Canal Street
(804) 775-1000 Telephone
(804) 698-2304 Facsimile
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
*Counsel for Defendant Norwood*

Ashley L. Taylor, Jr.
Stephen C. Piepgrass
Brooke K. Conkle
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1286 Telephone
(804) 697-1339 Facsimile
ashley.taylor@troutmansanders.com
stephen.piepgrass@troutmansanders.com
brooke.conkle@troutmansanders.com
*Counsel for Defendants Alston, Corrigan,
Harrison, and Blackwell*

And I hereby certify that I will mail a copy of the foregoing by U.S. mail, postage

prepaid, to the following non-filing user(s): none.

*/s/*_____

D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason,
Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com