# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| WILBER ENSLEY, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      Civil Action No. 3:17-cv-00024-MHL |
| | ) |
| CITY OF RICHMOND, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
## DEFENDANTS ALSTON, CORRIGAN, HARRISON AND BLACKWELL

Defendants Lieutenant Michael Alston ("Lt. Alston"), Lieutenant Brian Corrigan ("Lt. Corrigan"), Captain Martin Harrison ("Cpt. Harrison"), and Captain William Blackwell ("Cpt. Blackwell") (collectively, the "Officers") submit this Memorandum in Support of their Motion to Dismiss the Complaint filed by Plaintiffs Wilber Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6):

### INTRODUCTION

Often, criminal defendants who were wrongfully arrested, prosecuted or convicted file suit against the officers or municipalities involved. Once exonerated, these innocent persons seek redress for a violation of their constitutional rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983").

This is not one of those cases. Police arrested each of the former defendants (now Plaintiffs in this case) after finding them in possession of contraband. Each of these former defendants acknowledged his guilt. And, each of these former defendants pled guilty. Their convictions were later vacated after discovery of irregularities in the search warrants that led to

their arrests. The search warrants were all prepared and offered by one person: Defendant Jason Norton ("Norton"). Plaintiffs now contend that the City, the Officers bringing this motion and the other Defendants are responsible for their incarcerations, but Plaintiffs do not argue that they are actually innocent of the crimes which led to their convictions.[1]

Apart from this striking omission, Plaintiffs' Complaint has a number of problems. Initially, the Complaint attempts to pin liability for Plaintiffs' incarcerations on two of the Officers who were neither involved with – either directly, or in a supervisory capacity – Plaintiffs' arrests. Second, the statute of limitations bars the claims raised by the Plaintiffs. Third, all of the Defendants, except the City, are named in their individual, rather than official capacities, but the Complaint does not allege *personal* involvement by anyone but Norton in the alleged constitutional violations. Finally, Plaintiffs cannot state a claim for supervisory liability or deprivation of liberty because their own actions break any causal link between action allegedly undertaken by Norton and any purported constitutional violation. For all of these reasons, the Complaint should be dismissed.

### FACTUAL BACKGROUND

Each Plaintiff in this action has a similar story: each was arrested after police officers discovered contraband in his possession; each acknowledged his guilt and pled guilty (with two waiving indictment); each had his conviction vacated after inconsistencies or irregularities with the search warrant in his case were later discovered. (Compl. ¶¶ 74-6, 87-9, 99-102, 109-11.)

---

[1] Although not at issue in this motion, for which evidence outside the Complaint and supporting exhibits cannot be considered, a plaintiff's actual innocence is a prerequisite for bringing a Section 1983 action and, if Plaintiffs' claims survive, the Officers will raise this defense at the appropriate time. *See, e.g.*, *Donahue v. Gavin*, 280 F.3d 371, 383-84 (3d Cir. 2002) (noting that a plaintiff must be actually innocent to bring a Fourth Amendment claim).

**<u>Wilbur Ensley</u>**

Late in the evening of January 20, 2009, officers from the Richmond Police Department and federal officials from the Bureau of Alcohol, Tobacco and Firearms entered a home in Richmond pursuant to a search warrant.  (Compl. ¶ 74.)  The officers discovered contraband.  *Id.*  Plaintiff Wilbur Ensley ("Ensley") was immediately arrested.  *Id.*

Ensley acknowledged his guilt.  (Compl. ¶ 76.)  He pled guilty to federal charges and received a lengthy prison sentence of 262 months, with a five-year term of supervisory release to follow.  *Id.*  Federal officials later discovered a discrepancy in the description of the confidential informant (called an informant "resume") supporting the search warrant that had been prepared and offered by Norton.  (Compl. ¶ 77.)  Ensley filed a petition for habeas corpus on September 19, 2014.  (Compl. ¶ 78.)  The petition was granted in April 2015, and Ensley was released.  (Compl. ¶¶ 78-80.)

**<u>Covey Andrews</u>**

Like Ensley, Plaintiff Covey Andrews ("Andrews") also was found with contraband.  (Compl. ¶ 87.)  Like Ensley, Andrews was immediately arrested.  *Id.*  And, like Ensley, Andrews was indicted by federal prosecutors on several charges.  *Id.*

Andrews also acknowledged his guilt.  *Id.*  He pled guilty on December 22, 2009, and was sentenced to 90 months in jail.  *Id.*  Federal officials later discovered inconsistencies in Norton's description of the confidential informant whose information supported the search warrant.  (Compl. ¶ 88.)  On August 12, 2014, Andrews filed a habeas petition raising this issue and, in April 2015, his petition was granted.  (Compl. ¶¶ 88, 89.)

## Shamar Archer

On October 9, 2009, Shamar Archer ("Archer") was arrested when police officers executed a search warrant. (Compl. ¶ 99.) Like Ensley and Andrews before him, Archer was discovered in possession of contraband. (Compl. ¶ 100.) He was indicted by federal prosecutors on drug charges on December 14, 2009. *Id.*

Archer also acknowledged his guilt. *Id.* And, on March 26, 2010, Archer pled guilty to several drug crimes. *Id.* He was sentenced to 37 months in prison. *Id.* Federal officials later discovered that the confidential informant resume Norton supplied to support the warrant used to search Archer was similar to the resume for a different informant. (Compl. ¶¶ 95, 101.) Archer filed a petition to void his conviction on September 18, 2014. (Compl. ¶ 101.) Archer's guilty plea was voided and his conviction cleared. (Compl. ¶¶ 101, 102.)

## Deunte Humphries

On February 23, 2012, Deunte Humphries ("Humphries") was arrested pursuant to a search warrant. (Compl. ¶ 109.) He was charged with various crimes in state court. (Compl. ¶ 110.)

