**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **WILBER ENSLEY, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-CV-024** |
| | ) | |
| **CITY OF RICHMOND,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT BRYAN T. NORWOOD'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT**

The Plaintiffs in this § 1983 case demand payment for their incarceration even though they pleaded guilty to drug and weapons offenses. Each Plaintiff was arrested because officers executing a search warrant discovered drugs, drug paraphernalia, and/or illegally possessed weapons. That evidence was sufficient for independent prosecutors to bring charges, for grand juries to return indictments, and (in one case) for a Plaintiff himself to waive indictment. And by pleading guilty, each Plaintiff conceded that this evidence was sufficient for conviction. Even now, in this malicious prosecution lawsuit, Plaintiffs do not dispute that they were guilty in fact of the crimes to which they pleaded guilty. Even though a lack of probable cause to prosecute is the *sine qua non* of a malicious prosecution claim, Plaintiffs view their guilt as simply "immaterial."

Instead, Plaintiffs demand compensation because they allege that Officer Jason Norton lied to obtain the initial search warrants, and as a result their sentences were later vacated. The City of Richmond's brief accurately explains why those allegations fail to state a claim for malicious prosecution or any other relief. Among other reasons, the grand juries' decisions to

indict Plaintiffs—or a Plaintiff's decision to waive indictment—conclusively established probable cause to prosecute. And Plaintiffs acknowledged the proof of their guilt by pleading guilty. In a civil case where neither the exclusionary rule nor the "fruit of the poisonous tree" doctrine apply, *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009), all those decisions break any causal chain between an improperly procured warrant and Plaintiffs' prison sentences.

This memorandum explains why former Richmond Chief of Police Bryan Norwood would not be liable in any event. There is no vicarious liability under § 1983. And under the Supreme Court's holding in *Ashcroft v. Iqbal*, a supervisor can only be liable if his *own individual actions* violated the Constitution. 556 U.S. 662, 676 (2009). Chief Norwood did not submit the warrant applications in question, did not instruct another officer to do so, and did not adopt or implement any policy of lying on warrant applications (nor do Plaintiffs allege that he did any of these). Because Plaintiffs do not allege that any of Chief Norwood's individual actions violated the Constitution, *Iqbal* precludes the claims against him.

Chief Norwood would not be liable even under the standard from pre-*Iqbal* cases. Based on that standard, Plaintiffs assert that a supervisor can be liable for deliberate indifference to the constitutional violations of another, even if the supervisor does not violate the Constitution himself. Plaintiffs think they have a smoking gun of deliberate indifference: in 2012, the leadership of the Richmond Police Department asked Lieutenant Brian Corrigan to "clean up the RPD's confidential informa[nt] program" that allegedly contributed to problems with the warrants in question. Compl. ¶ 131. But this allegation proves the *opposite* of deliberate indifference: assigning Lieutenant Corrigan to the CI program was, in Plaintiffs' own words, a "targeted effort by RPD leadership to fix serious problems." Compl. ¶ 134. Because Plaintiffs'

own allegations defeat their assertions of supervisory liability, the Court should dismiss all

claims against Chief Norwood.[1]

## ARGUMENT

I. **Plaintiffs fail to state a claim that Chief Norwood is liable for malicious prosecution as a supervisor.**

    A. **Plaintiffs cannot satisfy the requirements of the predicate claim for malicious prosecution.**

Plaintiffs cannot state a "supervisory claim" based on malicious prosecution because they

fail to state a malicious prosecution claim in the first instance. That claim requires "that the

defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v.

Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Fundamental to a malicious prosecution action

under § 1983 is "the deprivation of some constitutional right." *Lambert v. Williams*, 223 F.3d

257, 260 (4th Cir. 2000).

Plaintiffs' malicious prosecution claims fail at the outset because they do not plausibly

allege a violation of *their own* constitutional rights. "Fourth Amendment rights are personal

rights" and "may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

Thus, a criminal defendant cannot invoke the Fourth Amendment whenever he happens to be

"legitimately on premises where a search occurs." *Id.* at 141. He must show more: "the person

who claims the protection of the Amendment" must have "a legitimate expectation of privacy in

the invaded place." *Id.* at 143. But "visitors who were 'essentially present for a business

transaction' ha[ve] no legitimate expectation of privacy in the [dwelling] of a third party."

*United States v. Gray*, 491 F.3d 138, 145 (4th Cir. 2007) (quoting *Minnesota v. Carter*, 525 U.S.

---

[1] The City of Richmond's Motion to Dismiss provides further factual background based on the allegations in the Complaint.

