**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **WILBER ENSLEY, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17CV024** |
| | ) | |
| **CITY OF RICHMOND, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF CITY OF RICHMOND'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

In their Amended Complaint, five Plaintiffs sue the City of Richmond ("City") and nine individual Defendants related to the Plaintiffs' incarcerations for drug and weapons crimes in 2009 and early 2012. All the Plaintiffs pled guilty to the crimes in question after being indicted or waiving indictment, following independent actions by prosecutors. Their arrest warrants were later found to be defective and the Plaintiffs' sentences were vacated, leading to their early release.

Court filings confirm that, based on the federal government's investigation of Norton, the probable cause information for at least three of those warrants was accurate, *and* was provided by a "reliable informant," though ones who were apparently misidentified. Not content with their shortened sentences because of those mistakes, the Plaintiffs sue the City and several Richmond Police Department ("RPD") supervisors for failing to stop Defendant Jason Norton from improperly preparing and executing those warrants. The Plaintiffs demand millions of dollars for the time they spent in prison, for crimes they clearly committed and admitted committing.

The Amended Complaint still alleges facts consistent with a malicious prosecution theory. Am. Compl. ¶¶ 152-153. However, that theory still fails because the intervening actions of grand juries and prosecutors, and the Plaintiffs' own guilty pleas, still break the causal chain between their arrests and prison sentences. Any Fourth Amendment claims are still time barred if the date of these arrests—in 2009 and February 2012—accrue these Section 1983 claims.

The Plaintiffs' allege two claims against the City. First, under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 694 (1978), they attempt to show that the City had an impermissible custom, or showed deliberate indifference, regarding its treatment of Norton and the confidential informant program. But the Amended Complaint lacks adequate support for either theory. As for custom, it still alleges only one clear, warrant-related incident by Norton, known to the City's policymaker prior to these arrests, for which Norton was disciplined by that policymaker.

With regard to indifference, the Amended Complaint admits that the RPD reprimanded Norton twice following internal investigations. The RPD also took steps to improve the informant program once they and federal authorities discovered disturbing patterns in Norton's warrants. This is the opposite of deliberate indifference.

The second claim against the City is brought under the Eighth and Fourteenth Amendments for "cruel and unusual punishment" and deprivation of liberty, respectively. Both theories fail as explained below. The court should dismiss the claims against the City with prejudice, and dismiss all the other federal claims.

# I. FACTUAL BACKGROUND

The Amended Complaint repeats the error in the initial Complaint of alleging various incidents about Norton unrelated to his filling out of warrants, or which occurred after the 2009 and February 2012 arrests here. Scattered accusations, not directly related to Plaintiffs alleged injuries, cannot form the basis for liability under *Monell*. *Carter v. Morris*, 164 F.3d 215, 218-219 (4th Cir. 1999)("splatter-paint" violations lacked "close fit" to plaintiff's injuries); *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011)(four prior *Brady* violations by prosecutors did not provide adequate notice about the specific *Brady* violation at issue there, which concerned blood sample lab evidence). Contemporaneous or subsequent conduct cannot provide notice for a constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011)(citation omitted); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)(conduct after alleged violation cannot cause violation). *Consequently, only warrant-related wrongs known to the City's policymaker, prior to the last two arrests in February 2012, matter under* <u>Monell.</u>

The Amended Complaint begins by alleging that Norton took money from informants, but the source for these allegations is the FBI investigation that began in mid-2012, after the arrests here. Am. Compl. ¶ 26-34. Those allegations also lack the "close fit" required under *Monell* for warrant-related injuries. The Amended Complaint then discusses Norton's two formal reprimands from March 25, 2011. The first concerned his failure to follow proper arrest procedures, not involving a warrant, back in 2009. *Id.* ¶ 35. Only the second one concerned a warrant from July 2010, where there were N-10 signatures that did not match, and where one of the persons listed as an informant was not

properly registered. *Id.* ¶ 37. *This is the only clear warrant related, pre-arrest allegation in the entire Amended Complaint.*

