## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **WILBUR ENSLEY, ET AL.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 3:17-CV-024 |
| ) | |
| **CITY OF RICHMOND,** ) | |
| **ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANT BRYAN T. NORWOOD'S
### MOTION TO DISMISS THE AMENDED COMPLAINT
### FOR FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT

The Plaintiffs in this § 1983 case demand payment for their incarceration even though they pleaded guilty to drug and weapons offenses and do not dispute their guilt. Each Plaintiff was arrested because officers executing search warrants discovered drugs, drug paraphernalia, and/or illegally possessed weapons. Plaintiffs do not dispute that this evidence was genuine and sufficient for probable cause to arrest. That evidence was also sufficient for independent prosecutors to bring charges, for grand juries to return indictments, and (in one case) for a Plaintiff himself to waive indictment. And by pleading guilty, each Plaintiff conceded that this evidence was sufficient for conviction.

Plaintiffs demand compensation because they allege that Officer Jason Norton lied to obtain the initial search warrants, and as a result their sentences were later vacated. Those allegations fail to state a § 1983 claim under the Fourth Amendment or any other provision. Among other reasons, the grand juries' decisions to indict Plaintiffs—or a Plaintiff's decision to waive indictment—conclusively established probable cause to prosecute. And Plaintiffs acknowledged the proof of their guilt by pleading guilty. In a civil case where neither the

exclusionary rule nor the "fruit of the poisonous tree" doctrine apply, *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009), all those decisions break any causal chain between an improperly procured warrant and Plaintiffs' prison sentences.

This memorandum also explains why former Richmond Chief of Police Bryan Norwood would not be liable in any event. There is no vicarious liability under § 1983. And under the Supreme Court's holding in *Ashcroft v. Iqbal*, a supervisor can only be liable if his *own individual actions* violated the Constitution. 556 U.S. 662, 676 (2009). Chief Norwood did not submit the warrant applications in question, did not instruct another officer to do so, and did not adopt or implement any policy of lying on warrant applications (nor do Plaintiffs allege that he did any of these). Because Plaintiffs do not allege that any of Chief Norwood's individual actions violated the Constitution, *Iqbal* precludes the claims against him.

Chief Norwood would not be liable even under the standard from pre-*Iqbal* cases. Based on that standard, Plaintiffs assert that a supervisor can be liable for deliberate indifference to the constitutional violations of another, even if the supervisor does not violate the Constitution himself. Plaintiffs think they have a smoking gun of deliberate indifference: in 2012, the leadership of the Richmond Police Department asked Lieutenant Brian Corrigan to "clean up the RPD's confidential informa[nt] program" that allegedly contributed to problems with the warrants in question. Amended Complaint ("Am. Compl.") ¶ 144. But this allegation proves the *opposite* of deliberate indifference: assigning Lieutenant Corrigan to the CI program was, in Plaintiffs' own words, a "targeted effort by RPD leadership to fix serious problems." Am. Compl. ¶ 147. Because Plaintiffs' own allegations preclude supervisory liability, and Chief Norwood is not liable on any other grounds, the Court should dismiss all claims against him.

# ARGUMENT

## I. Chief Norwood is not liable as a supervisor for alleged Fourth Amendment violations.

### A. Plaintiffs cannot satisfy the requirements of the asserted Fourth Amendment claim.

Plaintiffs cannot state a "supervisory claim" based on the Fourth Amendment because they fail to state a Fourth Amendment claim in the first instance. Plaintiffs assert the elements of malicious prosecution, Am. Compl. ¶¶ 152-53, which requires "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

That claim fails because Plaintiffs were not seized pursuant to legal process without probable cause. Plaintiffs allege that the search warrants lacked probable cause, but they were not arrested pursuant to those *search* warrants. Am. Compl. ¶¶ 74, 93, 100, 112. Rather, Plaintiffs were subject to warrantless arrest based on the evidence discovered when the search warrants were executed. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) (a detention was "*without legal process*" because the police "did not have a warrant for his arrest").

To the extent Plaintiffs allege that their arrests (rather than the search warrants) were unlawful, the claims fail because Plaintiffs do not dispute that there was probable cause for their arrests based on evidence discovered when the search warrants were executed. In a civil action, the court cannot ignore the undisputed evidence of guilt revealed in those searches. *See Ware*, 652 F. Supp. 2d at 705 ("'[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'") (quoting *Townes v. City of N.Y.,* 176 F.3d 138, 148-49 (2d Cir. 1999)). Moreover, the Fourth Amendment counts and all other counts are time-barred (as explained in

the City of Richmond's brief) because Plaintiffs have been on notice of all their claims more than two years. Va. Code § 8.01-243.

