IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILBER ENSLEY, COVEY ANDREWS,
SHAMAR ARCHER, DEUNTE
HUMPHRIES AND JAMAR GILLIAM,

    Plaintiffs,

v.                               Case No. 3:17CV024

CITY OF RICHMOND, VIRGINIA, JASON
NORTON, BRYAN T. NORWOOD,
CHRISTOPHER GLEASON, CHARLES
SIPPLE, ROGER RUSSELL, MICHAEL
ALSTON, BRIAN CORRIGAN, MARTIN
HARRISON, AND WILLIAM
BLACKWELL,

    Defendants.

**BRIEF IN SUPPORT OF DEFENDANT JASON NORTON'S
RULE 12(B)(6) MOTION TO DISMISS THE AMENDED COMPLAINT**

## I.    INTRODUCTION

Each Plaintiff in this case was arrested after police officers discovered illegal drugs or weapons in their possession during the execution of search warrants that were allegedly procured by Defendant Jason Norton ("Norton"). Each Plaintiff admits he had illegal contraband in his possession, and there is no dispute that the possession of this contraband constitutes probable cause to arrest and prosecute. In fact, Plaintiffs pleaded guilty to the crimes committed.

Plaintiffs' convictions were eventually vacated after inconsistencies with the search warrants Norton obtained were discovered. In asking that the convictions be vacated, Plaintiffs argued that evidence discovered in the searches should have been suppressed because of discrepancies involving the reliability of confidential informants in the applications for the search warrants.

1

Now, Plaintiffs are attempting to use those discrepancies in the applications for the search warrants to bring a civil claim against Norton for malicious prosecution under 42 U.S.C. §1983 and Virginia common law. Yet, even if the searches were unlawful, Plaintiffs' arrests and subsequent prosecutions were supported by probable cause - the possession of illegal drugs and other contraband - which is fatal to their malicious prosecution claims. Tellingly, Plaintiffs still do not dispute that they are guilty.[1]

Unlike a criminal proceeding, the "fruit of the poisonous tree" doctrine does not apply to Section 1983 actions. Even if it did, the Plaintiffs' indictments and guilty pleas constitute intervening and superseding causes that preclude their recovery under a malicious prosecution theory. At no point before bringing this action did Plaintiffs challenge the constitutionality of the search or seizure, and the statute of limitations for them to do so has long since run.

Realizing their Fourth Amendment search claims are time barred, Plaintiffs seek to assert their Fourth Amendment rights under the guise of malicious prosecution claims under the Fourth Amendment. Plaintiffs also attempt to assert claims that they were deprived of their Fourteenth Amendment right to make voluntary and intelligent pleas and their Fourteenth Amendment right to liberty. Finally, Plaintiffs claim that Norton, who had nothing to do with their conditions of confinement, violated their Eighth Amendment rights. The Court should not be distracted by Plaintiffs' novel theories of recovery, and Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

---

[1] Although not at issue in this motion, for which evidence outside the Complaint and supporting exhibits cannot be considered, a plaintiff's actual innocence is a prerequisite for bringing a Section 1983 action and, if Plaintiffs' claims survive, Norton will raise this defense at the appropriate time. See, e.g., Donahue v. Gavin, 280 F.3d 371, 383-84 (3d Cir. 2002) (plaintiff must be actually innocent to bring a Fourth Amendment claim).

## II.   ALLEGATIONS

A primary focus of Plaintiffs' Amended Complaint is alleged misconduct on the part of Norton dating back to 2008.[2]   Plaintiffs allege that Norton was "troubled" and "earned a reputation as a sloppy, dishonest, and corrupt officer."  See Amended Complaint (ECF Doc. 35, ¶ 25).  The Complaint alleges that Norton was known to seize money from criminals unlawfully. Id. at ¶¶ 27-35.  The Complaint also alleges that Norton had a reputation of dishonesty among his colleagues.  Id. at ¶¶ 36-43.  There are also allegations that Norton had connections with gangs. ¶44-53.  None of these allegations relate to the claims against Norton or the conduct Norton allegedly engaged in concerning the Plaintiffs.[3]

