UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILBER ENSLEY, *et al.*,

     Plaintiffs,

v.                                           Civil Action No. 3:17CV024

CITY OF RICHMOND, VIRGINIA, *et al.*,

     Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GLEASON, SIPPLE, AND RUSSELL'S RULE 12(b)(6) MOTION TO DISMISS

Defendants Christopher Gleason ("Gleason"), Charles Sipple ("Sipple"), and Roger Russell ("Russell") (collectively "Defendants"), by counsel, submit this Memorandum of Law in Support of their Rule 12(b)(6 ) Motion to Dismiss Plaintiffs' Amended Complaint.

## I. INTRODUCTION

In an attempt to remedy the numerous problems with their initial pleading, Plaintiffs filed an Amended Complaint, which contains, essentially, the same factual allegations included in their initial Complaint, but a reconfigured set of constitutional claims. Once again, the Plaintiffs fail to state a plausible claim for relief against the Defendants.

Plaintiffs do not allege a viable claim against Norton under Section 1983, so their supervisory claims fail as well. This suit hinges on the allegation that Norton falsified search warrant affidavits, but Plaintiffs do not allege Fourth Amendment violations based on the searches that followed. Instead, Plaintiffs argue that because the search warrants were invalid, they were detained without probable cause. As explained below, this claim fails because Plaintiffs' own allegations establish probable cause to arrest; intervening actions break any

1

causal chain between Norton's actions and the Plaintiffs' incarceration; and the statute of limitations bars the Plaintiffs' claims.  Further, in contending that Norton violated their Fourteenth Amendment rights, the Plaintiffs rehash their malicious prosecution claim which the Fourth Circuit has explicitly rejected as a cause of action under the Fourteenth Amendment.

Plaintiffs claim in Count III that Norton violated their rights under the Fourteenth and Eighth Amendments by failing to procure their release from prison.  This is another attempt to rework the same argument – that the Plaintiffs remained under unlawful seizure as a result of Norton's misconduct in procuring search warrants.  This claim implicates the Fourth Amendment, not the Fourteenth or Eighth Amendment, and therefore, faces all the same insurmountable hurdles as their claim in Count I.

Even if Plaintiffs alleged a viable claim against Norton, the Complaint fails to establish the basic elements of supervisory liability.  Plaintiffs do not allege sufficient facts to prove the Defendants knew or should have known of any misconduct by Norton concerning search warrants prior to their arrests.  The Complaint does not establish that the Defendants condoned or ignored Norton's misconduct or that a causal link exists between any action by the Defendants and the Plaintiffs' alleged injuries.  Further, district courts have held that failure to act to prevent a constitutional violation does not establish liability under Section 1983.

In addition to the Plaintiffs failure to state a viable claim, the Defendants are entitled to qualified immunity as a matter of law.  The Defendants' motion should be granted.

## II. FACTUAL ALLEGATIONS

The five Plaintiffs, Wilber Ensley ("Ensley"), Covey Andrews ("Andrews"), Shamar Archer ("Archer"), Duente Humphries ("Humphries"), and Jamar Gilliam ("Gilliam"), served

prison terms after pleading guilty to narcotics charges.[1]  Ensley, Archer, Humphries, and Gilliam were arrested after investigating officers discovered contraband in their homes.  Am. Compl. ¶¶ 82, 108, 118.  In Andrews' case, the contraband was discovered in his car.  *Id.* at ¶ 96.  Norton obtained the search warrants used to search the homes and Andrews' vehicle. *Id.* at ¶ 74.  Plaintiffs do not allege that Norton personally arrested them or that Norton was involved in their criminal cases following their arrests.  *Id.* at ¶¶ 82, 96, 108, 118.  However, Plaintiffs claim that they were imprisoned solely because of Norton's misconduct.  *Id.* at ¶¶ 1-3.

Plaintiffs claim that Norton lied in his applications for search warrants, concerning "the identity and/or reliability of the confidential informants he offered to the court as evidence of probable case."  *Id.* at ¶ 72.  "In some cases, Norton provided different resumes for the same informant and in other instances provided the same resume for different informants."  *Id.*  Plaintiffs cite a number of inconsistencies in the warrant applications that lead to their arrests. *Id.* at ¶¶ 79-81, 95, 104-06, 114-17.  Plaintiffs also suggest that Norton forged signatures on certain N-10 forms, which document payment to informants for providing information used in warrant applications.  *Id.* at ¶¶ 77-78, 93-94, 101-02.

Plaintiffs allege that Norton had a longstanding reputation in the Department for being a "dirty" cop.  *Id.* at ¶ 25.  They cite numerous instances of misconduct, including Norton's absence from court appearances and Department trainings and one instance of public intoxication.  *Id*. at ¶¶ 38-42, 45-53.  These incidents occurred after all five Plaintiffs were arrested.  *Id*. at ¶¶ 38-42.