Like Ensley, Andrews and Archer before him, Humphries pled guilty. *Id.* He received a sentence of 14 months in prison. *Id.* Federal officials later determined that the confidential informant resume Norton supplied to support the warrant used to search Humphries was similar to the resume of a different informant. (Compl. ¶ 107-08, 111.) On July 6, 2015, state prosecutors petitioned the court to vacate Humphries' conviction and the court complied on August 3, 2015. (Compl. ¶ 111.)

**Jamar Gilliam**

Jamar Gilliam ("Gilliam") was arrested along with Deunte Humphries on February 23, 2012. (Compl. ¶ 109.) Like Humphries, Gilliam was charged with a number of crimes in state court. (Compl. ¶ 110.)

Gilliam pled guilty, as had each Plaintiff before him. *Id.* He received a sentence of 24 months in prison. *Id.* As with Humphries, federal officials determined the confidential informant resume Norton supplied to support the warrant used to search both Humphries and Gilliam was inadequate. (Compl. ¶¶ 107-08, 111.) State prosecutors petitioned the court to vacate Gilliam's conviction on July 1, 2015, and the court complied. (Compl. ¶ 111.)

**Plaintiffs Allege Norton Engaged in Shoddy Police Work, but only a Few
Allegations Address Issues Related to Plaintiffs' Arrests**

In their Complaint, Plaintiffs allege that, despite their guilty pleas, all of their arrests and incarcerations can be traced to the acts of Jason Norton and, as a result, Norton's supervisors at the Richmond Police Department ("RPD") should be held liable. Plaintiffs offer various examples of supposed shoddy or corrupt police work by Norton, but most of these allegations have nothing to do with Plaintiffs' arrests. For example, Plaintiffs allege that Norton pulled over cars, searched occupants, and took contraband and/or money without providing citations or receipts. (Compl. ¶¶ 28-33.) They also allege that there were a number of "rumors and stories" about Norton, but fail to provide further details. (Compl. ¶ 34.) Although obviously intended to color the case, none of these stories – even if known to Norton's supervisors (and there is no evidence that they were) – would have put the Officers on notice of any issues related to allegedly invalid search warrants or mismanagement of confidential informants.

Only a few of the allegations in the Complaint focus on Norton's alleged dealings with confidential informant resumes, which led to the invalidation of some of Norton's search

warrants. (Compl. ¶¶ 71, 95-6, 107.) Specifically, Plaintiffs allege that Norton would use the same resume for two separate informants or, alternately, use two different resumes for the same informant. (Compl. ¶¶ 61-4.) Plaintiffs also allege that Norton and his colleagues would often sign the "witness" portion of the forms used to document confidential informant payments (referred to as "N-10 forms") at a later time. (Compl. ¶ 70.) However, Plaintiffs fail to tie this allegation to any alleged injury they suffered.

The Complaint itself, however, evidences that the informant resumes about which Plaintiffs complain were offered months, and in some cases, *years* apart, making it virtually impossible for the inconsistencies to have been noticed at the time. For example, the Complaint compares the similarities between two different confidential informant resumes, one offered in January 2009 and the other offered in October 2009. (Compl. ¶ 71, 95.) The Complaint then contrasts the differences between the resume offered for the same confidential informant, from October 2009, to another resume for the informant offered approximately six months later in March 2010, to yet another resume from almost a full two years later, in February 2012. (Compl. ¶ 96.) The Complaint does not allege that a reasonable supervisor reviewing these resumes months – and in some cases years – apart, would have noticed these discrepancies. Indeed, Plaintiffs could not make such an allegation, in light of the fact that supervisors changed over this time period.

### The Department Took Steps to Address Issues with Norton and Confidential Informant Management

Rather than painting a picture of a Department that overlooked deficiencies or any concerns related to Norton, the Complaint acknowledges that RPD officials took affirmative steps to reprimand him:

- RPD officials reprimanded Norton on March 25, 2011, for seizing marijuana and cocaine from certain individuals, in February of 2009, without arresting or seeking charges against those individuals (Compl. ¶ 121); and

- RPD officials also reprimanded Norton on March 25, 2011, for failing to follow Department policy when filling out the forms used to document confidential informant payments, because the informant signature on two N-10 forms did not match the signatures on other forms signed by that informant. (Compl. ¶¶ 123.)

With respect to the management of confidential informants, Plaintiffs allege that in August of 2012, Lt. Corrigan was placed in charge of the confidential informant program, and implemented a number of changes, including more systematic use of informant resumes and more frequent audits of confidential informants to ensure that informants were moved from "active" to "inactive" status. (Compl ¶¶ 132-33.)

### The Officers' Roles, as Alleged in the Complaint

Although Plaintiffs' Complaint presents a convoluted and disjointed summary of the events surrounding their arrests, Norton's supposed actions and the role of various Defendants, including the Officers bringing this motion, the following timeline – gleaned from the Complaint[2] – summarizes the critical dates pertaining to each of those Officers:

- 2009: Cpt. Blackwell oversees confidential informant program (Compl. ¶ 22);

- January 20, 2009: **Ensley is arrested** (Compl. ¶ 74);

- September 11, 2009: **Andrews is arrested** (Compl. ¶ 87);

- October 9, 2009: **Archer is arrested** (Compl. ¶ 99);

- In or around 2011 through around March 2013: Cpt. Harrison serves as Head of the RPD's Special Investigations Division (Compl. ¶ 21);

---

[2] Defendants do not concede the veracity of Plaintiffs' timeline, but instead offer this as a summary of the critical dates as presented in Plaintiffs' Complaint.

- March 25, 2011:  RPD reprimands Norton for seizing contraband without making an arrest and for his work with confidential informants (Compl. ¶¶ 35, 37, 121);

- By the end of 2011:  Cpt. Blackwell leaves confidential informant program (Compl. ¶ 22);

- February 23, 2012:  **Humphries and Gilliam are arrested** (Compl. ¶ 109);

- June 2012:  Gleason is no longer Norton's "Direct Supervisor" (Compl. ¶ 16);

- June 2012 (or shortly thereafter):  Lt. Alston replaces Gleason (according to the Complaint) as Norton's "Direct Supervisor" (Compl. ¶ 19);

- August 2012:  Lt. Corrigan is named head of confidential informant program and (according to the Complaint) becomes Norton's "Intermediate Supervisor." (Compl. ¶¶ 20, 131, 132.)