83, 90 (1998)).  Plaintiffs do not even allege that they were legitimately present where they were arrested, let alone that they had legitimate expectations of privacy there.  Thus, Plaintiffs' allegations regarding the search warrants contain no "factual content that allows the court to draw the reasonable inference" that their Fourth Amendment rights were violated, and their failure to plead any facts showing a legitimate expectation of privacy "stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678.

To the extent Plaintiffs allege that their arrests (rather than the search warrants) were unlawful, the claims fail because Plaintiffs do not dispute that there was probable cause for their arrests based on evidence discovered when the search warrants were executed.  Even if Plaintiffs had standing to challenge the execution of the search warrants, in a civil action the court cannot ignore the undisputed evidence of guilt revealed in those searches.  *See Ware*, 652 F. Supp. 2d at 705 ("'[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'") (quoting *Townes v. City of New York*, 176 F.3d 138, 148–49 (2d Cir. 1999)).  Moreover, Counts I-IV are time-barred (as explained in the City of Richmond's brief) because each arrest preceded this Complaint by more than two years.  Va. Code § 8.01-243.

Finally, Plaintiffs' claims fail to the extent they rely on their indictments as the "seizure," because each indictment was sought and returned by independent prosecutors and grand juries (or waived altogether), and supported by unchallenged evidence of their guilt.  Those independent decisions break the causal link between any defects in the warrants and Plaintiffs' prison sentences.  Thus, no claim for malicious prosecution is possible on these allegations.

### B.    *Iqbal* eliminated Plaintiffs' theory of supervisory liability.

Even if Plaintiffs could state a predicate claim for malicious prosecution, Chief Norwood would not be liable as a supervisor.  Plaintiffs' theory of supervisory liability in Counts II and III is that Chief Norwood "had actual or constructive knowledge" of a risk of constitutional injury,

Compl. ¶¶ 141, 145, and showed "deliberate indifference to or tacit authorization of" that risk, Compl. ¶¶ 142, 146. The Supreme Court rejected that theory in *Ashcroft v. Iqbal*.

The plaintiff in *Iqbal* argued that federal officers unconstitutionally discriminated against post-9/11 detainees on the basis of race and religion, and that their supervisors should be liable "under a theory of 'supervisory liability' . . . for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria.'" 556 U.S. at 677. The Supreme Court "reject[ed] this argument." *Id.* The Court explained that "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id.* That is because a supervisor "is only liable for his or her own misconduct." *Id.* And "[b]ecause vicarious liability is inapplicable in *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added).

*Iqbal* thus eliminated supervisory liability based on a supervisor's alleged "knowledge and acquiescence." *Id.* at 677. As the dissent explained, this holding "is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects." *Id.* at 693 (Souter, J., dissenting); *see also* Martin A. Schwartz, *Section 1983 Litigation* 117-18, Fed. Jud. Ctr. (3d ed. 2014) ("[T]he Court jettisoned the very concept of supervisory liability, and held that a supervisor may be found liable under § 1983 or *Bivens* only when the supervisor herself

engaged in unconstitutional conduct."). *Iqbal* accordingly marked a dramatic change in the law of supervisory liability.[2]

Of course, a supervisor could still be liable under § 1983 if his *own individual actions* violate the Constitution, such as by actively promulgating an unconstitutional policy. *See, e.g.*, *Iqbal*, 556 U.S. at 677 ("[T]o state a claim based on a violation of a clear established right, [plaintiff] must plead sufficient factual matter to show that [the supervisors] adopted and implemented the detention policies at issue . . . for the purpose of discriminating on account of race, religion, or national origin."). But Plaintiffs cannot and do not even attempt to allege facts showing that Chief Norwood adopted or implemented any unconstitutional policy. *See id.* at 664, 681 (allegations that a supervisor was the "principal architect" of an unconstitutional policy or "'instrumental' in adopting and executing it" are "conclusory and not entitled to be assumed true"). And Plaintiffs plead no facts showing that Chief Norwood "*through [his] own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added). Rather, Plaintiffs' claims

---

[2] *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) ("We therefore conclude that after *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges."); *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("While it appears that our precedent would have previously allowed a plaintiff to recover from a supervisor based on that supervisor's 'deliberate indifference' toward a subordinate's purposeful discrimination, . . . after *Iqbal* a plaintiff must also show that the supervisor possessed the requisite discriminatory intent."); *George v. Owen*, 2009 WL 5125307, at *4 & n.4 (D.S.C. Dec. 28, 2009) (Floyd, J.) (suggesting that Fourth Circuit precedent is inconsistent with *Iqbal*). Unlike the Seventh and Tenth Circuits, the Fourth Circuit has continued to apply pre-*Iqbal* precedent without apparent consideration of how *Iqbal* changed the standard of supervisory liability. *See, e.g.*, *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (citing the supervisory liability standard of *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). *But see Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) ("[T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can be held liable only for 'his or her own misconduct.'").

amount to the same "knowledge and acquiescence" theory rejected in *Iqbal*, *id.* at 677, and must be dismissed.