The Amended Complaint continues on for three pages about post-arrest incidents that cannot form the basis for liability. *Id.* ¶¶ 38-42; *Connick,* 563 U.S. at 63 n.7. It then accuses Norton of tipping off an informant, being too close to one or more of them, and not executing a warrant, none of which are closely tied to the Plaintiffs' injuries. Am. Compl. ¶¶ 44-53. It then details patterns in Norton's warrants discovered in mid-to-late 2012, *after* the last arrests here in February 2012. *Id.* ¶¶ 67-72. The Amended Complaint then details the arrest, indictment, and guilty pleas of each of the Plaintiffs, Wilber Ensley (*id.* ¶¶ 73-89), Covey Andrews (*id.* ¶¶ 90-98), Shamar Archer (*id.* ¶¶ 99-111), Deunte Humphries and Jamar Gilliam (*id.* ¶¶ 112-120).

Next come mostly undated allegations describing "rumors" about Norton. *Id.* ¶¶ 122-128.[1] His two formal reprimands come next, only one of which involved a warrant. More specifically, in March 25, 2011, RPD's policymaker, former Police Chief Norwood, reprimanded Norton because informant signatures on two N-10 payment forms "did not match" other signatures from that informant, and because the name on one form "did not match up" with the informant on that form. *Id.* ¶ 135.

The Plaintiffs then make the following leap in logic: "Thus, as of March 2011, the RPD knew of Norton's involvement in forged signatures on N-10 forms, and thus, also knew that Norton had likely lied about his sources in applying for warrants." *Id.* There are at least two problems with these conclusions: first, just because a signature does not appear to match another does not mean, *ipso facto*, that it was "fraudulent." Second, just

_____

[1] The only dated allegations in this section of the Amended Complaint accuse Norton of being "too close" with an informant identified as "R.A." Am. Compl. ¶¶ 129-132.

because Norton may have taken shortcuts on N-10 signatures, or improperly listed an informant who was not registered, does not mean that he was "likely" lying about sources for his warrants. The court should not accept the Plaintiffs' conclusion.

In fact, court documents in the three underlying federal criminal cases show that Norton had reliable informants in each of those cases, but ones who were apparently misidentified. The U.S. Government's Supplemental Response to Ensley's Motion to Vacate confirms that Ensley possessed cocaine with intent to distribute, cocaine base, drug packaging materials, digital scales, a firearm, ammunition, and $6,530 in cash. It also states that the FBI investigation "has made clear . . . *that the probable cause information in the affidavit in this case is accurate, and was provided by a reliable informant*" (emphasis added).[2] The Government made this same statement in the Andrews and Archer criminal cases.[3] Perhaps this explains why Norton was not prosecuted, and shows why these Plaintiffs deserve no recovery.

The allegations then shift to the RPD's confidential informant program. In mid-to-late 2012, the FBI discovered disturbing patterns within Norton's warrants, leading to FBI interviews of RPD personnel that year. *Id.* ¶ 138. The Plaintiffs focus a great deal of attention on problems with RPD officers not properly witnessing informant payments on N-10 forms. *See, e.g., id* ¶¶ 142-143. But taking improper shortcuts on those signatures does not *ipso facto* lead to the conclusion that someone like Norton was falsely accusing the Plaintiffs or others of wrongdoing. This N-10 problem needed to be corrected, but it does not have the close fit to the Plaintiffs' injuries required under *Monell*.

---

[2] ECF 3:09-cr-00032-HEH-DJN, Doc. 29, p.2.
[3] ECF 3:09-cr-00368-HEH-DJN, Doc. 47, p.2 (Andrews); ECF 3:09-cr-00436-HEH-DJN, Doc. 35, p.2 (Archer).