Plaintiffs' claims also fail to the extent they rely on their indictments as the "seizure," because each indictment was sought and returned by independent prosecutors and grand juries (or waived altogether), and supported by unchallenged evidence of their guilt. Those independent decisions break the causal link between any defects in the warrants and Plaintiffs' prison sentences. Thus, no Fourth Amendment claim is possible on these allegations.

### B. *Iqbal* eliminated Plaintiffs' theory of supervisory liability.

Even if Plaintiffs could state a predicate Fourth Amendment claim, Chief Norwood would not be liable as a supervisor. Plaintiffs' theory of supervisory liability in Counts IV and V is that Chief Norwood "had actual or constructive knowledge" of a risk of constitutional injury, Am. Compl. ¶¶ 166, 170, and showed "deliberate indifference to, or tacit authorization of" that risk, Am. Compl. ¶¶ 167, 171. The Supreme Court rejected that theory in *Ashcroft v. Iqbal*.

The plaintiff in *Iqbal* argued that federal officers unconstitutionally discriminated against post-9/11 detainees on the basis of race and religion, and that their supervisors should be liable "under a theory of 'supervisory liability' . . . for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria.'" 556 U.S. at 677. The Supreme Court "reject[ed] this argument." *Id.* The Court explained that "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id.* That is because a supervisor "is only liable for his or her own misconduct." *Id.* And "[b]ecause vicarious liability is inapplicable in *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added).

4

*Iqbal* thus eliminated supervisory liability based on a supervisor's alleged "knowledge and acquiescence." *Id.* at 677. As the dissent explained, this holding "is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects." *Id.* at 693 (Souter, J., dissenting); *see also* Martin A. Schwartz, *Section 1983 Litigation* 117-18, Fed. Jud. Ctr. (3d ed. 2014) ("[T]he Court jettisoned the very concept of supervisory liability, and held that a supervisor may be found liable under § 1983 or *Bivens* only when the supervisor herself engaged in unconstitutional conduct."). *Iqbal* accordingly marked a dramatic change in the law of supervisory liability.[1]

Of course, a supervisor could still be liable under § 1983 if his *own individual actions* violate the Constitution, such as by actively promulgating an unconstitutional policy. *See, e.g.*, *Iqbal*, 556 U.S. at 677 ("[T]o state a claim based on a violation of a clearly established right,

---

[1] *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) ("We therefore conclude that after *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges."); *Sandra T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("While it appears that our precedent would have previously allowed a plaintiff to recover from a supervisor based on that supervisor's 'deliberate indifference' toward a subordinate's purposeful discrimination, . . . after *Iqbal* a plaintiff must also show that the supervisor possessed the requisite discriminatory intent."); *George v. Owen*, 2009 WL 5125307, at *4 & n.4 (D.S.C. Dec. 28, 2009) (Floyd, J.) (suggesting that Fourth Circuit precedent is inconsistent with *Iqbal*). Unlike the Seventh and Tenth Circuits, the Fourth Circuit has applied pre-*Iqbal* precedent without apparent consideration of how *Iqbal* changed the standard of supervisory liability. *See, e.g.*, *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (citing the supervisory liability standard of *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). *But see Evans*, 703 F.3d at 660–61(Wilkinson, J., concurring) ("[T]he Supreme Court explained in *Iqbal* that 'a supervisor's mere knowledge' that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can be held liable only for 'his or her own misconduct.'").

5

[plaintiff] must plead sufficient factual matter to show that [the supervisors] adopted and implemented the detention policies at issue . . . for the purpose of discriminating on account of race, religion, or national origin."). But Plaintiffs cannot and do not even attempt to allege facts showing that Chief Norwood adopted or implemented an unconstitutional policy. *See id.* at 664, 680-81 (allegations that a supervisor was the "principal architect" of an unconstitutional policy or "'instrumental' in adopting and executing it" are "conclusory and not entitled to be assumed true"). And Plaintiffs plead no facts showing that Chief Norwood "*through [his] own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added). Rather, Plaintiffs' claims amount to the same "knowledge and acquiescence" theory rejected in *Iqbal*. *Id.* at 677.