With respect to the claims against Norton, the Complaint alleges that Norton, in establishing confidential informants' reliability, falsified informant resumes on applications used to procure search warrants pertaining to Plaintiffs.   More specifically, Plaintiffs allege that Norton would employ "differing résumés . . . for the same informant and identical résumés . . . for purportedly different informants."  Id. at ¶ 69.  Plaintiffs claim that but-for this misconduct, a search warrant would not have been issued and they would not have been arrested, indicted, or imprisoned.  Id. at ¶¶ 83, 86-89, 99-102, 109-111, 135.  Indeed, each Plaintiff has a similar story: each was arrested after police officers discovered contraband in his possession; each acknowledged his guilt and pleaded guilty (with two waiving indictment); and each had his conviction vacated after confidential informant inconsistencies or irregularities with the search warrant were later discovered.  Id. at ¶¶ 87–89, 97–98, 109–11, 119–120.

The Complaint and criminal documents referenced therein reveal the following:

---

[2] For a more detailed statement of the allegations, Norton directs the Court's attention to the Motions to Dismiss and Briefs in Support filed by the other defendants.

[3] Norton denies these allegations, however, for purposes of this motion only, and recognizes that the Court must treat the allegations as true.

Wilbur Ensley ("Ensley"): A search warrant Norton obtained was executed on Ensley's home on January 20, 2009. Police officers discovered contraband and arrested Ensley. Id. at ¶ 82. On April 13, 2009, Ensley pleaded guilty in federal court to possessing drugs with the intent to distribute and to possession of a firearm. Id. ¶ 84; ECF 3:09-cr-00032-HEH-DJN, Doc. 14, p.2. Before pleading guilty he was duly indicted by a grand jury. ECF 3:09-cr-00032-HEH-DJN, Doc. 7. On or about April 2, 2015, this Court vacated Ensley's sentence and he was released from prison. See Amended Complaint (ECF Doc. 35, ¶ 89).

Covey Andrews ("Andrews"): A search warrant Norton obtained was executed on a Mercedes under Andrews's possession and control on September 11, 2009. Id. at ¶ 96. On December 22, 2009, Andrews pleaded guilty to possession of heroin with the intent to distribute and to possession of a firearm in furtherance of a drug crime. Id.; ECF 3:09-cr-00368-HEH-DJN, Doc. 13, p.1. On or about April 1, 2015, this Court vacated Andrews's sentence, and he was released from prison. See Amend. Complaint (ECF Doc. 35, ¶ 98).

Shamar Archer ("Archer"): An alleged illegal search warrant Norton applied for was executed on Archer's home on October 9, 2009. Id. at ¶ 108. Archer waived indictment and pleaded guilty to possession of cocaine with intent to distribute and possession of ammunition by a felon. ECF 3:09-cr-00436-HEH-DJN, Doc. 17, p.1. On or about April 2, 2015, this court vacated his sentence and he was released from prison. See Amend. Complaint (ECF Doc. 35, ¶ 111).

Deunte Humphries ("Humphries"): Humphries was arrested on February 23 or 24, 2012, under a search warrant. Id. ¶ 118. On August 6, 2012, he was indicted on drug charges in two state court criminal actions. See Exhibits A and B to the City of Richmond's Brief in Support of Motion to Dismiss. On September 28, 2012, Humphries pleaded guilty to multiple charges. See

Amend. Complaint (ECF Doc. 35, ¶ 119).  On August 3, 2015, a circuit court judge vacated his two convictions and dismissed those indictments.[4] Id.  ¶ 120.

Jamar Gilliam ("Gilliam"): an allegedly illegal search warrant obtained by Norton was executed on or about February 23 or 24, 2012 that resulted in Gilliam's arrest.  Id. at ¶ 118.  On August 6, 2012, Gilliam was indicted on drug charges in two state court criminal actions.  See Exhibits C and D to the City of Richmond's Brief in Support of Motion to Dismiss.  Gilliam pleaded guilty to drug charges on October 2, 2013.  See Amend. Complaint (ECF Doc. 35, ¶ 119).  On November 6, 2013, he was sentenced to 24 months in jail under a plea agreement.  Id. On September 16, 2015, a circuit court judge vacated his sentences and dismissed his indictments.[5]  ¶ 120.