---

[1] Ensley pled guilty in federal court on April 13, 2009, followed by Andrews on December 22, 2009, and Archer on March 26, 2010.  Am. Compl. ¶¶ 84, 96, 109.  Humphries and Gilliam pled guilty to states charges on September 28, 2012, and October 2, 2013, respectively.  *Id.* at ¶ 119

Plaintiffs also claim that Norton was involved with local gangs. The Complaint alleges that in April 2010, Norton tipped-off one of his informants that FBI agents intended to arrest him for selling narcotics. *Id.* at ¶¶ 46-50. The FBI prepared a report documenting Norton's behavior. *Id.* at ¶ 51. The Complaint suggests that this report may have been seen by some members of the Department who worked with the FBI on a joint task force, but it does not allege that any of Norton's supervisors had knowledge of it. *Id.*

The Complaint further alleges that a surveillance tape showed local gang members discussing whether Norton could assist them by "supplying or looking after guys in the gang." *Id.* at ¶ 52. Additionally, Norton failed to arrest a known gang member and befriended another suspect on social media. *Id*. at ¶¶ 52-53. Notably, Plaintiffs do not allege when these incidents occurred.

Plaintiffs claim that Norton routinely seized money from suspects, without arresting the suspect or providing a receipt for the property seized. *Id.* at ¶¶ 27-35. Several people interviewed during the FBI's investigation in 2012 discussed this behavior. *Id.* However, there is no allegation that any suspect reported Norton's behavior to the Department.

Plaintiffs emphasize two reprimands that Norton received in March 2011. The first concerned an incident in February 2009, in which Norton confiscated narcotics from two suspects, but failed to make an arrest. *Id*. at ¶ 35. The second incident occurred in July 2010. Norton was suspected of forging signatures on confidential informant records. *Id*. at ¶ 37. Some of these signatures were for persons who were not listed as informants in the underlying case. *Id.* While the events giving rise to Norton's reprimands occurred prior to some or all of the Plaintiffs' arrests, the Department did take disciplinary action. And under the facts alleged, none of these incidents involved search warrant affidavits.

Plaintiffs claim that Gleason, Sipple, Russell, and Norton's other supervisors "knew or should have known that Norton posed a serious risk of constitutional injury[,]" and that they "had the opportunity to prevent or limit these harms but . . . failed to intervene in a timely and/or effective manner." *Id.* at ¶ 121. In support of this claim, Plaintiffs recite a number of vague, second-hand rumors uncovered during the 2012 FBI investigation. *Id.* at ¶¶ 122-128. Federal agents interviewed several officers, who "heard" that Norton "made up affidavit verbiage" to obtain search warrants and was involved with "missing money" in the Department. *Id.* at ¶¶ 122, 125.

Plaintiffs also point to a recorded interview of one of Norton's informants, taken by another Richmond police officer. *Id.* at ¶¶ 129-31. The Complaint alleges that this interview concerned Norton's relationship with the informant, and that a copy of the recording was provided to internal affairs. *Id.* at ¶ 129. However, the Complaint does not provide any additional information about the content of the interview. Nor does the Complaint state when the interview occurred or when internal affairs obtained a copy of the recording. It merely alleges that the interview occurred "well before July 2012," and possibly sometime in 2011. *Id.* at ¶ 131.

As further evidence of the Defendants' knowledge, Plaintiffs repeat their allegations concerning Norton's 2011 reprimands. *Id.* at ¶¶ 133-136. Plaintiffs also argue that Norton's supervisors should have suspected misconduct when the FBI began investigating Norton in the fall of 2012, even though this investigation occurred months after the last arrest. *See Id.* at ¶ 138. Finally, Plaintiff's cite systemic problems in the Department's confidential informant program. They allege that officers often neglected the informants' resume sheets and routinely failed to sign N-10 forms to verify payments made to informants. *Id.* at ¶¶ 142-145.

All five Plaintiffs are released from prison at this time. Andrews filed a petition for habeas corpus on August 12, 2014. *Id.* at ¶ 97. Archer petitioned the court to void his guilty plea on September 18, 2014. *Id.* at ¶ 110. Ensley filed a habeas corpus petition in September 2014. *See* Compl. ¶ 78. State prosecutors moved to vacate Gilliam's conviction on July 1, 2015, and moved to vacate Humphries conviction on July 6, 2015. Am. Compl. ¶¶ 120. All of these motions were granted.

Plaintiffs' Amended Complaint is as lengthy and rambling as their initial pleading. It contains pages of repetitive allegations concerning Norton's poor work performance and inter-department gossip. Plaintiffs rely on a number of broad, conclusory allegations, such as, "[w]idespread rumors and a longstanding custom of ignoring the N-10 requirements forms [sic] easily put the Supervisory Defendants on actual or constructive notice that Norton's warrant affidavits could not be trusted." *Id.* at ¶ 148. Their claims depend on scatter shot allegations, requiring the fact finder to make jumps in logic and conclude that because the Defendants held supervisory positions, they should have suspected Norton's misconduct. This theory of vicarious liability is improper in Section 1983 actions. At no point in their sixty-page Amended Complaint do Plaintiffs allege that the Defendants had actual knowledge of any misconduct by Norton involving search warrants.