## Alleged Misconduct After Plaintiffs' Arrests

Plaintiffs' Complaint also contains a number of other allegations of misconduct involving Norton, such as his alleged dishonesty about missing court in July 2012 (Compl. ¶ 38), exaggerations about field work in November 2012 (Compl. ¶ 39), missing a training exercise in December 2012 (Compl. ¶ 39), missing court in February 2013 (Compl. ¶ 41), and alcohol consumption in March 2013 (Compl. ¶ 42).  However, all of these incidents occurred *after* February 2012, when the last two Plaintiffs, Humphries and Gilliam, were arrested.

## Plaintiffs File Suit Under Section 1983

On January 13, 2017, Plaintiffs brought this action under Section 1983, arguing that their constitutional rights were violated by Norton, other RPD officers (including the Officers bringing this motion), and the City.  Plaintiffs contend that the Defendants knew or should have known that Norton's allegedly shoddy paperwork and supposed reputation for close relationships with informants indicated that he posed an unreasonable risk of constitutional injury to individuals like the Plaintiffs.  (Compl. ¶¶ 113-14.)

The Complaint names the moving Officers, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison, in four counts: two counts of supervisory liability (Count II, brought by Plaintiffs Ensley, Andrews, and Archer; and Count III, brought by Plaintiffs Humphries and Gilliam) and two counts of deprivation of liberty (Count V, brought by Plaintiffs Ensley, Archer, and Andrews; and Count VI,[3] brought by Plaintiffs Humphries and Gilliam). As will be explained, each of these counts against the Officers must be dismissed.

**ARGUMENT**

## I. Legal Standard.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. The Court must ascertain whether the Complaint contains sufficient factual matters, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is met when the Court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (same). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a Complaint must be dismissed. *Id.* at 679.

---

[3]     Count VI appears to be a recitation of Count V, altered only by the Plaintiffs who bring this Count. However, Count VI does not include the specific "Deprivation of Liberty" heading that accompanies Count V.

The Court need not accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995) (citing *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)).  *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")  Moreover, the Court cannot assume that the plaintiffs can prove facts they have not alleged or that a defendant has violated the law in ways the plaintiffs have not alleged. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (quoting *Associated Gen. Contractors v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983)).  The notice pleading allowed by the Federal Rules requires a Complaint to include sufficient operative facts upon which to base an actionable claim.  *Iqbal*, 556 U.S. at 667-78.  A Complaint that contains bare bones allegations that a wrong occurred does not provide adequate notice.  *Id*. at 678.  "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Rossmann v. Lazarus*, No. 1:08cv316, 2008 U.S. Dist. LEXIS 81701, at *8 (E.D. Va. Oct. 15, 2008) (citing *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)).

## II.  Plaintiffs Seek to Hold Liable Defendants Who Were Not Norton's Supervisors at or Around the Time Plaintiffs Were Arrested.

Plaintiffs raise a number of contentions in their Complaint related to the conduct of Norton, spanning approximately four and a half years.  Like most modern workplaces, however, supervisors and responsibilities changed in the Richmond Police Department over this time period.  As the allegations in the Complaint make clear, Norton did not have the same supervisor during the four-and-a-half year time span covered by the Complaint.  It is black letter law that a

plaintiff cannot bring a Section 1983 claim for supervisory liability where the named defendant was not a supervisor at the time of the events on which the claim is based. *See, e.g., Brown v. Poplin*, 3:10cv565, 2011 U.S. Dist. LEXIS 124912, at *22 (W.D.N.C. Oct. 27, 2011) (dismissing Section 1983 case for failure to state a claim where plaintiff asserted supervisory liability against a defendant who was not a supervisor at the time of the alleged incident).

Plaintiffs' disjointed presentation of the timeline of events in this case (perhaps intentionally) only serves to confuse the facts. However, a careful review of the dates of Plaintiffs' arrests and the corresponding dates of the Officers' responsibilities alleged in the Complaint, *see supra* at 7-8, shows that the Complaint names as Defendants Officers who were not responsible for Norton at or around the time of Plaintiffs' respective arrests. Simply because of this timing, Plaintiffs cannot state a claim for relief against these Officers and, as a result, the claims against them must be dismissed.

### A.    Lieutenants Corrigan and Alston Were Not Norton's Supervisors at the Time of Any Plaintiff's Arrest.

The Complaint fails to state a claim against Lt. Corrigan because Plaintiffs do not allege that Lt. Corrigan was Norton's supervisor at the time of any of Plaintiffs' arrests. The Complaint describes Lt. Corrigan as Norton's "Intermediate Supervisor" in 2012 and 2013. (Compl. ¶ 19.) Plaintiffs later pinpoint the date that Lt. Corrigan was placed in this role, when they state that he was "placed in charge of the [RPD's confidential informant] program in August 2012." (Compl. ¶¶ 131, 132.) Plaintiffs do not allege that Lt. Corrigan had any role in Plaintiffs' arrests or any supervisory role with respect to Norton (or the confidential informant program) before August 2012.

Because the Complaint reveals that Lt. Corrigan had no responsibility for Norton (or the confidential informant program) prior to August 2012, *see supra* at 7-8, and all of Plaintiffs'

arrests occurred on or before February 23, 2012 (Compl. ¶¶ 65, 87, 99, 109), the Complaint fails to state a claim against Lt. Corrigan and must be dismissed.