      **C.**    **Plaintiffs' theory of supervisory liability would fail against Chief Norwood in any event.**

Even if Plaintiffs' theory had not been eliminated by *Iqbal*, their claims would fail. Under the Fourth Circuit's standard for supervisory liability based on pre-*Iqbal* law, a plaintiff must show (1) "actual or constructive knowledge of a risk of constitutional injury"; (2) "deliberate indifference to that risk"; and (3) "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiffs do not plausibly allege that Chief Norwood had "actual or constructive knowledge" of, or "deliberate indifference" to, their particular constitutional injury. First, Plaintiffs "cannot rely upon scattershot accusations of unrelated constitutional violations" because they must demonstrate deliberate indifference to the risk "that a violation of a *particular* constitutional or statutory right will follow." *Carter*, 164 F.3d at 218. Plaintiffs must show that Chief Norwood knew or should have known specifically about Officer Norton's alleged misstatements with respect to confidential informants on search warrant applications. But most of Plaintiffs' laundry list of alleged wrongdoing by Officer Norton is an impermissible attempt "to splatter-paint a picture of scattered violations." *Id.* at 219; *see also, e.g.*, Compl. ¶¶ 27-34 (alleging that Officer Norton seized cash without writing receipts); ¶¶ 38-43 (dishonest excuses); ¶¶ 44-45 (involvement with gangs); ¶¶ 128-30 (post-dating signatures on confidential informant payment forms).

Second, Plaintiffs attempt to rely on undated rumors to show Chief Norwood's knowledge of Officer Norton's alleged wrongdoing. *See* Compl. ¶¶ 113-20. Much of those rumors are irrelevant "scattershot accusations" that do not reflect the particular constitutional violations alleged by Plaintiffs. *Carter*, 164 F.3d at 218. But even if the rumors were relevant, Plaintiffs do not allege that those rumors relate to the period *before* their arrests, the last of which occurred in February 2012. These allegations thus lack the "factual content that allows the court to draw the reasonable inference" that Chief Norwood was on notice at the necessary time, and create at most a "sheer possibility" that Chief Norwood would be liable. *Iqbal*, 556 U.S. at 678. Plaintiffs' rumor mill accordingly "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Third, Plaintiffs attempt to demonstrate Chief Norwood's knowledge by showing the steps that RPD took in response to alleged misconduct or problems with the confidential informant program. But those steps are conclusive evidence that Chief Norwood was *not* deliberately indifferent. For example, bringing in Lieutenant Corrigan to address issues with recordkeeping and accountability with the confidential informant program shows that the RPD leadership was not indifferent to those issues. *See* Compl. ¶ 134. To the contrary, Plaintiffs concede that the leadership made "a targeted effort" to fix them. *Id.* Likewise, issuing reprimands to Officer Norton based on his confiscation of drugs without making an arrest (Compl. ¶¶ 121-22) and failure to properly record signatures for payments to confidential informants (Compl. ¶ 123) shows that the RPD was *not* indifferent to that misconduct. When a supervisor takes disciplinary action in response to officer misconduct, "it simply cannot be said that he is indifferent to the risk of the underlying constitutional violation." *Carter*, 164 F.3d at 221.

Finally, Plaintiffs cannot establish "an affirmative causal link" between Chief Norwood's supposed inaction and Plaintiffs' prison sentences. That is because there were multiple "intervening superseding causes that break the causal chain." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In particular, after Plaintiffs were arrested, they were imprisoned due to the "subsequent acts of independent decision-makers," *id.*, including the prosecutors who saw fit to press charges, the grand juries that decided to indict (or the Plaintiff who decided to waive indictment), and the Plaintiffs themselves who all pleaded guilty. Given that the "fruit of the poisonous tree" doctrine does not apply here, *Ware*, 652 F. Supp. 2d at 705, the causal chain between Chief Norwood and Plaintiffs' imprisonment is far too attenuated to hold Chief Norwood liable as a supervisor.