Once the RPD began understanding the problems with Norton's warrants in mid-to-late 2012, the Department acted. More specifically, former Chief Norwood asked Defendant Brian Corrigan to "clean up" the informant program in August 2012. Am. Compl. ¶ 144. The FBI began its formal investigation that Fall. *Id.* ¶ 148. Following that investigation courts vacated the Plaintiffs' sentences and the Plaintiffs were released.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court accepts all the properly pled allegations as true and construes all facts in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 12(b)(6); *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504 (4th Cir. 1999). But a court "need not accept as true mere legal conclusions couched as factual allegations." *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted). A court may consider matters on the public record without converting the motion to one for summary judgment. *Papasan*, 478 U.S. at 286 n.1. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion to dismiss the complaint…not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

# III. ARGUMENT

## A. The Plaintiffs' Statute of Limitation Problem.

It is first important to determine what causes of action the Plaintiffs are alleging. As the court knows, federal courts borrow the state's limitation period for personal injury torts for Section 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007)(citations omitted). In Virginia, that is two years. Va. Code § 8.01-243. But the question of when a Section 1983 claim *accrues* is a question of federal law. *Wallace*, 549 U.S. at 388. These claims accrue when a plaintiff has "a complete and present cause of action." *Id.*

Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. *Miller v. Prince George's County*, 475 F.3d 621, 627 (2007). For such claims, the Fourth Circuit takes the position established by Justice Scalia in a footnote in *Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 (1994), that claims challenging an unlawful search "do not necessarily imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of *Heck*. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015). Consequently, the cause of action accrues when the Plaintiff "knows or has reason to know of his injury." *Wallace*, 549 U.S at 387; *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 389 (4th Cir. 2014)(citing *Wallace, id.*).

Both this court and the Fourth Circuit hold that a plaintiff has notice of a potential Section 1983 claim at the time of a search and seizure. *See Smith v. McCarthy,* 349 F. App'x 851, 857 (4th Cir. 2009); *Craddock v. Fisher,* Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015). These cases and others cited by other Defendants show that in the Fourth Circuit, Section 1983 claims alleging an illegal search and seizure accrue at the time of the search, arrest, or seizure.

All these claims are time-barred since the arrests occurred in 2009 and February 2012. Am. Compl. ¶¶ 73, 91, 108, 118. That is when the Plaintiffs, either questioning their arrests or concerned about Norton himself, could have challenged the warrants to test the information in them.[4] They did not. Consequently, any search and seizure claim is time-barred. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)(dismissing Section 1983 suit filed more than two years after search).

The Amended Complaint is less clear as to whether the Plaintiffs are pursuing claims under theories alleging unlawful arrest or malicious prosecution. Instead, it simply alleges "constitutional violations" and violations of the Eighth and Fourteenth Amendments against the City. Am. Compl. ¶¶ 173-177, 190-196 (Counts VI and IX). Any Plainitff that is, in fact, alleging malicious prosecution (presumably to avoid the time-bar above), must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)(citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). The key inquiry is to determine at what point each plaintiff was seized "pursuant to legal process," and whether or not criminal proceedings were "terminated" in the Plaintiffs favor.

The Amended Complaint and criminal documents referenced in it yield the following:

---

[4] Alternatively, the very latest date the Plaintiffs knew or had reason to know of their injuries was when they moved to vacate their sentences. This would still leave Ensley's, Andrews', and Archer's claims time-barred: they moved to vacate in 2014. Case No. 3:09-cr-00032-HEH-DJN-1, Dkt. No. 20; Am. Compl. ¶¶ 97, 110. Under this alternative theory, discovery would be needed to determine whether Humphries' and Gilliam's claims are time-barred: the Commonwealth moved to vacate their sentences in July 2015 (Am. Compl. ¶ 120), but they may have known about these warrant issues earlier.

Wilbur Ensley: He was arrested under a warrant on January 20, 2009. Am. Compl. ¶ 82. Officers found contraband at his home. *Id.* He pled guilty in federal court to possessing drugs with the intent to distribute, and to possession of a firearm. *Id.* ¶ 84; ECF 3:09-cr-00032-HEH-DJN, Doc. 14, p.2. Before pleading guilty he was duly indicted by a grand jury. ECF 3:09-cr-00032-HEH-DJN, Doc. 7. On or about April 2, 2015, this court vacated Ensley's sentence and he was released from prison. Am. Compl ¶ 89.