    **C.**    **Plaintiffs' theory of supervisory liability would fail against Chief Norwood in any event.**

Even if Plaintiffs' theory had not been eliminated by *Iqbal*, their claims would fail. Under the Fourth Circuit's standard for supervisory liability based on pre-*Iqbal* law, a plaintiff must show (1) "actual or constructive knowledge of a risk of constitutional injury"; (2) "deliberate indifference to that risk"; and (3) "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiffs do not plausibly allege that Chief Norwood had "actual or constructive knowledge" of, or "deliberate indifference" to, their particular constitutional injury. First, Plaintiffs "cannot rely upon scattershot accusations of unrelated constitutional violations" because they must demonstrate deliberate indifference to the risk "that a violation of a *particular* constitutional or statutory right will follow." *Carter*, 164 F.3d at 218. Plaintiffs must show that Chief Norwood knew or should have known specifically about Officer Norton's alleged

6

misstatements with respect to confidential informants on search warrant applications. But most of Plaintiffs' laundry list of alleged wrongdoing by Officer Norton is an impermissible attempt "to splatter-paint a picture of scattered violations." *Id.* at 219; *see also, e.g.*, Am. Compl. ¶¶ 27-34 (alleging that Officer Norton seized cash without writing receipts); ¶¶ 38-43 (dishonest excuses); ¶¶ 44-50 (protecting a confidential informant from arrest); ¶¶ 52-53 (involvement with gangs); ¶¶ 140-43 (post-dating signatures on confidential informant payment forms).

Second, Plaintiffs attempt to rely on undated rumors to show Chief Norwood's knowledge of Officer Norton's alleged wrongdoing. *See* Am. Compl. ¶¶ 122-28. Much of those rumors are irrelevant "scattershot accusations" that do not reflect the particular constitutional violations alleged by Plaintiffs. *Carter*, 164 F.3d at 218. But even if the rumors were relevant, Plaintiffs do not allege that those rumors relate to the period *before* their arrests, the last of which occurred in February 2012, or indeed to *any* time relevant to this case. These allegations thus lack the "factual content that allows the court to draw the reasonable inference" that Chief Norwood was on notice at the necessary time, and create at most a "sheer possibility" that Chief Norwood could be liable. *Iqbal*, 556 U.S. at 678. Plaintiffs' rumor mill accordingly "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Third, Plaintiffs attempt to demonstrate Chief Norwood's knowledge by showing the steps that RPD took in response to alleged misconduct or problems with the confidential informant program. But those steps are conclusive evidence that Chief Norwood was *not* deliberately indifferent. For example, bringing in Lieutenant Corrigan to address recordkeeping and accountability issues with the confidential informant program shows that the RPD leadership was not indifferent to those issues. *See* Am. Compl. ¶ 144. To the contrary, Plaintiffs concede that the leadership made "a targeted effort" to fix them. *Id.* at ¶ 147. Likewise, issuing

7

reprimands to Officer Norton based on his confiscation of drugs without making an arrest (Am. Compl. ¶¶ 133-34) and failure to properly record signatures for payments to confidential informants (Am. Compl. ¶ 135) shows that the RPD was *not* indifferent to that misconduct. When a supervisor takes disciplinary action in response to officer misconduct, "it simply cannot be said that he is indifferent to the risk of the underlying constitutional violation." *Carter*, 164 F.3d at 221.

Finally, Plaintiffs cannot establish "an affirmative causal link" between Chief Norwood's supposed inaction and Plaintiffs' prison sentences. That is because there were multiple "intervening superseding causes that break the causal chain." *Evans*, 703 F.3d at 647. In particular, after Plaintiffs were arrested, they were imprisoned due to the "subsequent acts of independent decision-makers," *id.*, including the prosecutors who saw fit to press charges, the grand juries that decided to indict (or the Plaintiff who decided to waive indictment), and the Plaintiffs themselves who all pleaded guilty. Given that the "fruit of the poisonous tree" doctrine does not apply here, *Ware*, 652 F. Supp. 2d at 705, the causal chain between Chief Norwood and Plaintiffs' imprisonment is far too attenuated to hold Chief Norwood liable as a supervisor.

**II. Chief Norwood is not liable as a supervisor for allowing Plaintiffs, who do not dispute their guilt, to plead guilty.**

**A. Alleged Fourth Amendment violations do not render a guilty plea invalid.**

Plaintiffs also fail to state a claim that their guilty pleas were flawed. A guilty plea is valid as long as it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000). "[T]he Constitution imposes 'the minimum requirement that [the] plea be the voluntary expression of [the defendant's] own choice.'" *United States v. Moussaoui,* 591 F.3d 263, 278 (4th Cir. 2010) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)). Plaintiffs do not allege that anyone

8

coerced them into pleading guilty, or concealed the consequences of their pleas, or deprived them of counsel's advice.

Rather, Plaintiffs allege that their pleas were not voluntary and intelligent because they were not aware of the alleged Fourth Amendment violations. Am. Compl. ¶ 156-57. The Fourth Circuit squarely rejected this argument in *United States v. Murphy*, 380 F. App'x 344 (4th Cir. 2010). There, a criminal defendant argued that "her plea was not knowing and voluntary because she did not realize at the time of her plea that the evidence against her had been seized in violation of the Fourth Amendment." *Id.* at 345. The court held that "even assuming arguendo a Fourth Amendment violation had occurred, this would not undermine her guilty plea because a plea is an admission of past conduct and does not depend on the seized evidence." *Id.*; *see also Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized."). Because the Plaintiffs all admitted to their past conduct when they pleaded guilty, it is irrelevant whether additional evidence of their crimes would have been admissible at trial.