### III.  LAW AND ARGUMENT

#### A.  Standard of Review.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted.  Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).  As the court pointed out in Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

---

[4] This order, and the one vacating Plaintiff Gilliam's sentence, may be void *ad initio* because they were entered well after 21 days following the initial sentencing orders. See Locklear v. Commonwealth, 46 Va. App. 488 (2005) (interpreting Va. Sup. Ct. R. 1:1). If these latest orders are void, Humphries and Gilliam would be unable to meet the "favorable termination" requirement for malicious prosecution.

[5] A more complete statement of the allegations can be found in the City of Richmond's Brief in Support of Motion to Dismiss, which is incorporated herein by reference.

to state a claim to relief that is plausible on its face." 556 U.S. at 678, 129 S. Ct. at 1949 (Emphasis added. Internal quotations omitted).

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966) (Emphasis added). As the court further noted in Francis, "[a]t bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 588 F.3d at 193 (internal quotation marks omitted).

Significantly to this case, the Court may consider matters on the public record without converting the motion to one for summary judgment. Papasan v. Allain, 478 U.S. 265, 286 n.1. (1986) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion to dismiss the complaint . . . not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995).

**B.      Plaintiffs Have Not Stated A Claim under Section 1983.**

**1.      Plaintiffs' Fourth Amendment Claims Fail as a Matter of Law.**

Apparently recognizing that Section 1983 malicious prosecution claims are properly understood as claims under the Fourth Amendment, Plaintiffs have re-labeled their claim as a violation of the Fourth Amendment.  Burrell v. Virginia, 395 F.3d 508 (4th Cir. 2005) (holding that a Section 1983 malicious prosecution claim is properly understood as a Fourth Amendment claim); Smith v. Munday, 848 F.3d 248, *2 (4th Cir. 2017) (holding that Section 1983 malicious prosecution claims are "founded on a Fourth Amendment seizure.").  Plaintiff's Fourth Amendment claims nonetheless fail for three reasons: (1) there was probable cause for Plaintiffs' arrests; (2) the fruit of poisonous tree doctrine does not apply to Section 1983 claims; and (3) Plaintiffs' indictments and/or waiver of indictments are intervening and superseding causes that insulate Norton from liability.  Consequently, Count I of the Amended Complaint should be dismissed with prejudice.

**a.      Probable cause defeats Plaintiffs' Fourth Amendment Claims**

To state a Fourth Amendment violation under a malicious prosecution theory, Plaintiffs must allege that "[1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor."  Smith, 848 F.3d at *2.  Thus, the question at issue is whether there was probable cause to arrest Plaintiffs.  Id. at *3.  Probable cause requires more than bare suspicion, but it requires less than evidence necessary to convict.  Id.

Here, it is clear from the Complaint that there was probable cause to support the arrest of each Plaintiff.  Plaintiffs' claims against Norton hinge on allegations that Norton falsified confidential informant resumes to bolster their reliability on applications used to procure the

search warrants. Plaintiffs do not, however, allege that the material facts constituting the probable cause for the search in the applications for the search warrants were fabricated, and Plaintiffs were not arrested based on Norton's alleged representations in the search warrants.[6]

Instead, Plaintiffs were arrested after illegal contraband was discovered when the search warrants were executed. It is the possession of the illegal drugs or weapons that justified the probable cause for Plaintiffs' arrests. Indeed, in addition to the allegations in the Complaint, court documents in the criminal cases clearly confirm this — including even the motions to vacate sentences. As an example, the court can reference the U.S. Government's Supplemental Response to Ensley's Motion to Vacate, which confirmed that Ensley possessed cocaine with intent to distribute, cocaine base, drug packaging materials, digital scales, a firearm, ammunition, and $6,530 in cash. The document states that the FBI investigation "has made clear . . . *that the probable cause information in the affidavit in this case is accurate, and was provided by a reliable informant*" (emphasis added).[7]

Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to believe] that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979).

---

[6] Plaintiffs cannot recover unless they prove a violation of their Fourth Amendment right to be free from unreasonable seizures. But the illegal seizure cannot be just any seizure: unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure "pursuant to legal process." Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016), citing Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994). Legal process includes an arrest warrant. Id.

[7] ECF 3:09-cr-00032-HEH-DJN, Doc. 29, p.2. The Government made this same statement after its investigation in the Andrews and Archer criminal cases. ECF 3:09-cr-00368-HEH-DJN, Doc. 47, p.2 (Andrews); ECF 3:09-cr-00436-HEH-DJN, Doc. 35, p.2 (Archer).