### III. STANDARD OF REVIEW

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plausible claim does not require detailed factual allegations, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient.

*Twombly*, 550 U.S. at 555.  Allegations allowing only an inference of possible misconduct do not suffice, as they do not show that the plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 679.

At the motion to dismiss stage, all well-pled facts are accepted as true and construed in the light most favorable to the plaintiff.  *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015).  However, the Court is not required to accept legal conclusions couched as factual allegations, *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014), or "unwarranted inferences, unreasonable conclusions, or arguments."  *United Stated ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

## IV. ARGUMENT

**A.  Because Plaintiffs fail to allege an underlying claim against Norton, they cannot establish supervisory liability against the Defendants.**

To hold the Defendants liable as supervisors, the Plaintiffs must allege a viable constitutional claim against Norton.  *See Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002) ("[T]he theory of supervisory liability arises from the obligation of a supervisory law officer to insure that his subordinates act within the law.")  Plaintiffs allege three constitutional violations against Norton in Counts I through III.  All three claims fail as a matter of law.  Accordingly, there is no basis for supervisory liability, as claimed in Counts IV and V.

### i.  The Fourth Amendment claim fails for three reasons.

Count I, *Violation of the Fourth Amendment of the United States Constitution*, alleges that because of Norton's misrepresentations in obtaining the search warrants, "the Plaintiffs were seized, detained and imprisoned pursuant to legal process unsupported by probable cause."  Am. Compl. ¶ 152.  This claim is analogous to the common-law causes of action of false arrest and malicious prosecution.  *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996).

"A prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citation omitted). While a claim for malicious prosecution does not technically exist under Section 1983, what is commonly known as a federal malicious prosecution claim "is simply a claim founded on a *Fourth Amendment* seizure that incorporates elements of the analogous common law tort . . . specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* at 262 (emphasis in original).

        a.     **In these cases, probable cause existed at every stage following the search.**

Plaintiffs do not allege Fourth Amendment violations based on the searches in question. Their claim that their arrests were unlawful because of problems with the search warrants is simply incorrect.

It is well-settled that the exclusionary rule and its extension, the "fruit of the poisonous tree" doctrine, are not available to Section 1983 plaintiffs. *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (noting that the United States Supreme Court has never applied the exclusionary rule to civil cases); *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (citing *Townes v. City of New York*, 176 F.3d 138, 148-49 (2nd Cir. 1999)); *Sommerville v. Dobson*, Civil Action No. 4:10cv67, 2011 U.S. Dist. LEXIS 156380, *36-38 (E.D. Va. Mar. 8, 2011). Thus, an unlawful search does not impose liability on an investigating officer for a subsequent seizure, if probable cause existed at the time of the seizure.

Despite the established case law, Plaintiffs' entire theory of liability depends on the concept embodied by the "fruit of the poisonous tree" doctrine – that evidence obtained as a

direct result of an unlawful search and seizure is tainted. *Segura v. United States*, 468 U.S. 796, 804 (1984). The Complaint alleges that "warrants based on [Norton's] lies were completely invalid, as were the arrests and detentions of the Plaintiffs . . ." Am. Compl. ¶ 72. But, in this context, the validity of the search warrants is irrelevant to whether the arrests and subsequent prosecutions were supported by probable cause.

The facts alleged in the Amended Complaint show that the arresting officers had probable cause to detain the Plaintiffs. Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to believe] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Plaintiffs do not dispute that the searches uncovered contraband in their possession. *See* Am. Compl. ¶¶ 82, 96, 108-09, 118-19. Possession may be actual or constructive. *United States v. Daley*, 107 F. App'x 334, 337 (4th Cir. 2004) (citing *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992)). Constructive possession is established by proof that "the defendant exercised, or had the power to exercise, dominion and control over the item." *Id.* Ensley, Archer, Humphries, and Gilliam were present when the searches occurred. Am. Compl. ¶¶ 82, 108, 118. Andrews "was in possession" of the vehicle where contraband was found. *Id.* at ¶ 96. Presence alone is not enough to prove possession. *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984). But, in this context it is sufficient to establish probable cause for a warrantless arrest. *See, e.g., Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003) (holding that the presence of cocaine inside the defendant's vehicle established probable cause to arrest all three of the vehicle's occupants); *Michigan v. Summers*, 452 U.S. 692, 695 (1981) (noting that the investigating officers had probable cause to arrest the defendant after finding narcotics in his

home); *Ker v. California*, 374 U.S. 23, 36-37 (1963) (after entering the home, investigating officers had probable cause to arrest a co-defendant's wife for jointly possessing marijuana with her husband); *Johnson v. Moore*, Civil No. 3:10CV537, 2011 U.S. Dist. LEXIS 47069, *23-24 (E.D. Va. Apr. 29, 2011) (holding that an open beer container found on the passenger floorboard of the defendant's vehicle established probable cause that the defendant violated a local ordinance prohibiting open containers); *Kelly v. Commonwealth*, Record No. 2777-03-2, 2005 Va. App. LEXIS 97, *13 (Va. App. 2005) (investigating officers had probable cause to arrest the defendant for possession of cocaine after discovering paraphernalia in his bedroom).