In the same way, Lt. Alston's history with Norton, as detailed in the Complaint, demonstrates that Plaintiffs cannot state a claim for relief against him. Plaintiffs do not allege that Alston was Norton's supervisor at the time of any of Plaintiffs' arrests. Plaintiffs say instead that "[f]rom 2009 through approximately June 2012, *Gleason* served as Norton's Direct Supervisor." (Compl. ¶ 16 (emphasis added).) Then, they say that Lt. "Alston served as Norton's Direct Supervisor" "[i]n 2012 and 2013." (Compl. ¶ 19.) Using this timeline, Lt. Alston could not have been Norton's Direct Supervisor before sometime in June 2012, the month that Gleason left that role. By June 2012, all five Plaintiffs already had been arrested. Just as with Lt. Corrigan, because Lt. Alston played no supervisory role with respect to Norton at the time of the events underlying Plaintiffs' Section 1983 claims, so the Complaint fails to state a claim against Lt. Alston and should be dismissed. *Brown*, 2011 U.S. Dist. LEXIS 124912, at *22.

### B. Captains William Blackwell and Martin Harrison Were Not Norton's Supervisors When Each Plaintiff Was Arrested.

Timing issues evident on the face of the Complaint prove fatal to some of the counts of against other Officers, as well. Plaintiffs allege that Cpt. William Blackwell "oversaw the RPD's confidential informant program" from approximately 2009 through 2011. (Compl. ¶ 22.) Plaintiffs do not allege that Cpt. Blackwell had any responsibilities related to Norton after 2011. Yet, the Complaint says Plaintiffs Humphries and Gilliam were arrested on February 23, 2012. (Comp. ¶ 109.) Plaintiffs cannot bring claims against Cpt. Blackwell related to their arrests because Cpt. Blackwell's alleged tenure as Norton's supervisor ended some time in 2011.

Counts II and VI brought by Plaintiffs Humphries and Gilliam, therefore fail to state a claim against Cpt. Blackwell and must be dismissed.

Just as Cpt. Blackwell was not Norton's supervisor at the time of Humphries' and Gilliam's arrests, Cpt. Martin Harrison was not Norton's supervisor when Plaintiffs Ensley, Andrews, and Archer were arrested. The Complaint says Cpt. Harrison was head of the Richmond Police Department's Special Investigations Division "[i]n or about 2011 through at least March 2013." (Compl ¶ 21.) The Complaint does not allege that Cpt. Harrison had any supervisory role with respect to Norton before this date. The Complaint further states that Ensley, Andrews, and Archer all were arrested in 2009. (Compl. ¶¶ 74, 97, 99.) These Plaintiffs cannot state a claim for relief against Cpt. Harrison, who had no supervisory responsibility of Norton and had no connection whatsoever to their 2009 arrests. As a result, Counts II and V, brought by Plaintiffs Ensley, Andrews, and Archer, should be dismissed as to Cpt. Harrison.

In sum, for timing reasons alone, *all claims against Lieutenants Alston and Corrigan* must be dismissed; *Humphries' and Gilliam's Counts III and VI against Captain Blackwell* must be dismissed; and *Ensley's, Andrews' and Archer's Counts II and V against Captain Harrison* must be dismissed.

## III.   The Two-Year Statute of Limitations Bars Plaintiffs' Claims.

The claims brought by Plaintiffs Ensley, Andrews and Archer against these Officers also are barred by the relevant statute of limitations.[4] When analyzing Section 1983 claims, federal courts use the forum state's statute of limitations period for personal injury torts. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The applicable Virginia statute of limitations is two years for personal injury actions. Va. Code § 8.01-243.

---

[4]     The claims against the moving Officers are for deprivation of liberty (Counts V and VI) and supervisory injury (Counts II and III).

A Section 1983 plaintiff's claim accrues when he or she "becomes aware of his or her injury, or when he or she is put on notice . . . to make a reasonable inquiry as to whether a claim exists." *Keck v. Commonwealth*, Civil Action No. 3:13cv555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32 (E.D. Va. Sept. 9, 2011) (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979), and *Almond v. Sisk*, No. 3:08cv138, 2009 U.S. Dist. LEXIS 686688, at *4 (E.D. Va. Aug. 6, 2009) (internal quotation marks omitted)). Thus, Plaintiffs must have brought their Section 1983 claims within two years of their claims' accrual. Using these standards, Plaintiffs' Complaint, either in whole or in part, is barred by the statute of limitations.

**A.    Plaintiffs Were on Notice of Their Section 1983 Claims At the Time of the Allegedly Illegal Search and Seizure.**

Both the Fourth Circuit and this Court have long held that a plaintiff has notice of a potential Section 1983 claim at the time of the search and seizure. *See, e.g., Smith v. McCarthy,* 349 F. App'x 851, 857 (4th Cir. 2009); *Irving v. Hall,* Civil Action No. 3:16CV308, 2016 U.S. Dist. LEXIS 158177, at *11 (E.D. Va. Nov. 15, 2016); *Craddock v. Fisher,* Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015); *Keck,* Civil Action No. 3:10cv555, 2011 U.S. Dist. LEXIS 112695, at *32; *Horne v. Bailey,* Civil Action No. 1:10cv641 (CMH/IDD), 2010 U.S. Dist. LEXIS 145096, at *5 (E.D. Va. June 25, 2010); *Blackmon v. Perez,* 791 F. Supp. 1086, 1091 (E.D. Va. 1992).