## II. Plaintiffs fail to state a "deprivation of liberty" claim against Chief Norwood.

### A. Plaintiffs' allegations are governed by the Fourth Amendment, not the Due Process Clause.

The Complaint also must be dismissed to the extent it invokes generic due process principles that do not apply in this specific criminal justice context. Count V claims a "Deprivation of Liberty in Violation of the United States Constitution," and Count VI makes materially identical allegations to Count V. Together, these Counts appear to invoke the Fourteenth Amendment's protection against "depriv[ing] any person of life, liberty, or property, without due process of law."[3]

---

[3] The basis for Counts V and VI is unclear. To the extent that those Counts assert "bystander liability" under the Fourth Amendment, they fail because the assertion that Chief Norwood had "actual *or constructive* knowledge" does not plausibly allege the requirement for bystander liability that he actually "*knows* that a fellow officer is violating an individual's constitutional rights." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Even if constructive knowledge were sufficient for bystander liability (it is not), there was no reason that Chief Norwood should have known that the warrants lacked probable cause because Plaintiffs all pleaded guilty.

But the Fourth Amendment governs Plaintiffs' allegations—not the Fourteenth. "[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996). That is because "'[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial.'" *Taylor v. Waters*, 81 F.3d 429, 435-36 (5th Cir. 1996) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.7 (1975)).

The Fourth Circuit thus rejected a deprivation-of-liberty claim under § 1983 in *Brooks*. That plaintiff alleged that the arresting officer violated the Fourteenth Amendment by failing to "attempt to terminate the criminal proceedings after it became clear that [the plaintiff] was innocent." 85 F.3d at 184. The Fourth Circuit held that even if the plaintiff could recover for malicious prosecution on a Fourth Amendment theory, the deprivation-of-liberty allegations failed to state a claim because they were governed exclusively by the Fourth Amendment. *Id.*; *see also Cooper v. Lippa*, 2012 WL 1410077, at *4 (E.D. Va. Apr. 23, 2012) (dismissing a similar deprivation-of-liberty claim because "the Due Process Clause of the Fourteenth Amendment does not provide a cause of action for a plaintiff's arrest and prosecution on state criminal charges").

Although there may be a Fourteenth Amendment claim for the fabrication of evidence that forms the basis for conviction *at trial*, none of these Plaintiffs proceeded to trial. *See Washington v. Wilmore*, 407 F.3d 274, 276-77 (4th Cir. 2005) (affirming the denial of qualified immunity from a Fourteenth Amendment claim against an officer who helped obtain a conviction by testifying at trial about the contents of a fabricated police report); *see also Taylor*,

81 F.3d at 436 n.5 (forbidding a § 1983 action for deprivation "of a liberty interest in avoiding prosecution on less than probable cause," but recognizing that there may be a due process claim for an officer's failure to disclose exculpatory information that deprives "§ 1983 plaintiffs of their right to a fair *trial*") (emphasis added). Furthermore, each of their guilty pleas was supported by unchallenged evidence of drugs, drug paraphernalia, and/or weapons seized during the execution of search warrants. Thus, Plaintiffs have no Fourteenth Amendment claim here.

> **B.** **Plaintiffs' supervisory liability claim would fail even if there were a cause of action for deprivation of liberty here.**

In any event, Plaintiffs' deprivation-of-liberty claims would fail against Chief Norwood. As already explained, Chief Norwood was not personally involved (and is not alleged to have been personally involved) in the violations alleged here. That dooms these claims under *Iqbal*. *See Iqbal*, 556 U.S. at 676 (Under § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."). Moreover, Plaintiffs' allegations do not meet even the pre-*Iqbal* standard for supervisory liability, *see* section I.C *supra*, and Plaintiffs do not attempt to allege that they would, *see* Compl. ¶¶ 156, 161.

## III. Chief Norwood is entitled to qualified immunity.

Finally, Chief Norwood is entitled to qualified immunity because an objectively reasonable officer in his position would not have known that his actions violated Plaintiffs' rights. "A police officer is immune from civil liability unless he reasonably should have known that his actions violated clearly established constitutional rights." *Cousins v. Aronson*, 2017 WL 101313, at *3 (E.D. Va. Jan. 10, 2017). Plaintiffs' allegations do not establish why Chief Norwood should have known that any of his actions violated their rights. First, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact

that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith." *Smith v. Munday*, 848 F.3d 248, 2017 WL 465287, at *5 (4th Cir. Feb. 3, 2017). As far as Chief Norwood knew, that is precisely what happened here. Furthermore, Plaintiffs made little or no effort to suppress the evidence against them and then pleaded guilty. Those facts would not have put a reasonable officer on notice of any defects in the warrants that produced uncontested proof of Plaintiffs' guilt.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

Dated: March 3, 2017

Respectfully submitted,

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on March 3, 2017, I electronically filed the foregoing document with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to all registered users.

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com