Covey Andrews: He was arrested on September 11, 2009, during the execution of a search warrant. *Id.* ¶ 96 On October 19, 2009, the U.S. Government indicted him on federal charges. *Id.* On December 22, 2009, April 13, 2009, Andrews pled guilty to possession of heroin with the intent to distribute, and to possession of a firearm in furtherance of a drug crime. *Id.*; ECF 3:09-cr-00368-HEH-DJN, Doc. 13, p.1. On or about April 1, 2015, this court vacated his sentence and he was released from prison. Am. Compl. ¶ 98.

Shamar Archer: He was arrested on October 9, 2009, during the execution of a search warrant. *Id.* ¶ 108. Archer waived indictment and pled guilty to possession of cocaine with intent to distribute and possession of ammunition by a felon. ECF 3:09-cr-00436-HEH-DJN, Doc. 17, p.1. On or about April 2, 2015, this court vacated his sentence and he was released from prison. Am. Compl. ¶ 111.

Deunte Humphries: He was arrested on February 23 or 24, 2012, during the execution of a search warrant. *Id.* ¶ 118. On August 6, 2012, he was indicted on drug charges. *See* EXHIBITS A and B. On September 28, 2012, he pled guilty to multiple

charges. Am. Compl. ¶ 119. On August 3, 2015, a circuit court judge vacated his two convictions.[5] *Id.* ¶ 120.

Jamar Gilliam: He was also arrested sometime between February 23 and 24, 2012, during the execution of a search warrant. Am. Compl. ¶ 118. On August 6, 2012, he was indicted on drug charges. *See* EXHIBITS C and D. He pled guilty to drug charges on October 2, 2013. Am. Compl. ¶ 119. On November 6, 2013, he was sentenced to 24 months in jail under a plea agreement. *Id.* According to the Amended Complaint, a circuit court judge vacated his sentences on July 1, 2015. *Id.* ¶ 120.[6]

As to each Plaintiff, there are three possible accrual dates for their cause of action: (1) the date of the search and arrest, (2) the date of their indictments, or (3) the date when their criminal proceedings terminated in their favor. For the first two (whether couched as an unlawful search, arrest, or seizure), the two year statute of limitations has expired.

The Plaintiffs focus entirely on alleging that Defendant Norton falsified search warrant affidavits and, conducted illegal searches, which were not supported by probable cause. Because the entire Amended Complaint focuses on whether the warrants (and not the subsequent indictments) were supported by probable cause, *all of the Plaintiff's claims, no matter how couched, are really just § 1983 claims alleging unlawful search and seizure*. To the extent the court rules that any such claims based upon illegal search are now time-barred, the Plaintiffs' claims survive only under a malicious prosecution theory, which also fails for the reasons stated below.

_____

[5] The City maintains that this order, and the one vacating Plaintiff Gilliam's sentence, may be void *ad initio* because they were entered well after 21 days following the initial sentencing orders. *See Locklear v. Commonwealth,* 46 Va. App. 488 (2005)(interpreting Va. Sup. Ct. R. 1:1). If these latest orders are void, Humphries and Gilliam would be unable to meet the "favorable termination" requirement for malicious prosecution.
[6] State court filings put this date at September 16, 2015.

Even if this court finds that one or more of the Plaintiffs can meet the favorable termination prong, no Plaintiff has pled or can plausibly plead any facts establishing a malicious prosecution claim because each of those indictments was supported by probable cause as a matter of law. Even if the indictments were not supported by probable cause, the actions of prosecutors, and the Plaintiffs through guilty pleas, broke the causal chain between the Defendants and any harm to the Plaintiffs. They allege that their pleas were not voluntary and intelligent because they were not aware of the alleged Fourth Amendment violations. Am. Compl. ¶ 156-57. But the Fourth Circuit has rejected that argument. *See United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010)(Fourth Amendment violation does not undermine guilty plea).

The Fourth Circuit has stated that "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Evans v. Chalmers*, 703 F.3d at 648. Because Section 1983 constitutional torts "require a demonstration of both but-for and proximate causation" *id.* at 674 (citing *Murray v. Earle*, 405 F.3d 278, 289-90 (5th Cir. 2005) and *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)), "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" *id.* (citation omitted).