### B. Plaintiffs' supervisory liability claim would fail even if there were a cause of action for allowing the guilty to plead guilty.

In any event, Chief Norwood would not be liable as a supervisor for the Plaintiffs' guilty pleas. As already explained, Chief Norwood was not personally involved (and is not alleged to have been personally involved) in the violations alleged here. That dooms these claims under *Iqbal*. *See Iqbal*, 556 U.S. at 676 (Under § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."

(emphasis added)). Moreover, Plaintiffs' allegations do not meet even the pre-*Iqbal* standard for supervisory liability. *See* section I.C *supra*.

III. **Chief Norwood is not liable under the Eighth or Fourteenth Amendments for failing to have Plaintiffs released from prison sooner.**

   A. **Chief Norwood is not liable as a bystander for allowing defendants who pleaded guilty and do not dispute their guilt to remain in prison.**

Plaintiffs next contend that their rights were violated because they were not released from prison sooner. Am. Compl. ¶¶ 182, 188. Plaintiffs allege that Chief Norwood should have intervened personally to secure their release, Am. Compl. ¶¶ 180-81, 186-87, but there is no duty to intervene except where an officer would be liable as a bystander. Bystander liability only applies when an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002).

For bystander liability, "the relevant question is whether . . . [the officer] *knew* the [plaintiffs] were being unlawfully detained." *Id.* (emphasis added). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks *such specific knowledge*, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Id.* at 204 n.24 (emphasis added).

Chief Norwood is not liable as a bystander because there is no reason to think that he had actual knowledge of the alleged constitutional violations against these Plaintiffs. Chief Norwood is not alleged to have known about the decisions to seek the search warrants here, to make Plaintiffs' warrantless arrests, or to pursue their prosecution and then incarceration. Indeed, Plaintiffs do not allege that Chief Norwood had even heard their names before their release.

10

Even if bystanders could be liable without "specific knowledge" of the alleged unconstitutional acts (they cannot), Plaintiffs' allegations fail to demonstrate that Chief Norwood had constructive knowledge that "the Plaintiffs' imprisonment was unwarranted." Am. Compl. ¶¶ 180, 186. By pleading guilty, Plaintiffs made "an admission of past conduct" that formed the basis of their convictions. *Murphy*, 380 F. App'x at 345. Chief Norwood accordingly could not have been on notice that their imprisonment was unwarranted.

Finally, the Eighth Amendment is not implicated here because "[c]omplaints about false convictions or sham proceedings . . . do not fall under the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment is concerned only with punishment once a conviction has been legitimately obtained." *Brooks v. O'Leary*, 33 F.3d 56 (7th Cir. 1994) (unpublished); *see also Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Even if there were an Eighth Amendment right to end the incarceration of an actually innocent person, Plaintiffs do not allege that they are innocent. *See* Am. Compl. ¶ 88 (considering a Plaintiff's guilt "immaterial").

### B. Plaintiffs' supervisory claim under the Eighth and Fourteenth Amendments fails like the other supervisory claims.

Plaintiffs' supervisory Eighth and Fourteenth Amendment claims fail against Chief Norwood for the same reasons as the other supervisory claims. Chief Norwood was not—and is not alleged to have been—personally involved in the alleged violations. Under *Iqbal*, that is the end of the supervisory inquiry. *See Iqbal*, 556 U.S. at 676 (Under § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has

violated the Constitution." (emphasis added)).  Plaintiffs' allegations fail the pre-*Iqbal* standard for supervisory liability in any event.  *See* section I.C *supra*.

## IV.    Chief Norwood is entitled to qualified immunity.

Finally, Chief Norwood is entitled to qualified immunity because an objectively reasonable officer in his position would not have known that his actions violated Plaintiffs' rights.  Qualified immunity "shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights." *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994).  Plaintiffs' allegations do not establish why Chief Norwood should have known that any of his actions violated their rights.  First, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith." *Smith v. Munday*, 848 F.3d 248, 255-56 (4th Cir. 2017).  As far as Chief Norwood knew, that is precisely what happened here.  Furthermore, Plaintiffs made little or no effort to suppress the evidence against them and then pleaded guilty.  Those facts would not have put a reasonable officer on notice of any defects in the warrants that produced uncontested proof of Plaintiffs' guilt.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: April 14, 2017

Respectfully submitted,

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on April 14, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
M<small>C</small>G<small>UIRE</small>W<small>OODS</small> LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