Under these circumstances, there is no question that probable cause existed to support Plaintiffs' arrests and prosecutions. See, e.g., United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994) (although the informant's reliability initially was questionable, the officer set up and monitored controlled purchases of cocaine supporting probable cause finding); Durham v. Horner, 690 F.3d 183 (4th Cir. 2012) (finding probable cause to arrest plaintiff for drug distribution based on police investigation even though police arrested the wrong person); Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016) (police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause); Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (deputies were amply justified in believing that Porterfield was engaging in criminal activity by attempting to sell a Mercedes Benz for cash and drugs based on informant information and police observations); Washington v. Daniels, No. 5:12-CT-3080-FL, 2014 WL 4701174, at *4 (E.D.N.C. Sept. 22, 2014), aff'd, 591 F. App'x 237 (4th Cir. 2015) (dismissing Section1983 malicious prosecution case because there was probable cause for the arrest despite plaintiff's contention that confidential informant lacked credibility).

Importantly, as discussed below, Plaintiffs have not alleged an illegal search claim against Norton, because they cannot successfully do so. As a result, the discovery of illegal contraband – the probable cause for their arrest and prosecution - is fatal to Plaintiffs' Fourth Amendment claims against Norton.

**b.      Norton is not liable under a "fruit of the poisonous tree" theory.**

Plaintiffs do not dispute that illegal drugs or other contraband were found when the search warrants were executed. Instead, it appears that Plaintiffs want to support their malicious prosecution claims on the theory that their possession of illegal drugs or weapons could not be considered for purposes of probable cause, because they were discovered during an illegal

search.  However, even if the Plaintiffs' Fourth Amendment rights were violated by an illegal search, Norton cannot be liable under Section 1983 for a lawful arrest that results after an allegedly unlawful search.  The "fruit of the poisonous tree" doctrine does not apply in Section 1983 cases.

The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, see Segura v. United States, 468 U.S. 796, 804, 104 S. Ct. 3380 (1984), and as such generally operates "only in criminal trials." Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 364 n. 4, 118 S. Ct. 2014 (1998). Consequently, "[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) (the lack of probable cause to stop and search does not vitiate the probable cause to arrest); see also Ware v. James City County, Virginia, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009).

Ware addressed legal issues similar to those at issue here.  In Ware, the investigating officer, responding to a harassment complaint, entered a residence without a warrant to question the suspect plaintiff.  652 F. Supp. 2d at 697.  An altercation ensued.  Id.  The investigating officer called back-up and arrested the plaintiff.  Id. at 697-700.  In the subsequent civil suit, the plaintiff argued that his arrest was unlawful, regardless of whether the arresting officer had probable cause, because the officer violated his right to privacy by forcibly entering the home. Id. at 705.  The Court rejected this claim and held that the legality of the officer's entry was irrelevant to the question of probable cause for the arrest.  Id. at 706 (holding that the fruit of the poisonous tree doctrine does not apply in Section 1983 civil cases); see also Sommerville v. Dobson, No. 4:10CV67, 2011 WL 9160525, at *8 (E.D. Va. Mar. 8, 2011) (rejecting the

argument that defendants were precluded from relying on probable cause evidence found during an unlawful search under the fruit of the poisonous tree doctrine in a Section 1983 claim. "Whether Dobson's and Ledbetter's entry onto Sommerville's property was lawful is irrelevant to the question of whether Dobson and Ledbetter are entitled to summary judgment on Sommerville's unreasonable seizure claim. The answer to that question depends solely upon whether Sommerville's alleged seizure was supported by probable cause.")

Indeed, several other Circuits have come to this same conclusion. "Nothing within the fruit-of-the-poisonous-tree doctrine suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search." Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016); see also, Black v. Wigington, 811 F.3d 1259, 1267-68 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers", finding that arrest warrants were plainly supported by probable cause listing the marijuana, drug paraphernalia, and clothing that the officers found in the Blacks' trailer); Martin v. City of Chicago, No. 15-CV-04576, 2017 WL 56633, at *4 (N.D. Ill. Jan. 5, 2017) (although plaintiff alleges probable cause evidence was the fruit of an illegal search of the car, this would not undermine its relevance to the question of probable cause. The exclusionary rule does not apply in a § 1983 suit against police officers.)