Furthermore, Plaintiffs do not allege that the arrests themselves lacked probable cause. Rather, Plaintiffs claim that they were seized without probable cause because of the misrepresentations Norton made in obtaining search warrants. This fruit of the poisonous tree theory of liability is improper.

As explained in the City of Richmond's brief, all five Plaintiffs were either indicted or waived indictment following their arrests. All five Plaintiffs pled guilty to the charges against them. It is firmly established that an indictment "fair on its face" establishes the existence of probable cause. *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (citation omitted). And "[a] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." *United States v. Martinez*, 424 F. App'x 208, 208 (4th Cir. 2011) (internal quotation marks and citations omitted). Plaintiffs have no basis to contest the validity of their convictions.

### b. The Complaint does not establish proximate cause.

Plaintiffs cannot show a causal link between Norton's conduct and the injuries claimed. Constitutional torts require proof of both but-for and proximate causation. *Evans v. Chalmers*,

703 F.3d 636, 647 (4th Cir. 2012) (citations omitted). "Accordingly, subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.*

Because the exclusionary rule does not apply, Plaintiffs cannot argue that problems with the search warrant were the proximate cause of their arrests or convictions. Further, Plaintiffs do not allege that Norton personally arrested them. The existence of probable cause at the time of their arrests and the actions taken by other arresting officers breaks the chain between Norton's conduct and the arrests. The indictments or waiver of indictment and the Plaintiffs' guilty pleas also break the chain between Norton's conduct and the Plaintiffs' imprisonment.

The Court in *Ware* addressed facts similar to those at issue here. In that case the investigating officer, responding to a harassment complaint, entered a residence without a warrant to question the suspect plaintiff. 652 F. Supp. 2d at 697. An altercation ensued. *Id.* The investigating officer called back-up and arrested the plaintiff for disorderly conduct, obstruction of justice, and assault and battery of a police officer. *Id.* at 697-700. In the subsequent civil suit, the plaintiff alleged several constitutional violations, including "false arrest and illegal imprisonment." *Id.* at 700. The plaintiff argued that his arrest was unlawful, regardless of whether the arresting officers had probable cause, because the officer, who first arrived at the scene, violated his right to privacy by forcibly entering the home. *Id.* at 705. The Court rejected this claim and held that the legality of the officer's entry was irrelevant to the question of probable cause. *Id.* at 705.

Plaintiffs rely on the same erroneous theory of liability here. They allege that but-for Norton's misrepresentations in applying for search warrants, they would not have spent a day in

jail.  *See* Am. Compl. ¶¶ 89, 98, 111, 120.  This theory ignores the requirement for proximate cause.  In an effort to resolve their causation problem, Plaintiffs allege that Norton's failure to alert others of his misconduct constitutes an ongoing constitutional violation.  But the Plaintiffs were not convicted and imprisoned because of Norton's failure to act.  Without the independent actions of the prosecutors, grand juries, and the Plaintiffs themselves, none of the five Plaintiffs would have served time in prison.

Moreover, Plaintiffs' demand for relief is contrary to the principles of tort law and public policy.  "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."  *Townes*, 176 F.3d at 148.  "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."  *Id.*; *see also Hector v. Wyatt*, 235 F.3d 154, 157 (3rd Cir. 2000) (following *Townes*); *Ware*, 652 F. Supp. 2d at 706 (noting that the plaintiff obtained an enormous benefit prior to filing suit, as the Commonwealth's Attorney elected not to pursue charges against him).

In this case, all five Plaintiffs were released from prison prior to filing this case.  Their convictions and sentences were vacated.  Thus, they have already benefitted from Norton's alleged misconduct.  Any monetary compensation for their imprisonment would be an enormous windfall, for which there is no justification.

### c.      Any claim for false arrest is time barred.

In Section 1983 actions, the forum state's statute of limitations for personal injury suits applies.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted).  In Virginia personal injury actions must be filed within two years after the date of injury.  Va. Code Ann. § 8.01-243.

However, the question of when a Section 1983 action accrues is governed by federal law. *Wallace*, 549 U.S. at 388.

"Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). Courts have held that actions arising from an unlawful search or seizure accrue at the time of the search or seizure. *See Smith v. McCarthy*, 349 F. App'x 851, 857 (4th Cir. 2009); *Gonzales v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (collecting cases holding that claims for Fourth Amendment violations necessarily accrue at the time of the search or seizure); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981). Further, the accrual rule established by *Heck v. Humphrey*, 512 U.S. 477 (1994) does not apply in this contest, as false arrest claims usually do not implicate the validity of a subsequent conviction. *See Brooks*, 85 F.3d at 183.

Ensley was arrested on January 20, 2009, Andrews on September 11, 2009, Archer on October 9, 2009, and Humphries and Gilliam on February 23-24, 2012. Am. Compl. ¶¶ 82, 96, 108, 118. Plaintiffs filed suit on January 13, 2017, nearly five years after the last arrest. Plaintiffs had ample opportunity to challenge their arrests during the subsequent two years, but failed to do so. Their false arrest claims are barred by the statute of limitations.