The Fourth Circuit faced a similar set of facts in *Cramer v. Crutchfield*, 648 F.2d 943 (4th Cir. 1981), where a plaintiff alleged a Section 1983 claim related to a search and seizure. A Virginia state trooper conducted a roadside stop of the plaintiff and accused the plaintiff of possessing a radar detection device. *Id.* at 944. The trooper asked the plaintiff to open his truck's locked cab to inspect it. *Id.* When the plaintiff refused, the trooper, without a search

warrant, used a screw driver to open the locked cab. *Id.* The trooper found a radar detector and immediately arrested the plaintiff. *Id.* The plaintiff was later convicted. *Id.*

Even though the plaintiff never alleged a violation of his Fourth Amendment rights during the underlying trial, he brought a Section 1983 claim against the trooper two years and two weeks after the roadside search and seizure. *Id.* at 945. This Court granted the trooper's motion for summary judgment, finding that the complaint was barred by the statute of limitations, as it was filed more than two years after the search occurred. *Id.*

The Fourth Circuit affirmed. *Id.* Of particular import to the Court was the fact that the plaintiff never raised any claim that the evidence was obtained illegally, nor did he move to suppress the evidence prior to his conviction. *Id.* As a result, "[h]e therefore waived any challenge to the constitutionality of the search." *Id.*

A similar result follows in this case. Plaintiffs had an opportunity to challenge the validity of the search warrants at the time of their arrests, before they pled guilty. Their failure to do so does not allow them to turn back the clock to raise objections after five, six, seven or eight years have passed.

The Fourth Circuit's precedent takes into account the important public policy of requiring criminal defendants to raise their objections *at the time* of an alleged injury. This Court should not have to revisit allegedly improper search warrants and recreate the circumstances surrounding them. Plaintiffs knew of their rights, but chose to plead guilty. They made the affirmative decisions to accept plea deals and waive their constitutional challenges. Their Section 1983 claims accrued at the time of their respective searches in 2009 and 2012 and, as a result, they are time barred.

**B.    Alternatively, Plaintiffs' Claims Accrued No Later than the Filing of Their Habeas Petitions and/or Motions to Vacate.**

As noted above, a Section 1983 plaintiff's claim accrues when he or she "becomes aware of his or her injury, or when he or she is put on notice . . . to make a reasonable inquiry as to whether a claim exists." *Keck*, Civil Action No. 3:13cv555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32. Should the Court decline to adopt as the date of accrual the time of the search and seizure, then the latest possible date that each Plaintiff could claim that he had reason to know of his injury was the date that he filed his habeas petition or petition to vacate his conviction. Plaintiffs' habeas petitions were based on the same facts they allege in the instant Complaint and, therefore, it cannot be disputed that they knew at the time of these filings of their complete causes of action.

Plaintiffs Ensley, Andrews and Archer filed their Section 1983 claims against the moving Officers more than two years after their claims accrued (if the time of accrual is the time of the habeas petitions): Ensley filed his habeas petition on September 19, 2014 (Compl. ¶ 78); Andrews filed a habeas petition on August 12, 2014 (Compl. ¶ 88); and, Archer filed a petition to vacate his conviction on September 18, 2014 (Compl. ¶ 101). Each and every one of these petitions was filed more than two years before Plaintiffs initiated this action. As a result, the statute of limitations bars their claims.[5]

---

[5]    If the accrual date is pegged to the filing of the motions to vacate, it is unclear from the face of the Complaint whether the statute of limitations bars Humphries' and Gilliam's claims. The Complaint only notes that the Commonwealth moved to vacate their convictions on July 6, 2015 and July 1, 2015, respectively. (Compl. ¶ 111.) As a result, if the dates of the motions to vacate are used, further discovery may be necessary to determine the date that Humphries' and Gilliam's causes of action accrued for Section 1983 purposes. Of course, these Plaintiffs' claims must be dismissed for the other reasons discussed in this brief. If the Court adopts the later accrual date described herein, however, and does not dismiss these Plaintiffs on other grounds, Defendants reserve the right to raise a statute of limitations defense against Humphries and Gilliam at a later stage.

**IV.    The Complaint Fails to State a Claim Against the Officers in Their Individual Capacities Because Plaintiffs Do Not Allege that These Officers Acted Personally to Deprive Them of Any Constitutional Rights.**

Plaintiffs bring all of their claims against the individual defendants in their *individual*, rather than official capacities.  However, Plaintiffs have not, and cannot, allege that Lt. Corrigan, Lt. Alston, Cpt. Blackwell or Cpt. Harrison acted *personally* in any alleged deprivation of rights.  To the extent Plaintiffs seek to hold these Defendants liable for personal actions, the failure to include such allegations is fatal to their Complaint.

"Generally, to establish section 1983 liability against an officer in his or her personal capacity, a plaintiff must affirmatively show that the official charged *acted personally* in the deprivation of the plaintiff's rights."  *Alfaro-Garcia v. Henrico Cnty.*, Civil Action No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *36 (E.D. Va. Sept. 26, 2016) (quoting *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)).  And, a plaintiff who raises a Section 1983 claim cannot employ the doctrine of *respondeat superior*.  *Id.*  "Phrased differently, section 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort."  *Oliver*, 250 F. Supp. 2d at 598 (citing *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978)).  Instead, a plaintiff alleging a Section 1983 violation must allege that a defendant "had personal knowledge of and involvement in the alleged violations of constitutional rights."  *Id.*

Plaintiffs' Complaint is devoid of any allegation that Lt. Corrigan, Lt. Alston, Cpt. Blackwell or Cpt. Harrison had any personal involvement Plaintiffs' arrests.  Indeed, the Complaint barely mentions these Officers, except in the initial description of the parties, which contains the blanket allegation that each officer named in the Complaint "knew or should have known that Norton was bound to commit, or already had committed violations of law." (Compl.

¶¶ 19-22, 24, 135.)  (Lt. Corrigan is also mentioned as having been "brought in to clean up the informant program" (Compl. ¶¶ 131-34) – an allegation that *exonerates* rather than *implicates* him.)  Plaintiffs do not allege any personal knowledge or personal action undertaken by any of these Officers with regard to Plaintiffs' arrests.  They do not allege that the Officers knew of the search warrants, signed off on the search warrants, participated in the searches, knew that the searches took place or even that they knew that any of the Plaintiffs had been arrested.  Without any personal knowledge of Plaintiffs, the search warrants or the arrests, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison could not have undertaken any personal act to deprive Plaintiffs of their constitutional rights.