Such intervening acts "of other participants in the criminal justice system' insulate a police officer from liability," except in certain circumstances not present here.[7]

---

[7] The three "circumstances" that override the superseding cause by "other participants" are: "when [an officer] lied to or misled the prosecutor…failed to disclose exculpatory evidence to the prosecutor….or unduly pressured the prosecutor to seek the indictment."

*Id.* The Fourth Circuit recognizes that "[it] has long since been settled by the Supreme Court that 'an indictment "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the existence of probable cause.'" *Durham v. Horner*, 690 F. 3d 183, 189 (2012)(citation omitted).

The *Durham* court noted that "notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" *Id.* (internal citation omitted). As in *Durham*, there is no allegation here that Norton testified before any of the grand juries. Attached Exhibits A through D show another officer testified to state grand juries. Therefore, as in *Durham*, "the grand jury's probable cause determination and its [ ] indictments were the proximate cause of the Plaintiff's arrest and detention." *Id.*

In addition, each indictment was supported by the presence of drugs or weapons. Whether or not evidence was obtained lawfully goes to whether the search was lawful, and whether the initial seizure was lawful, *not* whether the indictments were supported by probable cause. Unlawfully obtained evidence can still support probable cause in actions such as this one. *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009)("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983

---

*Evans* at 647-48 (internal citations omitted). The Court in *Evans* stated this rule as "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Id.* at 648 (internal citation omitted). There is no such evidence alleged here.

claimant.")(quoting *Townes*, 176 F.3d at 148-49); *Sommerville v. Dobson*, 2011 U.S. Dist. LEXIS 156380, *36 (E.D. Va. 2011)(same).[8]

As noted by other Defendants, the Plaintiffs' demand for relief runs counter to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes,* 176 F.3d at 148. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.*; *Ware*, 652 F. Supp. 2d at 706 (noting that the plaintiff obtained an enormous benefit prior to filing suit, as the Commonwealth's Attorney elected not to pursue charges against him).

### A. There Is Neither Proximate Cause Nor Damages Under Any Theory.

As noted, the fruit of the poisonous tree doctrine does not apply to civil proceedings like this one. *Ware*, 652 F. Supp. 2d at 705. Without this doctrine, an unlawful search imposes no liability on an investigating police officer for a subsequent arrest. *Id.* Given that, there can be no liability for any of the Defendants. The Plaintiffs cannot use this theory to show causation or claim damages due to careless mistakes in Norton's warrants. The intervening indictments or waiver of indictments and the

---

[8] Again, any claim implicating Officer Norton and others, including the City, for knowingly obtaining a tainted search or arrest warrant, is time-barred. *See Miller v. Prince George's County*, 475 F.3d 621 (2007)(plaintiff's unfavorable situation was remedied before formal prosecution began). Here, not only were the charges pursued based upon indictments (with intervening actions by prosecutors and grand juries) or a waiver of indictment, but there were intervening actions by the Plaintiffs themselves through guilty pleas. Other than one perfunctory, three-sentence motion to suppress that was denied (ECF 3:09-cr-00368-HEH-DJN, Doc. 4), no Plaintiff contested the presence of drugs, weapons, or both. If they were innocent, they would have known at the outset that there were deficiencies in the warrant applications.

Plaintiffs' own guilty pleas further sever the causal chain between the warrants and their sentences. Given these facts and law, all the claims should be dismissed with prejudice.

**B. The Plaintiffs Fail To State A Claim Against The City Under *Monell*.**

Because there is no actionable constitutional violation here, there is no basis for municipal liability. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999)(no underlying constitutional violation, no municipal liability). However, if the court finds sufficient allegations to form the basis for a constitutional violation, there are insufficient facts alleged to support a claim under *Monell.*

To establish a *Monell* claim, a plaintiff must show a custom or practice either through (1) an express policy, such as an ordinance or regulation, (2) the affirmative decisions of policy makers, (3) omissions by such policy makers showing "manifest deliberate indifference to the rights of citizens," or (4) a custom that is "'so 'persistent and widespread' and 'so permanent and well settled as to constitute "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)(internal citations omitted). Here there are no allegations of a formal policy or affirmative act by former Police Chief Norwood, the City's policymaker,[9] leading to the Plaintiffs' injuries.