Thus, the law is clear that Norton's alleged conduct in purportedly obtaining invalid search warrants does not preclude a finding of probable cause for the Plaintiffs' arrests in a civil malicious prosecution claim under Section 1983. See e.g., Guerrero v. Deane, 750 F. Supp. 2d 631, 652 (E.D. Va. 2010) (finding in a Section 1983 case that the lawfulness of an entry is a separate question from the lawfulness of a subsequent seizure).

Simply put, Plaintiffs are not permitted to pursue monetary compensation as a result of the alleged unlawful searches when there was probable cause for their arrest and prosecution. Plaintiffs have received the relief to which they were entitled as evidenced by the dismissal of their criminal charges and their release from jail.    Townes, 176 F.3d at 148 ("Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment.")  Accordingly, Plaintiffs' Fourth Amendment claim should be dismissed with prejudice.

> ### c.    Plaintiffs' indictments and/or waiver of indictments are intervening and superseding causes that insulate Norton from liability.

Even if Plaintiffs could pursue a fruit of the poisonous tree theory, the actions of prosecutors and the guilty plea of each Plaintiff broke any chain of causation between Norton obtaining the search warrants and any harm to Plaintiffs.  Each of the Plaintiffs was indicted, and those indictments were supported by probable cause.

Because Section 1983 constitutional torts "require a demonstration of both but-for and proximate causation"… "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Murray v. Earle, 405 F.3d 278, 289-90 (5th Cir. 2005), Townes, 176 F.3d at 146 and Zahrey v. Coffey, 221 F.3d 342, 351 (2nd Cir. 2000)).

The Fourth Circuit has recognized that "[it] has long since been settled by the Supreme Court that 'an indictment' 'fair upon its face,' returned by a 'properly constituted grand jury,' 'conclusively determines the existence of probable cause.'"  Durham v. Horner, 690 F.3d 183, 189 (2012) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)).  The Durham court noted,

however, that "notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" Id. (internal citation omitted). As in Durham, however, there is no allegation here that Norton testified before any of the grand juries that returned indictments in this case. Therefore, as in Durham, "the grand jury's probable cause determination and its [ ] indictments were the proximate cause of the Plaintiff's arrest and detention." Id.

Here, Plaintiffs' indictments were justified by the plain fact that drugs and/or weapons were actually found. There is no question that probable cause existed to arrest and indict each Plaintiff. Indeed, Plaintiffs pleaded guilty, which also establishes there was probable cause to arrest. See Ein v. Barry, 14 F.3d 594 at *2-3 (4th Cir. 1994). It stands to reason that if Plaintiffs were not guilty of the underlying charges, they would have fought to suppress the evidence. If they were innocent, they would have known at the outset that there were deficiencies in the warrant applications. The independent actions of prosecutors, grand juries, and the Plaintiffs themselves in pleading guilty each serve as independent, superseding causes of any harm to the Plaintiffs. Consequently, Plaintiffs' Section 1983 malicious prosecution claims should be dismissed with prejudice.

### 2. Plaintiffs Cannot Sustain a Claim that their Fourteenth Amendment Right to Make a Voluntary And Intelligent Plea Was Violated.

In Count II of the Amended Complaint, Plaintiffs pursue a novel theory of recovery against Norton, alleging that their Fourteenth Amendment right to make a voluntary and intelligent plea was violated. This theory of recovery is not actionable.

The Supreme Court has recognized that guilty pleas cannot be accepted by a criminal court without an affirmative showing that the plea was intelligent and voluntary. Boykin v.

Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). There does not appear to be any authority in this Circuit for the proposition that Section 1983 can be used as a vehicle to rectify an involuntary or unintelligent guilty plea. It makes sense that Plaintiffs cannot use this device as a sword since the right to a voluntary and intelligent guilty plea is limited to a determination by a criminal court that the criminal defendant is properly informed about the charges he faces and the consequences of pleading guilty. See id. at 243-44 ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."); Meyer v. Branker, 506 F.3d 358, 367–68 (4th Cir.2007) ("For a guilty plea to be constitutionally valid, a defendant must be made aware of all the 'direct,' but not the 'collateral,' consequences of his plea."), cert. denied, 554 U.S. 925, 128 S. Ct. 2975, 171 L.Ed.2d 899 (2008)). In that regard, it is the criminal court's responsibility to ensure that a plea is voluntary and intelligent. See Boykin, 395 U.S. at 244 n. 7 ("'If these convictions [after a guilty plea] are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.')