In the alternative, the Complaint clearly establishes that Ensley, Andrews, and Archer should have been aware of their potential Fourth Amendment claims by, at least, September 2014. Andrews filed his petition for habeas corpus on August 12, 2014, Archer filed a petition to vacate his conviction on September 18, 2014, and Ensley filed his habeas corpus petition on September 19, 2014. They filed these petitions because of concerns raised in the FBI investigation. Am. Compl. ¶¶ 97, 110. Ensley, Andrews, and Archer knew of their possible

civil remedies when they petitioned the court to reverse their convictions, but they failed to file suit at that time. Their claims are now time-barred.

### ii. Plaintiffs' Fourteenth Amendment claim in Count II is without merit.

Plaintiffs allege that had they known of the problems with Norton's search warrants, they would not have pled guilty. Am. Compl. ¶ 157. They claim that by failing to disclose his misconduct, Norton deprived Plaintiffs of "their constitutional rights to make a voluntary and intelligent plea . . ." *Id.* at ¶ 158.

To be constitutionally valid, a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea in made knowingly and intelligently if the defendant is fully aware of the consequences of his plea, and the plea is not induced by threats or misrepresentations. *Brady v. United States*, 397 U.S. 742, 755 (1970).

Count II fails for several reasons. There is no indication that the Plaintiffs were unaware of the consequences of pleading guilty or that they pled guilty because of threats or misrepresentations. Plaintiffs argue that they pled guilty because Norton misrepresented the validity of his search warrants. The Fourth Circuit expressly rejected this argument in *United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010) ("[E]ven assuming arguendo a Fourth Amendment violation had occurred, this would not undermine [the defendant's] guilty plea because a plea is an admission of past conduct and does not depend on the seized evidence.") (citation omitted).

Moreover, arguing that they only pled guilty because of Norton's misconduct is simply a rewording of Plaintiffs' federal malicious prosecution claim and another attempt to establish a

link between the search warrants and their post-conviction imprisonment. However, the Fourteenth Amendment does not confer a substantive due process right to be free from prosecutions unsupported by probable cause. *Lambert*, 223 F.3d at 261 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality)); *Brooks*, 85 F.3d at 184 (citing *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996)). "[T]he <u>*Fourth Amendment*</u> provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him before trial." *Brooks*, 85 F.3d at 184 (emphasis in original). Plaintiffs' attempt to reassert their malicious prosecution claim under the guise of a Fourteenth Amendment claim is improper.

### iii.    Count III fails for the same reasons.

In Count III, Plaintiffs allege that Norton deprived them of their Fourteenth and Eighth Amendment rights because he knew or should have known that they were unlawfully imprisoned, but failed to "take reasonable steps to secure, or assist in securing [their] release . . ." Am. Compl. ¶ 162. This claim is yet another rehashing of Plaintiff's malicious prosecution claim, and is improper under both the Fourteenth and Eighth Amendments.

In *Brooks*, the Fourth Circuit rejected the plaintiff's claim that an officer's "failure to attempt to terminate . . . criminal proceedings after it became clear that [the plaintiff] was innocent" violated his rights under the Fourteenth Amendment. 85 F.3d at 18. The Court noted that "the <u>*Due Process Clause*</u> . . . does not provide protection in this area." *Id.* Plaintiffs' claim that Norton violated their Fourteenth Amendment rights by failing to secure their release ignores established case law prohibiting this cause of action.

Count III is also improper under the Eighth Amendment. The Eighth Amendment limits the kinds of punishment imposed on convicted criminals, prohibits punishments grossly disproportionate to the crime, and imposes limits on what can be made criminal. *Ingraham v.*

*Wright*, 430 U.S. 651, 667 (1977). Plaintiffs do not allege that their sentences were excessive for the crimes that they were convicted of or that they were subjected to any form of cruel or unusual punishment while in prison. Plaintiffs suggest that they would not have been incarcerated in the first place were it not for Norton's misconduct. But this is the same theory presented in Plaintiffs' malicious prosecution claim. This claim arises under the Fourth Amendment, not the Eighth Amendment.

**B.** **Even if Plaintiffs alleged a viable claim against Norton, they fail to establish supervisory liability against the Defendants.**

Plaintiffs' allegations that Norton falsified search warrants do not support any of their claims against him under Section 1983. And even if they did, Plaintiffs' still fail to state a plausible supervisory claim against the Defendants.

Plaintiffs' do not allege that Gleason, Sipple, or Russell were personally involved in Norton's misconduct. As the Supreme Court of the United States held in *Iqbal*, "each [g]overnment official, his or her title notwithstanding, is only liable for his her own misconduct." 556 U.S. at 677. Furthermore, a Section 1983 plaintiff cannot merely allege that a supervisor is liable because of the nature of his position, as the doctrine of *respondeat superior* does not apply to constitutional claims. *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978)). Rather, the plaintiff must plead sufficient facts to show "a plausible nexus . . . between the supervisor's actions and the constitutional deprivation." *Id.* (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3rd Cir. 2010)).