The Complaint falls far short of the requirement that Plaintiffs must at least allege that these Officers had personal knowledge of and involvement in any alleged deprivation of liberty. Thus, to the extent the Complaint seeks to hold the Officers personally liable for Plaintiffs' arrests, it must be dismissed.

## V. The Complaint Fails to State a Claim for Supervisory Liability Because a Number of Intervening Causes Separate Any Alleged Inaction by the Officers from Plaintiffs' Alleged Injury.

Plaintiffs' claims for supervisory liability also fail as a matter of law because Plaintiffs have not alleged pervasive conduct ignored by these Officers that directly resulted in any constitutional injury.  The Fourth Circuit recognizes supervisory liability in a Section 1983 context where:

> (1) the supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injuries to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices; and, (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

18

*Patrick v. City of Petersburg, et al.*, Civil Action No. 3:15cv565-MHL, 2016 U. S. Dist. LEXIS 136380, at *17-18 n.19 (E.D. Va. Sept. 30, 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).[6] To allege conduct that poses "a pervasive and unreasonable risk" of constitutional injury, a plaintiff "must show that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Jenkins v. Woody*, Civil Action No. 3:15cv355-MHL, 2017 U.S. Dist. LEXIS 8876, at *44 (E.D. Va. Jan. 21, 2017) (quoting *Shaw*, 13 F.3d at 799). Furthermore, a plaintiff must allege "a plausible nexus . . . between the supervisor's actions and the constitutional deprivation." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (internal citations and quotation marks omitted). Plaintiffs fail to make the allegations necessary to meet these standards.

> **A.** **Plaintiffs' Allegations of Conduct that Took Place *After* Their Arrests, as Well as Allegations of Isolated Events, Separated by Months or Years, Does Not Demonstrate Widespread Conduct.**

First, Plaintiffs here have not alleged any conduct that was so widespread that it would pose an unreasonable risk of harm of constitutional injury. Rather, Plaintiffs have merely alleged isolated, individualized occurrences, separated by months and, in many cases, by years. Furthermore, the bulk of Plaintiffs' allegations detail conduct that occurred *after* Plaintiffs' arrests, not before. Plaintiffs cannot support a claim for supervisory liability by citing incidents that occurred *after* the alleged constitutional violation occurred. *See, e.g., Cordova v. Aragaon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principl[e]s of linear time prevent us from seeing

---

[6]  Supervisory liability may no longer constitute a viable Section 1983 claim. *See Iqbal*, 556 U.S. at 677.  However, Plaintiffs' pleading so clearly fails to state a claim that the Court need not make a determination on this point.

how conduct that occurs *after* the alleged violation could have somehow caused that violation.") (emphasis in original)).

Plaintiffs' Complaint details a number of rumors that circulated about Norton, and notes that he had a reputation for incomplete paperwork and a messy desk. But, rumors and allegations of sloppy paperwork do not indicate that constitutional injury is imminent. And, none of the allegations made in the Complaint tie directly to any alleged constitutional injury that Plaintiffs experienced nor would they have provided RPD officers with reason to suspect an unreasonable risk of constitutional injury.

Further, Plaintiffs' argument that Norton's alleged mistakes in confidential informant resumes demonstrate pervasive, widely-acknowledged conduct fails to recognize that Norton's supervisors would have looked at these resumes when they were submitted months, or even years, apart. Each time RPD officers reviewed the resumes, they would have done so on their own and without the benefit of comparison to others submitted in other cases at different time periods. Under these circumstances, nothing would have indicated an unreasonable risk of constitutional injury.

Plaintiffs also devote a considerable portion of their Complaint to alleged problems with signatures on the N-10 forms. (Compl. ¶¶ 51-64.) But the N-10 forms have nothing to do with any alleged injury Plaintiffs experienced. The signature of another RPD officer does not indicate that the information relating to a confidential informant has somehow been falsified, and certainly does not indicate that fellow officers should suspect inconsistencies in the *resume* of a confidential informant.

### B. Plaintiffs' Complaint Acknowledges that the Richmond Police Department Responded to Concerns About Norton, Evidencing Deliberate *Action*, Not Deliberate *Indifference*.

Second, the Complaint *acknowledges* that the Richmond Police Department responded to concerns about Norton's work with confidential informants. Responding to a problem, even negligently, still demonstrates engagement and a lack of deliberate indifference. The Fourth Circuit wrote in *Jones v. Wellham*,

> With the benefit of hindsight, [certain decisions] were clearly unfortunate, might perhaps be thought imprudent, or even been found legally negligent, ***but that does not suffice***; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose . . . liability.[7]

104 F.3d 620, 627 (4th Cir. 1997) (emphasis added). "Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." *Pistore v. Roper*, No. 3:05-cv-123, 2007 U.S. Dist. LEXIS 75525, at *4 (N.D. W.Va. Sept. 28, 2007).

As the Complaint states: "Norton was formally reprimanded on March 25, 2011 for his work with confidential informants in July 2010." (Compl. ¶ 37.) Plaintiffs' own pleading thus acknowledges affirmative steps that the Richmond Police Department took to address concerns over Norton's work with confidential informants. This demonstrates that the Police Department and those supervising Norton were neither indifferent to, nor providing tacit authorization for any of his conduct. While Plaintiffs may argue that the reprimands did not go far enough, the

---

[7] This quotation is taken from the Fourth Circuit's reasoning on municipal liability. However, the court also noted the similarity between the standard for municipal liability and supervisory liability based upon the same claim. *Jones*, 104 F.3d at 628 ("While a municipal liability claim based upon a particular official's attributed conduct and a supervisory liability claim against that official based upon the same conduct are not perfectly congruent, each requires proof of both the official's deliberate indifference and of a close affirmative link between his conduct and a resulting constitutional violation by a subordinate.").

decision to reprimand Norton was quite the opposite of indifference—it showed engagement and consideration of Norton's work.