---

[9] A "policymaker" must have "the responsibility and authority to implement final municipal policy with respect to a particular course of action." *Riddick v. School Bd. of the City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000)(emphasis deleted). He or she must be someone "whose edicts or acts may fairly be said to represent official policy." *Id.* Simply "going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Policymaking authority is "authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). Whether an official has policymaking authority is a question of state law. *Praprotnik,* 485 U.S. at 124. In Virginia, a locality's chief law-enforcement officer is its chief of police. Va. Code § 15.2-1701. Under City Code §§ 2-271 and 2-272, the Chief of Police has general management and control of the RPD and is responsible for the

Consequently, the Plaintiffs must allege facts showing either an omission that rises to the level of deliberate indifference, or a widespread and permanent custom with the "force of law" related directly to their injuries.

A plaintiff must also plead that a municipality's policy or custom actually caused the constitutional violation. *Monell*, 436 U.S. at 658. Merely pleading "the magic words of causation" is not enough. *Brown v. Mitchell*, 308 F. Supp.2d 682, 694 (E.D. Va. 2004). A court need not accept conclusory statements about the legal effect of alleged facts. *Id.* Listing a myriad of wrongs with a person or department is insufficient: there must be a precise causal-link between them and a plaintiff's injury. *Carter*, 164 F.3d at 216, 218.

### 1. No Omission Rising To Deliberate Indifference.

The Fourth Circuit has also warned that a plaintiff's theory is most likely to fall within the forbidden realm of *respondeat superior* liability when alleging "municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom." *Id.* at 218 (citation omitted). In such cases, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id.*

"Deliberate indifference is a very high standard," and "a showing of mere negligence will not meet it." *Harrison v. Prince William County Police Dep't,* 640 F. Supp. 2d 688, 704 (E.D. Va. 2009)(citation omitted)(dismissing *Monell* claim). Actions seen with the benefit of hindsight that were imprudent, unfortunate, and even legally negligent do not suffice. *Jones v. Wellham,* 104 F.3d 620, 627 (4th Cir. 1997). Under this standard the Plaintiffs' allegations fail to show deliberate indifference, either regarding

_____

"discipline" and "good conduct" of the department. Chief Norwood is the appropriate policymaker here.

Norton or informant practices more broadly. As for Norton, Chief Norwood showed the opposite of deliberate indifference: he approved two disciplinary actions against Norton after internal investigations, though only one of which concerned his work with warrants. In *Carter*, a police department's investigation of a prior incident showed the opposite of deliberate indifference. *Id.* at 219-220. The same is true here.

As for informant polices, Norwood again showed the opposite of deliberate indifference by having Brian Corrigan examine and improve the confidential informant program once the problems associated with Norton came to light in 2012. Am. Compl. ¶ 144. The Plaintiffs even characterize that effort as one designed to "clean up" and "fix" the informant program. *Id.* ¶¶ 144, 147. The City should not be found liable for errors and omissions that, when realized by federal authorities and the RPD, were acted upon. Allegations about administrative problems are not enough to establish liability. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citing *Rizzo v. Goode*, 423 U.S. 362, 370-377 (1976) for the proposition that "general allegations of administrative negligence" fail to state a claim under Section 1983).

The Plaintiffs' attempts to point to several problems Norton had, and of insufficient responses (the Plaintiffs claim) by RPD supervisors, are unavailing under Fourth Circuit precedent. As noted, much of the conduct alleged came after the arrests. Am. Compl. ¶¶ 38-41. Most of pre-arrest allegations about Norton include rumors and hearsay, nearly all of it unrelated to filling out warrants, and come from statements obtained *after* these arrests during the federal investigation. *See, e.g., id.* ¶¶ 44-53, 122-125. *His two March 2011 reprimands are the only incidents clearly (or all but certainly) known to Norwood prior to the last arrests in February 2012.*