Plaintiffs do not allege that they were not fully informed about the charges they faced or the consequences of pleading guilty. Further, there are no allegations that Plaintiffs' pleas were coerced or otherwise involuntary. Each Plaintiff pleaded guilty after incriminating evidence was indisputably found to be within his possession or control. Regardless, it was the responsibility of the criminal courts to ensure that Plaintiffs' pleas were voluntarily and intelligently made. It

was not Norton's responsibility. Consequently, Plaintiffs' attempt to fashion a Fourteenth Amendment claim against Norton fails, and Count II of the Amended Complaint should be dismissed with prejudice.

> **3.** **Plaintiffs Have Not Stated a Fourteenth Amendment Deprivation of Liberty Claim or an Eighth Amendment Cruel and Unusual Punishment Claim.**

> > **a.** **Plaintiffs Do Not Have a Deprivation of Liberty Claim under the Fourteenth Amendment.**

In Brooks v. City of Winston-Salem, 85 F.3d 178, 184 (4th Cir. 1996), the Fourth Circuit rejected a deprivation of liberty claim under Section 1983 and held that "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." The plaintiff in Brooks asserted that the defendant officers failed to terminate criminal proceedings after it became clear that the plaintiff was innocent. The plaintiff pursued a claim under the Fourteenth Amendment, but the Fourth Circuit held that the Due Process Clause of the Fourteenth Amendment did not provide protection in that area.

The Fourth Circuit's holding in Brooks is consistent with the Supreme Court's holding in Albright v. Oliver that substantive due process rights are not violated by an arrest pursuant to a warrant that is subsequently found to have been obtained without probable cause. 510 U.S. 266 (1994). Instead, it is the Fourth Amendment that "balance[s] between individual and public interests" and "define[s] the process that is due for seizures of person and property." Taylor v. Waters, 81 F.3d 429, 435–36 (4th Cir. 1996). As such, the only claim that Plaintiffs could in theory pursue against Norton would be one under the Fourth Amendment. For the reasons previously stated, Plaintiffs do not have a Fourth Amendment claim against Norton.

**b.** **Plaintiffs Do Not Have a Cruel and Unusual Punishment Claim under the Eighth Amendment**.

The Eighth Amendment prohibits cruel and usual punishment and is inapplicable to Plaintiffs' claims against Norton. Eighth Amendment claims concern the conditions of confinement within a jail. See Farmer v. Brennan, 511 U.S. 825, 844 (1994) ("prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.") Moreover, "[c]ontinuing a confinement, in and of itself, also has 'nothing inherently harsh' about it; rather, conditions of that confinement are what would give rise to an Eighth Amendment violation." Farmer v. Kavanagh, 494 F. Supp. 2d 345, 361 (D. Md. 2007).

Norton had no role whatsoever in the conditions of Plaintiffs' confinement. Instead, the allegations against Norton concern his efforts to obtain search warrants before Plaintiffs' arrests, guilty pleas, and convictions. The pre-conviction actions allegedly taken by Norton also are not governed by the Eighth Amendment.

The Supreme Court has stated that "[a]n examination of the history of the Amendment and decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977). Ingraham has been interpreted to mean that the protection of the Eighth Amendment does not attach "until after conviction and sentence." Graham v. Connor, 490 U.S. 386, 393 n.6 (1989). Conduct occurring before a conviction, therefore, is not actionable under the Eighth Amendment. See Shanklin v. Seals, No. CIV.A 3:07CV319, 2010 WL 1225741, at *8 (E.D. Va. Mar. 26, 2010) ("The conduct of which Shanklin complains clearly occurred prior to any conviction, as his Complaint is devoted to a discussion of Defendants' actions during an investigation. Therefore the Eighth Amendment prohibition against cruel and unusual punishment does not apply."). The Eighth Amendment did not attach at any time in which

Norton was involved since the allegations against Norton concern his pre-conviction efforts to obtain search warrants. Accordingly, Plaintiffs' do not have an Eighth Amendment claim against Norton. Count III should be dismissed with prejudice.