The Complaint does not allege that the Defendants applied for the search warrants, participated in the searches, arrested the Plaintiffs, or participated in their criminal proceedings post-arrest. Rather, Counts IV and V assert claims for supervisory liability. To the extent this

theory survives *Iqbal*, it requires proof of three distinct elements, which the Complaint does not establish.

The Fourth Circuit has held that a claim for supervisory liability requires proof that – (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practice, and (3) there was an affirmative causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Liability does not arise from the supervisor's negligence, or even gross negligence, in failing to detect and prevent misconduct. *Armstrong v. City of Greensboro*, 1:15CV282, 2016 U.S. Dist. LEXIS 73008, *29 (M.D.N.C. June 6, 2016) (citation omitted). The supervisor must know about the misconduct and either facilitate it, condone it, or turn a blind eye to it. *Id.*

i.   **The Complaint does not establish that the Defendants had actual or constructive knowledge of any relevant misconduct by Norton.**

Plaintiffs do not allege any facts showing that the Defendants had actual knowledge of Norton's misconduct concerning search warrant affidavits. Nor do they allege sufficient facts to show constructive knowledge. Constructive knowledge is that which "one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 175 (4th Cir. 2014) (citing Black's Law Dictionary (9th ed. 2009)). In Section 1983 cases, constructive knowledge "can be alleged in multiple ways, including the existence of written reports . . . or the supervisor's high level of responsibility coupled with the violation alleged to have occurred on hers or his watch." *Woodson v. City of*

*Richmond*, 88 F. Supp. 3d 551, 573 (E.D. Va. 2015) (citing *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)).

Plaintiffs' allegations concerning Norton's misconduct and systemic problems in the Department are broad in both time and scope. However, the alleged cause of Plaintiffs' constitutional injuries is specific – that Norton obtained search warrants by falsifying the informant resumes contained in the warrant affidavits. *See* Am. Compl. 22-41. However, Plaintiffs do not allege that Gleason, Sipple, or Russell received any report of misconduct, oral or written, concerning search warrant affidavits. Nor do Plaintiffs allege that any of the Defendants were responsible for overseeing Norton's search warrant applications. The fact that Gleason, Sipple, and Russell supervised Norton in some capacity does not impute this responsibility to them. Further, Plaintiffs' particular complaints about the warrant affidavits in question show that it is entirely implausible that the Defendants had knowledge of any wrongdoing.

The Complaint scrutinizes each of the four search warrant affidavits. With respect to the January 2009 warrant used against Ensley, Plaintiffs point out similarities between the informant resume on that warrant and a resume for a different informant used in October 2009 to obtain the warrant used in Archer's case. *Id*. at ¶ 79, 104. Allegedly, there were also differences between the January 2009 resume and a resume for the same informant used in September 2009 to obtain the warrant for Andrews' car. *Id*. at ¶ 80, 95. Plaintiffs further allege that the resume used to obtain Archer's warrant in October 2009 was noticeably different from two other resumes for the same informant used in March 2010 and in February 2012, for the warrant used against Humphries and Gilliam. *Id*. at ¶¶ 105-06, 115. Finally, Plaintiffs allege that the February 2012 resume is nearly identical to a resume used for a different informant in July 2012. *Id*. at ¶ 116.

The similarities and differences noted in the informant resumes concern the length of Norton's relationship with the informant and the number of search warrants and arrests that resulted from tips provided by that informant. While they may be noticeable in hindsight, these details are minute and virtually interchangeable among any number of informants employed by the Department. Further, Plaintiffs compare only six informant resumes used months apart. The alleged inconsistencies would be extremely difficult, if not impossible, for any supervisor to notice, even if he was required to do so. But this is not what Plaintiffs allege. Plaintiffs claim that because Norton missed appointments, drank in public, and received reprimands for two isolated and unrelated incidents, the Defendants should have suspected problems in four of Norton's search warrants obtained over a three-year period.

Plaintiffs attempt to buttress their argument by pointing to the N-10 forms used in each case. They allege that the informants' signatures on three of these forms were forged. *Id*. at ¶¶ 77, 93, 101-02. Even if this is true, the signatures were not suspected as forgeries until the FBI investigated Norton in 2012 and interviewed the informants who purportedly signed the forms. *Id.* The Complaint provides no basis to conclude that the Defendants could have known about these three possible forgeries, but merely asserts that the Defendants should have suspected a problem. Further, the "pervasive problem" concerning N-10 forms that Plaintiffs allege pertained to witness signatures, not the informants' signatures. To the extent Plaintiffs allege that the Defendants, or other officers, would have discovered Norton's misconduct had every N-10 form been signed by the witnessing officer at the time of payment, this claim is speculative at best.

In essence, the Complaint suggests that because Gleason, Sipple, and Russell held supervisory roles, they should have suspected that Norton posed a risk to the public and

discovered the same inconsistencies in the subject warrants that the FBI uncovered years later. This theory of vicarious liability is inapplicable here.