Additionally, Plaintiffs do not point to any indication prior to Ensley's own arrest to indicate that RPD officers should have suspected problems with search warrant affidavits offered by Norton. The U.S. District Court for the Western District of Virginia faced a similar issue in *Jackson v. Brickey*, 771 F. Supp. 2d 593 (W.D. Va. 2011), where a plaintiff alleged supervisory liability against a police chief after the plaintiff's arrest without probable cause. Because the plaintiff failed to allege that the chief was both aware of and ignored similar instances of arrests without probable cause, the court concluded that the plaintiff did not state a claim against the chief. *Id.* at 603. A similar result follows in this case, where Plaintiffs have not alleged any instance of falsified confidential informant resumes prior to their own cases, nor have they alleged that any officer was aware of and ignored such instances.

### C. Plaintiffs Cannot Establish Any Link Between Their Alleged Injuries and These Officers Because the Fruit of the Poisonous Tree Does Not Apply in the Context of a Section 1983 Action.

Finally, the Complaint recites many facts that break the causal chain between any alleged inaction by Norton's supervisors and the alleged constitutional injuries suffered by Plaintiffs. The Complaint details the many intervening causes of Plaintiffs' respective detentions, including:

- Discovery of contraband in Plaintiffs' possession (Compl. ¶¶ 74, 87, 99-100);

- Criminal charges brought against Plaintiffs (Compl. ¶¶ 87, 100, 110);

- And, **each Plaintiff's guilty plea** (Compl. ¶¶ 76, 87, 100, 110).

Plaintiffs argue that their searches, arrests, and detentions can all be traced back to Norton, with the misstatements in his warrant affidavits serving as the root of their alleged

constitutional violation. But, the fruit of the poisonous tree doctrine does not apply to civil proceedings, and Plaintiffs cannot restore the causal chain by linking Norton's acts through any alleged inactivity by the officers and ultimately to their own detentions. *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) ("[T]he fruit of the poisonous tree doctrine is not available to assist a section 1983 claimant.") (quoting *Townes v. City of New York*, 176 F.3d 138, 148-49 (2d Cir. 1999)). Without this doctrine, an unlawful search imposes no liability on an investigating officer for a subsequent arrest. *Id.*

This problem is fatal and merits further explanation. Plaintiffs' entire theory of liability hinges on the fruit of the poisonous tree doctrine, which was never intended to apply in the civil context. The doctrine exists to prevent officers from taking "dubious shortcuts" to obtain necessary evidence. *Nix v. Williams*, 467 U.S. 431, 446 (1984). It has no application to a civil proceeding under Section 1983 meant to vindicate supposed constitutional violations. Any alleged links do not, and as a legal matter cannot, bind these Officers to the acts of Norton.

In sum, Plaintiffs cannot state a claim for supervisory liability against these officers because, as they acknowledge, a number of factors came between any alleged supervisory inaction and any constitutional injury they supposedly suffered. Each Plaintiff in this action, after being advised of his rights, pled guilty. None of the Plaintiffs contends that he as actually innocent of the charges to which he pled guilty. Plaintiffs cannot argue around this reality to impose liability on Norton's supervisors, who were at least three links removed from the cause of their respective incarcerations. Plaintiffs' allegations fail to state a claim for supervisory liability and, as a result, dismissal of their Complaint is appropriate.

There is more. Plaintiffs' demands fail to acknowledge that they have already received their remedy – vacatur of their convictions. "The evil of an unreasonable search or seizure is that

it invades privacy, not that it uncovers crime, which is no evil at all." *Townes*, 176 F.3d at 148; *see also Ware*, 652 F. Supp. 2d at 706 ("Ware has already reaped an enormous benefit by reason of the alleged illegal seizure to which he was subjected: his freedom, achieved by the decision of the Commonwealth's Attorney not to pursue prosecution.") (internal citations and quotation marks omitted). Plaintiffs have achieved their freedom, despite repeatedly acknowledging that they were guilty of narcotics offenses. Their Complaint now overreaches and seeks to pin liability for their arrests, convictions and incarcerations on Norton and his superiors without admitting that *their own conduct* led to their arrests, convictions, and incarcerations. Individuals have a right to Fourth Amendment protection, not a right to possess narcotics. Plaintiffs have not stated a claim for supervisor liability[8] and dismissal of the Complaint, in its entirety, is required.

### D.    Plaintiffs' Claims for Supervisory Injury Must Be Dismissed Because Their Underlying Claims Fail.

Finally, it is unclear to what particular "constitutional injury" Plaintiffs attempt to tie their supervisory claim. *See Patrick*, 2016 U.S. Dist. LEXIS 136380, at *17-18 n.19 (noting that there must be an "'affirmative causal link' between the supervisor's inaction *and the particular constitutional injury* suffered by the plaintiff" (emphasis added)). The supervisory claim fails for the additional reason that the underlying constitutional claims are deficient.

---

[8]    As noted above, Plaintiffs' pleading is deficient on its face, in that it is difficult to ascertain precisely what they allege against these Officers. To the extent Plaintiffs seek to allege bystander liability, their claims also fail. To state a claim for bystander liability, a plaintiff must allege that an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Plaintiffs have not alleged that any officer knew about Norton's alleged constitutional violations, had a reasonable opportunity to prevent the violations and chose not to act. Indeed, Plaintiffs have not alleged that these officers even *knew* about the search warrants at issue or were aware of Plaintiffs' arrests.

First, Plaintiffs' cannot state a "supervisory claim" based on deprivation of liberty because their underlying claim for deprivation of liberty must be dismissed, both because (1) the claim is time barred, *see supra* at 13-16, and (2) the Officers cannot be held individually liable for any personal actions leading to a deprivation of liberty, *see supra* at 16-18.