Norwood's decision to reprimand, rather than fire Norton, is not actionable under Fourth Circuit precedent. One case that is illustrative is *Riddick v. School Bd.*, 238 F.3d 518, 524 (4th Cir. 2000), where the plaintiffs sued a school board when they discovered that a teacher was secretly videotaping young girls in a locker room. The teacher had been accused of inappropriately videotaping girls before but the defendant school board did not find the earlier incident inappropriate. *Id.* at 520-522. The Fourth Circuit found that the earlier incident, and the school board's failure to discipline or terminate, even if negligent, was not enough to establish deliberate indifference. *Id.* at 524-526.

The Fourth Circuit in *Riddick* looked at similar cases where police officers or teachers were accused of wrong doing and were later sued for similar wrong doing. In *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997), a county was sued over a police officer's sexual assault when it was discovered that the officer was disciplined, but not fired, for an earlier alleged assault. The court in *Wellhem* stated:

> With the benefit of hindsight, [the decisions of the County] were clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official County "policy."

104 F.3d at 627. This holding is relevant here, since Norton was reprimanded twice by the City's policymaker, but not fired before these arrests took place.

The *Riddick* court also cited *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993), where a school teacher, sued for child molestation, was earlier accused of improperly touching children and was reprimanded, but not fired. The court found that the earlier action by the school district may have been negligent, but did not show

deliberate indifference. *Id*. at 762 ("To hold that these facts support a finding that the Board was 'deliberately indifferent' would drain the term of its meaning.").

Lastly, the Fourth Circuit in *Riddick* also relied upon *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir, 1998), which involved allegations of child molestation by a teacher. There, the Fifth Circuit observed that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id.* The Fifth Circuit found no deliberate indifference in that case where a school principal made a "tragic error in judgment" about earlier alleged child molestation by that teacher, who later molested the plaintiffs. *Id.*

In this case, former Chief Norwood was disciplining Norton as allegations about him were confirmed through investigations. Under the above cited decisions, this was the opposite of deliberate indifference.

### 2. There Was No Actionable Municipal Custom.

As the Fourth Circuit has stated, "a municipality is not subject to Section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.'" *Riddick*, 238 F.3d at 524 (citation omitted)(emphasis in original).

The facts above show that there was no deliberate, "widespread and permanent" practice forming an actionable municipal custom. *Carter,* 164 F.3d at 220. The allegations show that the N-10, informant resume, and record keeping issues were addressed by policymaker Norwood by assigning Brian Corrigan to address those and other issues within the confidential informant program. Am. Compl. ¶¶ 144-147. Those

record keeping issues might show negligence at some level, but not a deliberate, permanent practice under *Monell*.

The one warrant practice that was allegedly "deliberate" (by subordinates, not Norwood) was the alleged failure of some RPD officers to properly witness payments on N-10 forms. *Id.* ¶¶ 140-143. Although this features prominently in the Amended Complaint, there is also no clear nexus between that and the Plaintiffs' sentences. Signing an N-10 form after an informant is paid, rather than at the same time, is improper (though not unconstitutional). But that error does not mean that the contraband identified in a warrant is not real and in the possession of an arrestee, or that the informant did not see what he stated he saw. Without a nexus between an act and injury, even constitutional violations, let alone procedural ones, cannot support a claim. And nowhere does the Amended Complaint allege (nor could it) that the City drove this N-10 practice.

In *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011), the Supreme Court held that four prior *Brady* violations by prosecutors did not provide adequate notice to a district attorney about the specific *Brady* violation at issue there, which concerned blood sample lab evidence. That decision shows just how close a prior alleged wrong must be to a plaintiff's alleged injury.

In *Carter v. Morris*, the plaintiff pointed to a number of incidents involving a police department to show an unconstitutional policy or custom under *Monell*. The plaintiff pointed to "prior instances of excessive force and the discouragement of citizen complaints," which lacked the clear, direct connection to her own alleged injuries. 164 F.3d at 219. The Fourth Circuit affirmed the dismissal of that case, noting that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove

either that a municipality was indifferent to the risk of her specific injury, or that it was the moving force behind her deprivation." *Id.* at 218. Applying that holding here also supports dismissal of the *Monell* claim.