**C. Qualified Immunity Bars Plaintiffs' Section 1983 claims.**

The doctrine of qualified immunity also bars Plaintiffs' Section 1983 claims against Norton. Plaintiffs can only defeat qualified immunity if the constitutional right in question was "clearly established" at the time of the defendant's alleged violation. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009). A clearly established right is not discussed in a generalized fashion, but instead must be defined at a high level of particularity. Wilson v. Kittoe, 337 F.3d 392, 403 (4th Cir. 2003). The United States Supreme Court recently reiterated that "clearly established law must be 'particularized' to the facts of the case . . . [o]therwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." White v. Pauly, 137 S. Ct. 548, 552 (2017).

Here, Plaintiffs seek to assert Section 1983 malicious prosecution claims despite there being probable cause for their arrest and prosecution. As set out above, there is no clearly established constitutional right to avoid arrest and prosecution when police officers discover illegal drugs and other contraband during a search, albeit through the execution of an invalid search warrant. There also is no clearly established constitutional right to have an officer who was only involved before plaintiffs' convictions ensure that pleas are intelligently and voluntarily made. Moreover, it was certainly not clearly established that the alleged actions of Norton would violate Plaintiffs' Fourteenth Amendment rights to liberty and Eighth Amendment rights against cruel and unusual punishment since Norton's alleged conduct could only implicate

Fourth Amendment rights. Accordingly, Plaintiffs' Section 1983 claims should be dismissed on this basis as well.

**D.**     <u>**Plaintiffs' Section 1983 Claims are Barred by the Statute of Limitations**</u>.

Each claim against Norton is predicated solely on the theory that Plaintiffs were illegally searched as a result of invalid search warrants. As such, Plaintiffs' Section 1983 claims are in reality claims for illegal searches, all of which are barred by the statute of limitations.

Section 1983 actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. <u>Owens v. Okure</u>, 488 U.S. 235, 239-40, 109 S. Ct. 573, 102 L.Ed.2d 594 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. <u>Va. Code Ann. § 8.01-243(A)</u>. The question of when a claim under Section 1983 accrues, however, is governed by federal law. <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

A cause of action under Section 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." <u>Nasim</u>, 64 F.3d at 955. Once a plaintiff has information regarding the fact of his injury and who effected it, the plaintiff has inquiry notice that requires him to undertake an investigation as to the details of his claims; and, "[t]o excuse him from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute." <u>Id.</u> (citing and quoting <u>United States v. Kubrick</u>, 444 U.S. 111,122-124 (1979)); <u>Lewis v. Clark,</u> 534 F. Supp. 714 (D. Md. 1982) (holding the statute of limitations began to run at the time of the illegal search, not when the defendant police officer admitted to fabricating the search warrant and planting drugs). As the search warrants at issue were obtained and executed in 2009 and 2012, the statute of limitations has long expired.

There is one well-settled exception to this general rule: "a plaintiff attacking the legality of his conviction or confinement has no cause of action under Section 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corps." Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994). The Fourth Circuit, however, has held that "a Section 1983 action that would *not* render a conviction or sentence invalid and that seeks to recover damages other than those resulting from conviction or sentence was cognizable and could proceed, assuming no other bar to the action was present, even though the plaintiff's conviction or sentence had not been reversed." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 182-83 (4th Cir. 1996).

Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. Miller v. Prince George's County, MD, 475 F.3d 621 (4th Cir. 2007). Such claims "do not necessarily imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of Heck. Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015). Accordingly, Plaintiffs claims do not fall within this exception.

The Fourth Circuit's decision in Cramer v. Crutchfield perfectly illustrates this point. 648 F.2d 943, 945 (4th Cir. 1981). On September 5, 1977, the cab of Cramer's truck was allegedly searched illegally during a traffic stop initiated by Crutchfield. Id. at 944. An illegal radar detection device was found in the cab under a mattress. Id. Cramer was later convicted in the Prince George County General District Court for equipping his vehicle with the device in violation of Virginia law. Id. at 945. Cramer never asserted that the search was unlawful and never objected or moved to suppress the evidence found during the search. Cramer appealed his conviction to the Circuit Court for Prince George County. Id. On September 18, 1978, the charges against Cramer were dismissed by motion of the Commonwealth's Attorney. Id.