### ii. The facts pled do not establish that Norton's conduct posed a pervasive and unreasonable risk of constitutional injury.

Plaintiffs allege isolated incidents of misconduct, which do not amount to a pervasive and unreasonable risk. Establishing such risk requires proof that the conduct in question is widespread or has been used on several different occasions. *Stroud*, 13 F.3d at 799 (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)); *see also Chennault v. Mitchell*, 923 F. Supp. 2d 765, 788 (E.D. Va. 2013) (dismissing claim against defendant sheriff because the plaintiff failed to allege a pattern of constitutional violations resulting in similar injuries).

*Stroud* involved a claim against the former supervisor of a state trooper, who shot and killed a detainee during a traffic stop. 13 F.3d at 797. Although the defendant no longer supervised the trooper at the time of the shooting, he received at least three reports about the trooper's use of excessive force during his tenure, and blatantly dismissed the complaints. *Id.* at 795. Under these facts, the Court denied the defendant's motion for summary judgment and allowed the plaintiff's supervisory claim to go forward. *Id.* at 799-800.

Conversely, in *Brickey*, the District Court granted the defendant police chief's motion to dismiss the plaintiff's supervisory claim. 771 F. Supp. 2d at 603. The plaintiff challenged his arrest for obstruction of justice. *Id.* at 596. In response to the defendant's motion to dismiss, the Court found that the plaintiff alleged sufficient facts to show that the arresting officer lacked probable cause to arrest him. *Id.* at 601. However, the Court also found that the plaintiff did not state a plausible claim for supervisory liability because he did not allege that the police chief was aware of other instances in which suspects were arrested without probable cause. *Id.* at 603 ("[The plaintiff] asserts wholly inapposite allegations of misconduct by other members of the . . .

police department. These unrelated allegations do nothing to support the three elements required of supervisor liability . . .").

This case is dissimilar to *Stroud* and analogous to *Brickey*. The Plaintiffs do not allege any instances prior to Ensley's arrest, in which Norton falsified a warrant affidavit. The Plaintiffs do not allege that the Defendants were aware of any other instances of similar misconduct by Norton or another officer, nor do they allege that the Defendants ignored or discounted such conduct. Alleging four isolated incidents is grossly insufficient to show widespread and pervasive misconduct. To the extent Plaintiffs rely on the information uncovered during the FBI interviews, generalized gossip within the Department does not establish a pattern of behavior either.

Plaintiffs point to other examples of Norton's misconduct on the job and suggest that, in the aggregate, this behavior shows that Norton posed a risk to the public. Even if these allegations are true, Norton's unexplained absences, excessive drinking, dealings with local gangs, and failure to arrest suspects after confiscating contraband are unrelated to his use of search warrant affidavits.

The N-10 forms were used to document payments to informants. Plaintiffs do not allege that the N-10 forms were signed contemporaneously with search warrant affidavits or that another officer was required to verify the affidavits (as they were required to witness payments made to informants). Further, Plaintiffs do not allege that Norton's supervisors were responsible for verifying the signatures on his N-10 forms.

Norton was reprimanded on one occasion for possibly forging signatures on the N-10's. But this is an isolated incident, which occurred after Ensley, Archer, and Andrews were arrested, and for which Norton was properly disciplined by the department. It does not establish a pattern

of constitutional violations. Plaintiffs present the N-10 forms as a smoking gun. In reality, they provide no support for Plaintiffs' claims.

### iii. The Complaint if devoid of any allegations showing that the Defendants either authorized Norton's behavior or deliberately ignored it.

The Complaint provides no basis to conclude that the Defendants facilitated, condoned, or turned a blind eye to Norton's conduct. Without knowledge of wrongdoing, Defendants' tacit authorization is implausible. Further, the Plaintiffs bear a heavy burden in proving deliberate indifference or tacit authorization because, "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . [or] to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 372-73. Thus, proof of a single incident or isolated incidents is usually insufficient. *Id*.

Plaintiffs do not allege any prior instances of Norton's misconduct involving search warrant affidavits. Norton's reprimands represent two isolated incidents involving unrelated conduct. The remaining allegations of misconduct are irrelevant. Even in the light most favorable to them, Plaintiffs do not allege a plausible basis to show that the Defendants ratified Norton's falsification of search warrant affidavits. Therefore, there is no causal link between the Defendants' conduct and any injury sustained by the Plaintiffs.

### iv. To the extent Plaintiffs allege bystander liability, these claims fail as well.

To the extent Plaintiffs allege that Gleason, Sipple, and Russell are liable for Norton's conduct as bystander officers, this theory fails for the same reasons as Plaintiffs supervisory claims. "[A]n officer may be liable . . . on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204.