Second, Plaintiffs cannot state a "supervisory claim" based on malicious prosecution, because they fail to state a malicious prosecution claim in the first instance.[9]  That claim requires "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).  Plaintiffs' malicious prosecution claims also are time-barred to the extent they rely on Plaintiffs' arrests as the "seizure," because each arrest preceded this Complaint by more than two years.  *See supra* at 13-16; Va. Code § 8.01-243. Those claims also fail to the extent they rely on their indictments as the "seizure," because each indictment was sought and returned by independent prosecutors and grand jury (or waived by the Plaintiffs themselves), and supported by the unchallenged evidence of guilt obtained *after* their arrests.  Those independent decisions break the causal link between any defects in the warrants and Plaintiffs' prison sentences.  *See Ware*, 652 F. Supp. 2d at 705 ("'[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant'" (quotation omitted)); *see also* discussion *supra* at 22-23.  Thus, the underlying claim for malicious prosecution based on these allegations must be dismissed.

In sum, because Plaintiffs' underlying constitutional claims are subject to dismissal, their claims for supervisory injury likewise must be dismissed.

---

[9]     Plaintiffs have not brought malicious prosecution claims against the moving Officers. The Officers address this issue only to the extent Plaintiffs seek to use the claim as a basis to argue supervisory liability.

## VI.   The Officers Are Entitled to Qualified Immunity Because They Had No Reason to Know of Any Alleged Constitutional Violation.

Finally, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison are entitled to qualified immunity as a matter of law.[10]   "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alfaro-Garcia*, Civil Action No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "To survive a motion to dismiss that raises qualified immunity, [the plaintiff] must (1) allege sufficient facts to make out a violation of a constitutional right, (2) that was clearly established at the time of the alleged violation.   *Id.* at *39 (internal citations and quotation marks omitted). And, the constitutional right at issue "must be defined at a high level of particularity."   *Id.*

Plaintiffs' convoluted Complaint makes it difficult to ascertain precisely what constitutional right they claim was violated, a sure indication of their failure to plead with a high level of particularity.   However, as noted above, Plaintiffs have not alleged facts that would demonstrate the violation of a constitutional right and certainly not one that was clearly established at the time of the violation.   An officer's conduct is viewed objectively in light of the relevant facts and circumstances existing at the time of the alleged violation.   *See Henry v. Prunell*, 652 F.3d 524, 535 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)) ("[O]bjectivity has been the touchstone of qualified immunity law for nearly thirty years.   The

---

[10]     Even though qualified immunity is an affirmative defense, a party may nonetheless raise the defense in a motion to dismiss pursuant to Rule 12(b)(6).   *See Alfaro-Garcia*, No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38 n.19 ("Alfaro-Garcia argues that, because qualified immunity constitutes an affirmative defense, it cannot be raised on a Rule 12(b)(6) motion.   The Fourth Circuit has squarely rejected this position.") (citing *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997)).

Supreme Court has made clear that the Fourth Amendment inquiry is one of objective reasonableness under the circumstances.").  As Plaintiffs' own Complaint demonstrates, the Officers had little evidence that would indicate that Norton was falsifying or altering confidential informant resumes.  On the two occasions when Norton's missteps came to his supervisors' attention he was reprimanded.  And, when issues with informant paperwork were discovered, Lt. Corrigan was tasked with implementing changes.  Under an objective standard, the conduct of these Officers was reasonable.

But, most importantly, Plaintiffs' Complaint offers no indication why any reasonable officer, including these Officers, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison, would have known that any of Plaintiffs' constitutional rights were violated.  Plaintiffs do not allege that *any* of the officers were present during their arrests or even signed off on the paperwork that Norton prepared for the search warrants.  As a result, all of these officers are entitled to qualified immunity and Plaintiffs' Complaint against them should be dismissed.

CONCLUSION

For the reasons stated above, Defendants Lieutenant Michael Alston, Lieutenant Brian Corrigan, Captain Martin Harrison, and Captain William Blackwell, by counsel, respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, enter judgment in favor of these Defendants, award costs and attorneys' fees expended herein, and grant such other and further relief as the Court deems just and appropriate.

Dated:  March 3, 2017                     **MICHAEL ALSTON,**
**BRIAN CORRIGAN,**
**MARTIN HARRISON, and**
**WILLIAM BLACKWELL**

By: /s/ Stephen C. Piepgrass

Ashley L. Taylor, Jr. (Va. Bar No. 36521)
Stephen C. Piepgrass (Va. Bar No. 71361)
Brooke K. Conkle (Va. Bar No. 87413)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: ashley.taylor@troutmansanders.com
E-mail: stephen.piepgrass@troutmansanders.com
E-mail: brooke.conkle@troutmansanders.com

*Counsel for Michael Alston, Brian Corrigan,
Martin Harrison, and William Blackwell*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiffs Wilbur Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam**
Mark J. Krudys
The Krudys Law Firm, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: jpreis@richmond.edu

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Fax: (804) 343-1901
Email: amyaustinlawyer@gmail.com

**Counsel for Defendant City of Richmond**
Stephen Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad St.
Richmond, VA 23219
Phone: (804) 646-7946
Email: Stephen.Hall@richmondgov.com
Email: Richard.HillJr@richmondgov.com

**Counsel for Defendant Jason Norton**
David P. Corrigan
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
Phone: (804) 762-8017
Email: dcorrigan@hccw.com
Email: sfisher@hccwcom

**Counsel for Defendant Bryan T. Norwood**
Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods
Gateway Plaza
800 E. Canal St.
Richmond, VA 23219-3916
Phone: (804) 775-4712
Email: jharmon@mcguirewoods.com
Email: bschmalzbach@mcguirewoods.com

**Counsel for Defendants Christopher Gleason, Charles Sipple, and Roger Russell**
D. Cameron Beck, Jr.
C. Walker Terry
McCandlish Holton Morris
1111 E. Main Street, Suite 2100
P.O. Box 796
Richmond, VA 23218-0796
Phone: (804) 344-6322
Email: cbeck@lawmh.com
Email: wterry@lawmh.com

/s/ Stephen C. Piepgrass
Stephen C. Piepgrass (Va. Bar No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: stephen.piepgrass@troutmansanders.com

30460991