In *Jenkins v. Woody*, Case No. 3:15cv355, 2015 U.S. Dist. LEXIS 166569 (E.D. Va. Dec. 11, 2015), this court dismissed claims where a plaintiff sued a medical services provider, claiming that its policies led to the death of a jail inmate. The plaintiff claimed that the care provider failed to improve its care policies, do adequate case investigations, do root cause analyses and, under *Monell*, failed to adequately investigate "prior negative patient outcomes." *Id.* *11-12, 17. But the plaintiff failed to connect that allegation, regarding "negative patient outcomes," and her own treatment. *Id.* *20 ("Plaintiff neglects to link the two events and, in turn, fails to allege the level of causation that exists between them."). The same is true of the many conclusory allegations here that are unconnected to Norton's work with warrants.

With regard to the informant program, the Plaintiffs' allegations about N-10 forms and poor record keeping hit the barrier noted in *Jenkins*, namely that "'municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be means by which [a] particular [constitutional deprivation] . . . might have been averted.'" *Id.* *16 (citation omitted). That is precisely what the Plaintiffs try to do here, using 20-20 hindsight to impose liability on the City. As noted above, allegations about administrative problems are not enough to establish liability. *Rizzo*, 423 U.S. at 370-377.

**C. There Are No Proper Claims Here under the Eighth or Fourteenth Amendments.**

In *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996), the Fourth Circuit rejected a deprivation of liberty claim under Section 1983 and held that "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." As noted above, the claims alleging "deprivation of liberty" are barred by the statute of limitations.

Even assuming the Plaintiffs can make such a claim here, it would have to be a claim grounded in the "fabrication of evidence" recognized in *Washington v. Wilmore*, 407 F.3d 274 (2005). But that claim would also be time-barred because any fabrication is wrapped into the warrant application, which produced incriminating evidence establishing probable cause. The only "deprivation of liberty" claim here that is not time barred is one alleging malicious prosecution, as defined in the Fourth Circuit. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000). That theory fails as explained above. There is no proper Fourteenth Amendment claim under this theory. *See, e.g., Cooper v. Lippa*, 2012 U.S. Dist. LEXIS 56822, *13 (E.D. Va. Apr. 23, 2012)(concerning state criminal charges).

As for the Eighth Amendment, it is inapplicable to the claims here. The Supreme Court has stated that "[a]n examination of the history of the Amendment and decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). *Ingraham* has been interpreted to mean that the protection of the Eighth Amendment does not attach "until after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 393 n.6 (1989); *see also Shanklin v. Seals*, 2010 U.S. Dist. LEXIS 29164,

*25 (E.D. Va. 2010)("The conduct of which Shanklin complains clearly occurred prior to any conviction, as his Amended Complaint is devoted to a discussion of Defendants' actions during an investigation. Therefore the Eighth Amendment prohibition against cruel and unusual punishment does not apply.") Consequently, Count IX fails to state a claim and should be dismissed with prejudice.

## D. CONCLUSION

For the reasons stated above, the Court should dismiss both claims filed against the City with prejudice.

Respectfully Submitted,

_____/s/_____
Stephen M. Hall, Esquire (VSB # 44132)
Deputy City Attorney
Richard E. Hill, Jr., Esquire (VSB #44164)
Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia 23219
Telephone: (804) 646-7953
Facsimile: (804) 646-79396
Email: Stephen.Hall@richmondgov.com
Email: Richard.E.Hill@richmondgov.com
*Counsel for Defendant City of Richmond*

## CERTIFICATE OF SERVICE

       I hereby certify that on this 14th day of April 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                       _____/s/ _____
                       Richard E. Hill, Jr. (VSB #44164)
                       Assistant City Attorney
                       900 East Broad Street, Room 400
                       Richmond, VA  23219
                       Telephone:  (804) 646-7946
                       Facsimile: (804) 646-7939
                       richard.e.hill@richmondgov.com
                       *Counsel for Defendant City of Richmond*