On September 18, 1979, more than two years after the search of Cramer's truck, Cramer filed a Section 1983 action against Officer Crutchfield, asserting that his constitutional rights were violated due to an unlawful search and seizure, malicious prosecution, and a malicious abuse of process. <u>Id.</u> at 944. The Fourth Circuit found that, while Cramer had stated a valid claim for illegal search and seizure, that claim was time-barred since the search occurred more than two years earlier. <u>Id.</u> at 945.

Just as in <u>Cramer</u>, Plaintiffs' claims here are predicated solely on the use of evidence that was allegedly obtained illegally through the execution of invalid search warrants. Because their claims are in reality claims for illegal search and seizure, Plaintiffs' claims are time-barred. Plaintiffs cannot state a claim for malicious prosecution for these reasons and the reasons stated by the other Defendants in their Motions to Dismiss and Briefs in Support.

**E.**      <u>**Plaintiffs' State Law Malicious Prosecution Claim Also Fails.**</u>

Plaintiffs also assert a claim against Norton for malicious prosecution under the common law of Virginia. The state law claim for malicious prosecution fails for the same reason the Section 1983 malicious prosecution claim cannot survive – the arrests of each Plaintiff were supported by probable cause.

Actions for malicious prosecution "are not favored in Virginia" and "the requirements for maintaining such an action are more stringent than other tort cases." <u>Reilly v. Shepherd</u>, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007); <u>Pallas v. Zaharopoulos</u>, 219 Va. 751, 250 S.E.2d 356 (1979). This is because criminal prosecutions are essential for the maintenance of an orderly society, and people should not be discouraged from participating in such actions for fear of later civil lawsuits. <u>Lee v. Southland Corp.</u>, 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). To sustain a cause of action for malicious prosecution, the plaintiff must prove that the prosecution was: (1)

malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and, (4) terminated in a manner not unfavorable to the plaintiff. O'Connor v. Tice, 281 Va. 1, 7, 704 S.E.2d 572, 575 (2011).

In the context of a malicious prosecution action, "malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished," Hudson v. Lanier, 255 Va. 330, 497 S.E.2d 471 (1998). The true issue is not whether the plaintiff was guilty or innocent, but whether there was probable cause for the prosecution and whether the civil defendant was motivated by malice. Page v. Wilson, 168 Va. 447, 454, 191 S.E. 678, 682 (1937).

"Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Gaut v. Pyles, 212 Va. 39, 181 S.E.2d 645, 647 (1971) (internal quotation marks and citation omitted); Durham v. Horner, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010), aff'd, 690 F.3d 183 (4th Cir. 2012).

As set forth above, Plaintiffs do not allege that the material facts constituting the probable cause for the search in the applications for the search warrants were fabricated. There are no allegations that Norton was involved in Plaintiffs' criminal proceedings. Plaintiffs do not dispute that illegal contraband was found during the search, and that cannot be ignored. Thus, there was in fact probable cause to arrest and prosecute. Norton is not aware of any case in Virginia that has allowed a malicious prosecution claim to proceed where the Plaintiff actually committed the crime, but had his criminal case dismissed on a legal technicality.

Furthermore, the intervening indictments of Plaintiffs break any causal connection between Norton's alleged misconduct concerning the search warrants and the subsequent prosecutions, guilty pleas, and convictions.

Finally, the facts alleged do not support a finding of malice on the part of Norton under Virginia law. If anything, the alleged facts suggest an over-zealousness on the part of Norton to further the ends of justice and lockup criminals. That simply is not actionable under Virginia law. Thus, for these reasons and the reasons set forth with respect to the Section 1983 malicious prosecution claim, which incorporates elements of the analogous common law malicious prosecution claim, Plaintiffs' claims against Norton should be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Defendant Jason Norton's Motion to Dismiss and dismiss Plaintiffs' Amended Complaint with prejudice.

**JASON NORTON**

By Counsel

/s/
David P. Corrigan
VSB No. 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB No. 78485
Attorney for Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 14th day of April 2017, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a Notice of Electronic Filing to all counsel of record.

/s/_____
David P. Corrigan
VSB No. 26341
Attorney for Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com