This claim requires actual knowledge, which the Complaint does not show. The Complaint does not establish constructive knowledge of a constitutional violation either. Plaintiffs did not challenge Norton's search warrants at the time of their arrests. In fact, they all pled guilty to the offenses charged. The FBI and the Commonwealth Attorney's Office did not begin investigating Norton until years later. And again, there were no reports of similar instances in the past to provide the Defendants notice of Norton's misconduct. Plaintiffs do not allege a plausible claim under the theory of bystander liability.

**C.      Plaintiffs Fourteenth and Eighth Amendment claims against the Defendants fail for the same reasons as their same claims against Norton.**

Plaintiffs assert the same Fourteenth and Eighth Amendment claims against the Defendants in Counts VII and VIII as they assert against Norton in Count III. These claims are a misguided attempt to allege direct misconduct by the Defendants. They fail for the same reasons set forth in section IV(a)(iii) above.

Plaintiffs allege unlawful seizures, beginning at the time of their arrests and continuing through their post-conviction incarceration. These claims arise under the Fourth Amendment and are not proper under the Fourteenth or Eighth Amendments.

Moreover, Section 1983 does not impose liability failing to act to prevent a future constitutional violation. *See Cobb v. Rector & Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 834 n.21 (W.D. Va. 1999) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1975)). The Defendants played no part in the Plaintiffs' arrests or convictions. Simply concluding that they should have known of Norton's misconduct and taken action to prevent an ongoing violation is insufficient to support a claim.

**D.  The Defendants are entitled to qualified immunity as a matter of law.**

Gleason, Sipple, and Russell are protected by qualified immunity because a reasonable officer could not conclude that their conduct violated the Plaintiffs' constitutional rights. Though often asserted in the summary judgment phase, a defendant may raise the defense of qualified immunity in a motion to dismiss as well. *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 (E.D. Va. 2013). Qualified immunity protects government officials from civil liability to the extent that their conduct does not violate clearly established statutory or constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001).

Addressing a qualified immunity defense requires two determinations – first, whether a constitutional right was violated, and, second, whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right. *Cloaninger v. McDevitt*, 555 F.3d 324, 330-31 (4th Cir. 2011). Whether qualified immunity applies is a purely legal question when the reasonableness of the officer's actions does not depend on disputed facts. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).

The Fourth Circuit held in *Stroud* that the plaintiff must make three separate showings to establish that the supervising officer lacked qualified immunity – (1) that it was clearly established at the time of the subordinate officer's conduct that the supervisor could be held liable for constitutional violations committed by the subordinate, (2) it was clearly established that the degree of force that the supervisor knew the subordinate was using was unconstitutional, and (3) a reasonable person in the supervisor's position would have known that his actions were unlawful. 13 F.3d at 801.

In this case Plaintiffs do not claim that Norton used excessive force, but that he caused an unlawful seizure. This claim fails for the reasons discussed above. Without an underlying

violation by Norton, there is no basis to hold the Defendants liable in the first place. Even if Norton committed a violation, there is no indication that the Defendant's knew about it. Thus, the Defendants had no reason to suspect that they could be held liable for Norton's conduct. Finally, the facts pled do not establish that the Defendants violated any constitutional right of the Plaintiffs, let alone a clearly established right. The Defendants are entitled to qualified immunity.

## V. CONCLUSION

For the reasons stated herein, the Defendants' motion should be granted, and Plaintiffs' claims against Gleason, Sipple, and Russell should be dismissed with prejudice.

CHRISTOPHER GLEASON, CHARLES SIPPLE, and ROGER RUSSELL

/s/_____
D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason, Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2017, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing

(NEF) to the following counsel of record:

Mark J. Krudys
The Krudys Law Firm, PLC
Suntrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950 Telephone
(804) 381-4458 Facsimile
mkrudys@krudys.com
*Counsel for Plaintiffs*

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
(804) 289-8682 Telephone
jpreis@richmond.edu
*Counsel for Plaintiffs*

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
(804) 343-1900 Telephone
(804) 343-1901 Facsimile
amyaustinlawyer@gmail.com
*Counsel for Plaintiffs*

Stephen M. Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad Street
Richmond, VA 23219
(804) 646-7953 Telephone
(804) 646-7939 Facsimile
Stephen.Hall@richmondgov.com
Richard.HillJr@richmondgov.com
*Counsel for Defendant City of Richmond*

David P. Corrigan
Jeremy D. Capps
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
(804) 747-5200 Telephone
(804) 747-6085 Facsimile
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com
*Counsel for Defendant Norton*

Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods LLP
Gateway Plaza
800 E. Canal Street
(804) 775-1000 Telephone
(804) 698-2304 Facsimile
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
*Counsel for Defendant Norwood*

Ashley L. Taylor, Jr.
Stephen C. Piepgrass
Brooke K. Conkle
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1286 Telephone
(804) 697-1339 Facsimile
ashley.taylor@troutmansanders.com
stephen.piepgrass@troutmansanders.com
brooke.conkle@troutmansanders.com
*Counsel for Defendants Alston, Corrigan,
Harrison, and Blackwell*

And I hereby certify that I will mail a copy of the foregoing by U.S. mail, postage prepaid, to the following non-filing user(s): none.

/s/_____
D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason,
Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com