**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**WILBUR ENSLEY, et al.,**

        **Plaintiffs,**

v.                                          Civil Action No. 3:17-CV-024-MHL

**CITY OF RICHMOND, et al.,**

        **Defendants.**

**PLAINTIFFS' OPPOSITION TO DEFENDANT
CITY OF RICHMOND'S MOTION TO DISMISS**

On the opening page of its Motion to Dismiss, the City of Richmond suggests that, even though a constitutional violation led to their unlawful detention, the Plaintiffs were eventually released and that they should thus be "content with their shortened sentences." Br. at 1. This argument overlooks the fact that one of the Plaintiffs in this case—Deunte Humphries—served *his entire sentence* before the constitutional violations that put him in jail were uncovered. One can only wonder whether the City of Richmond believes that Mr. Humphries should be content to have served his *entire* sentence. Indeed, the logic of the City's argument is that, even if every defendant served their entire sentence, they "deserve no recovery" and should just be "content." Br. at 5. The Plaintiffs are not content with constitutional violations that result in their detention and this Court should not be content either. For that reason and the reasons stated below, the Court should deny the City of Richmond's Motion to Dismiss in its entirety.

**STATEMENT OF FACTS**

The City of Richmond does not deny the basic facts of this case. Indeed, the City of Richmond specifically attested to many of the key facts when it properly sought the vacation of

the two of the Plaintiffs' sentences. Am. Complaint, ¶ 120. Those facts include the following: Jason Norton, an officer with the Richmond Police Department ("RPD") from 2004 through 2013, defrauded a magistrate in several applications for search warrants by attributing his knowledge to an informant that did not exist or was not reliable. Unaware of Norton's misrepresentations, the magistrate issued the warrants. Despite their issuance, the warrants were unconstitutional because they were not supported by probable cause. Norton later executed the warrants and arrested the Plaintiffs during the searches. Because the searches were unconstitutional, any charges against the Plaintiffs should have been immediately dismissed. This did not happen, however. Instead, the charges remained and the Plaintiffs, facing the risk of long prison sentences, pled guilty. Years later, someone outside the RPD discovered Norton's lies, eventually causing the Plaintiffs' convictions to be voided and the Plaintiffs that were still in jail to be released.

Those are just the facts of Norton's fraudulent warrants, however. What is just as important in this case is the misconduct of Chief of Police Bryan T. Norwood. As the chief policymaker for the RPD during the period relevant to this suit,[1] Norwood's own constitutional violations are deemed to be those of the City itself under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Thus, to the extent that Norwood has committed a constitutional violation, the City will be liable without regard to the doctrine of qualified immunity. *See Owen v. City of Independence*, 445 U.S. 622 (1980).

The facts underlying Norwood's constitutional violations are recounted at length in an accompanying memorandum. *See* Plaintiffs' Opposition to Defendant Norwood's Motion to

---

[1] The City of Richmond acknowledges that Norwood is the chief policymaker for the RPD with regard to the issues presented by this case. *See* Br. 14-15, n.9.

Dismiss.  In brief, however, the allegations in this case establish that Norwood had knowledge that Norton lied about his informants and yet failed to act on that knowledge.

Norwood's knowledge is established chiefly through: (1) official records of Norton's suspicious and deceitful activity regarding a confidential informant in April 2010, (2) Norton's double-reprimand for deceit involving informants in March 2011, (3) an investigation of Norton in late 2011 by the RPD's Internal Affairs Division regarding Norton's work with an informant, (4) Norwood's decision in the summer of 2012 to clean up the RPD's confidential informant program, (5) the FBI's initiation of investigation in the summer or fall of 2012 into Norton's fraudulent activities with informants, and (6) a widespread belief during 2010-2012 that Norton was a troubled cop who was playing "too fast and too loose."  These events all permit a reasonable jury to find that sometime between April 2010 and the fall of 2012, Defendant Norwood knew that there was a significant risk that persons like the Plaintiffs were in jail but entitled to release.

Given this knowledge, what did Norwood do about it?  Not much, or at least not enough.  Despite Norwood having such knowledge between April 2010 and the fall of 2012, the Plaintiffs in this case were not exonerated *until 2015*.  There is absolutely no reason for this delay.  With regard to Plaintiffs Gilliam and Humphries, who were arrested in February 2012, Norwood had enough knowledge by then to prohibit Norton from interacting with informants or at least from relying on informants in applying for search warrants. This alone would have prevented their injuries.  But no such action was taken.  Beyond that, by the time the federal investigation was initiated in the fall of 2012, Norwood could have instituted RPD efforts to seek the release of individuals wrongly imprisoned. Instead, Norwood waited until the FBI concluded its investigation in the spring of 2015—even though the FBI investigation did not concern Gilliam

3

or Humphries and was likely focused on issues well beyond the validity of Enlsey, Archer and Andrews's underlying convictions.

In sum, and as explained more fully in an accompanying brief,[2] the Plaintiffs have alleged sufficient facts for a reasonable jury to find that Defendant Norwood knew of Norton's deceit with regard to informants, but yet failed to properly respond to that knowledge by attempting to prevent or shorten the prison sentences of persons ensnared in Norton's frauds.

## **STANDARD OF REVIEW**

To satisfy Federal Rule of Civil Procedure 8(a)(2), the Complaint simply must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." On Defendants' motion to dismiss under Rule 12(b)(6), Plaintiffs' allegations are to be construed liberally in Plaintiffs' favor, *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), while the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citations omitted). "This 'plausibility' standard is satisfied 'when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged.'" *Acorn Land, LLC v. Balt. County*, No. 09-2150, 2010 U.S. App. LEXIS 19582 at 18 (4th Cir. Sept. 21, 2010) (emphasis added), (quoting *Iqbal*, 129 S. Ct. at 1949). Furthermore, a "context-specific" analysis is to be employed, and "satisfying this 'context-specific' test does not require 'detailed factual allegations.'" *See Mitchell v. Rappahannock Reg'l Jail Auth.*, 703 F. Supp. 2d 549 (E.D. Va. 2010) (quoting *Nemet Chevrolet, Ltd.,* 591 F.3d 250, at *4 (citations omitted.))

---

[2] *See* Plaintiffs' Opposition to Defendant Norwood's Motion to Dismiss.

Also, when, as here, "a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint," "'[the court] must be especially solicitous of the wrongs alleged'" and "'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quotations omitted) (emphasis original).

## ARGUMENT

Defendant City of Richmond offers several arguments why it should not be held liable for the harm suffered by the Plaintiffs.[3] Each of these arguments is meritless. Before addressing these arguments, however, it will be helpful to briefly review the claims against the City of Richmond.

**A. The Plaintiffs' Claims Against the City of Richmond.**

The Plaintiffs' claims against the City of Richmond are contained in Counts VI and IX. In Count VI, the Plaintiffs allege that Bryan Norwood, a policymaker for the City with regard to policing matters, violated the Constitution by failing to act upon his knowledge of Norton's past, present or further constitutional violations. In particular, Norwood failed to act despite his knowledge that Norton would violate, was violating, or had violated the Plaintiffs' rights to: (1) be free from malicious prosecution, (2) make knowing and intelligent pleas and (3) enjoy liberty

---

[3] The City of Richmond has presented arguments against the Plaintiffs' malicious prosecution claims under the Fourth Amendment and liberty claims under the Fourteenth and/or Eighth Amendment. The City of Richmond has not, however, presented any arguments against the Plaintiff's knowing and intelligent plea claims. Those claims are actionable against the City of Richmond under Count VI, which holds the City liable under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) for Defendant Norwood's failures. As such, that issue is not before the Court at this time. *See Baker v. Patterson Med. Supply, Inc.*, No. 4:11CV37, 2011 WL 2731259, at *3 (E.D. Va. July 13, 2011) (stating that, because defendant raised "argument for the first time in its reply brief" the "court will not consider it" on a motion to dismiss, though the defendant is "free, of course, to raise the issue at a later time") (citing *Clawson v. FedEx Ground Package System, Inc.,* 451 F.Supp.2d 731, 734 (D. Md. 2006) and *United States v. Williams,* 445 F.3d 724, 736 n. 6 (4th Cir. 2006)).

5

under the Fourteenth and/or Eighth Amendments. Count IX is similar to Count VI in that it alleges a liberty claim under the Fourteenth and/or Eighth Amendments, but it is distinct in that Norwood's liability is not based on his status as a supervisor. Count IX thus alleges that, regardless of Norwood's supervisory status, he violated the Constitution by not responding to his knowledge that persons in the Plaintiffs' circumstances were very likely entitled to release.

Although Counts VI and IX focus on the misdeeds of Norwood (also a defendant in this action), Norwood's constitutional violations are deemed to be the policy of the City of Richmond for the purposes of a § 1983 action. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Thus, whether the Plaintiffs state a claim against the City is tied to whether they state a claim against Norwood. If there is a viable claim against Norwood, then the Plaintiffs possess a viable claim against the City as well. With this summary of the claims, the Brief now turns to the arguments the City advances.

**B. The Fruit of Poisonous Tree Doctrine Should Apply Here.**

The City of Richmond's first argument is that "the fruit of the poisonous tree doctrine does not apply to civil proceedings like this one" and that "all the [Plaintiffs'] claims should be dismissed with prejudice." Br. at 13-14. This argument is flawed for two reasons. First, of all the claims against Norwood, only one—the Fourth Amendment malicious prosecution claim—requires the fruit of the poisonous tree doctrine to succeed. Thus, regardless of this Court's opinion on that issue, the Plaintiffs still state a claim against the City based on their knowing and intelligent plea claims and their liberty claims (including liberty claims against Norwood directly and in a supervisory capacity).

With regard to the malicious prosecution claim, the Plaintiffs state a claim for the reasons stated in their brief opposing Defendant Norton's motion to dismiss. As more fully explained

6

there, the exclusionary rule (which contains the fruit of the poisonous tree doctrine) is appropriate in § 1983 actions growing out of an officer's deceit of a magistrate. In such circumstances, the exclusionary rule normally applicable in the criminal setting has no deterrent effect because the officer has proven himself willing to evade the rule. Therefore, it is only through a § 1983 action that a deceitful officer can be deterred.

### C. The Plaintiffs State a Claim Against the City Under *Monell.*

The City of Richmond alternatively argues that it is not liable because Chief Norwood did not commit an "omission rising to deliberate indifference."[4] Br. at 14-18. This argument is meritless.

#### 1. The Proper *Monell* Standard

In arguing that Norwood did not commit an "omission rising to deliberate indifference," the City of Richmond is referring to one of four ways to hold a municipality liable under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). As explained below, the City of Richmond has invoked the wrong standard, though the ultimate consequence in this case may be negligible.

A city may only be held laible under § 1983 if the constitutional deprivation is the result of the city's custom or policy. Under Fourth Circuit law, there are four different ways in which custom or plicy can be established:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest deliberate indifference to the rights of citizens; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

---

[4] The City of Richmond also argues that the Plaintiff's *Monell* claim as fails there was no "actionable municipal custom." Br. 18-20. Although the Plaintiffs spoke of a custom in some of its counts, it has elected not to pursue any custom claims.

7

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks and citations omitted). The City has interpreted the Plaintiffs' Complaint as alleging the third type of policy—a deliberate indifference policy recognized in *City of Canton v. Harris,* 489 U.S. 378 (1989). In contrast, the Plaintiffs are alleging the second type of policy—the individual decisions of a policymaker recognized in *Pembaur v. Cincinnati,* 475 U.S. 469 (1986).

At one time, courts struggled to discern the difference between the *Pembaur* policies and *City of Canton* policies. The Supreme Court, however, clarified the distinction in *Bryan County v. Brown*, 520 U.S. 397 (1997). *Bryan County* involved a claim against a county for the use of excessive force. The plaintiff's theory of the case was that the county was liable to her because it did not have a process for screening applicants (some of which might have a violent background) and that the decision not to have a screening program was attributable to a policymaker, thus rendering the county liable under *Pembaur*. The Supreme Court disagreed, however. *Pembaur*, the Court explained, applies only to "single decisions" of policymakers where the decision itself results in a completed constitutional violation. *Id*. at 406. Thus, if the sheriff in *Bryan County* had specifically authorized the use of excessive force or acquiesced in such force, the county would be liable because the violation would have been the direct and obvious result of the authorization (whether explicit or tacit). Instead of fitting under *Pembaur*, the Court explained, the plaintiff's claim fit under *City of Canton*. *City of Canton* imposed liability on a city where "implementation of a generally applicable rule" resulted in a constitutional violation. More particularly, *City of Canton* held that, when a policy maker adopts a generally applicable rule that does not, on its own, complete a constitutional violation, the county or municipality can only be liable for a resulting constitutional violation if the generally applicable rule was the "moving force" behind the violation in a particular case.

8

The Plaintiffs' allegations make clear that City of Richmond is liable in this case under *Pembaur*, not *City of Canton*. In Counts VI and IX, the Plaintiffs allege that Defendant Norwood knew that Norton routinely lied about his relationship with informants but did nothing, even though such knowledge put Norwood on notice that persons in the Plaintiffs' situation would be entitled to release from jail. **Because the Plaintiffs suffered continuing harm over the course of years, each and every day that Norwood "did nothing," a completed constitutional violation occurred.** The Plaintiffs *do not* allege that their constitutional violations were the result of a "generally applicable rule" adopted by Norwood with regard to training or supervision.[5] Thus, the Plaintiffs here are not required to plead, as would be required under *City of Canton*, that some sort of program at the RPD was the "moving force" behind their constitutional violations.

Although it is important to be precise in identifying the proper standard of review, there is not likely a significant difference between the two standards in this particular case. Given that the City's liability to the Plaintiffs in Counts VI and IX are based on Norwood's deliberate indifference,[6] the Plaintiffs have already adequately plead deliberate indifference under the *City of Canton* standard deemed applicable here by the City of Richmond. Further, even if *City of Canton*'s "moving force" causation rule were to apply here, there can be no doubt that Norwood's knowledge of Norton's constitutional violations, coupled with Norwood's inaction,

---

[5] As a further indication of this point, supervisory claims in the Fourth Circuit under *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), concern only the failed supervision of a single officer, not a programmatic failure. *See, e.g., Willis v. Blevins*, 966 F. Supp. 2d 646, 662 (E.D. Va. 2013) ("the inquiry under *Shaw* concerns only the conduct of [the officer under supervision]").

[6] As explained in the Plaintiffs' Opposition to Defendant Norwood's Motion to Dismiss, the supervisory claims against Norwood (Counts IV and V) and the non-supervisory claims against Norwood (Counts VII and VIII) all hinge, in effect, on whether Norwood was deliberately indifferent to the significant risk that persons in the Plaintiffs position would be unlawfully detained.

was a "moving force" behind the Plaintiffs' incarceration. The line of causation is a direct line, not a twisting line requiring the evaluation of multiple inferences and probabilities. Put differently, where a police chief knows that one of his officers lied in warrant applications, thus rendering those warrants invalid, the chief can reasonably assume that, given the context of the lies, there is a significant risk that persons currently in jail are entitled to be released. The failure to act upon such knowledge is thus a "moving force" behind the prisoners continued detention.

2.  **The Plaintiffs' Allegations are Sufficient**

The City of Richmond argues that the Plaintiffs have not adequately plead that Norwood was deliberately indifferent to the Plaintiffs' entitlement to be released from jail. As explained more fully in an accompanying brief, the Complaint contains allegations that are easily sufficient for a reasonable jury to find that Norwood knew that persons in the Plaintiffs' position were entitled to release but did nothing. *See* Plaintiff's Opp. to Norwood at 2-9. This discussion speaks for itself, but it is nonetheless important to respond here to two arguments that the City makes.

First, the City argues that "Chief Norwood showed the opposite of deliberate indifference." Br. at 16. Norwood's lack of indifference is established, the City argues, through Norwood's disciplining of Norton in March 2011 and to Norwood's decision to have Brian Corrigan clean up the informant program in the summer of 2012. Br. at 16. These are no doubt deliberate and positive actions by Norwood, but most importantly, ***they did nothing to prevent or alleviate the harm suffered by the Plaintiffs***. The reprimands in March 2011 did nothing to help the Plaintiffs that were already in jail (*i.e.,* Ensley, Archer and Andrews) and did nothing to help the Plaintiffs that were soon to be arrested (*i.e.*, Gilliam and Humphries). By the time Gilliam and Humphries were arrested in March 2012, Norton had already demonstrated his capacity and

10

tendency for deceit involving informants on numerous occasions and a reasonable jury could find that, by allowing Norton to continue working with informants, Norwood was indifferent to the substantial risk that persons like Gilliam and Humphries would end up wrongfully detained.

Further, Norwood's efforts to clean up the informant program in the summer of 2012 helped none of the Plaintiffs because they were already in jail—and would remain there for some time to come. Put differently, while such measures might benefit future victims to some degree (though not likely very much because Norton was still on the job seeking warrants), the measures did absolutely nothing for *past* victims of Norton's misconduct. But yet a reasonable officer in Norwood's shoes would have known that, where an officer has established his tendency to lie with regard to informants (and by the fall of 2012, is under investigation by the FBI for such misconduct), there is a serious possibility that persons were then in jail who were entitled to be free. Norwood was deliberately indifferent to *that* circumstance and the City of Richmond is thus liable for the Plaintiffs' wrongful incarceration.

Second, the City of Richmond also argues that "Norwood's decision to reprimand, rather than fire, Norton, is not actionable under Fourth Circuit precedent." Br. at 17. This argument fails for two reasons. First, the Plaintiffs do not contend that Norwood was required (whether by Fourth Circuit precedent or otherwise) to fire Norton. They simply contend that, by allowing Norton to continue to work with informants, Norwood was indifferent to the risk that persons like the Plaintiffs would end up wrongfully detained. Second, the Fourth Circuit law cited by the City does not insulate Norwood from liability.

*Riddick v. School Bd.*, 238 F.3d 518 (4th Cir. 2000) does not help the City here. Riddick involved allegations that School Board was liable for various constitutional harms because the employee who committed those harms had previously been suspected of engaging in similar

11

activity. Although the Court sided with the School Board in *Riddick*, the key distinction between that case and this one is that the *prior incident was deemed suspicious but not inappropriate*. In contrast, Norton's conduct here was inappropriate—as evidenced by the reprimand he received.

*Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997), is also of little help to the City of Richmond. In that case, a student raped by a school system employee in 1990 sued the school system. The student argued that the school system was liable because, in 1979, the same employee was disciplined for sexual misconduct with a student. The court refused to impose liability on the school system because the causal connection "between the decision to keep [the employee] on in 1979 and the constitutional violation ten years later is too remote . . . ." *Id*. at 627. In contrast to *Jones*, however, Plaintiffs Gilliam and Humphries were arrested 11 months after Norton's reprimands. Perhaps if Norton had established a clean track record for ten years, as in Jones, Norwood could be excused for allowing him to work with informants, but given the short time frame, such an inference is not appropriate.

**D. The Plaintiffs State a Claim Under the Fourteenth and/or Eighth Amendment.**

Finally, the City of Richmond argues that the Plaintiffs' liberty claims under the Fourteenth and/or Eighth Amendment fail to state a claim for relief. As explained in accompanying briefs, see Norton and Norwood, the Plaintiffs do in fact state a claim. Moreover, the three arguments made by the City in its brief are meritless.

First, the City of Richmond argues that *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996), prohibits the Plaintiffs' due process claims because, as the Fourth Circuit put it in that case, "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant to detain him prior to trial." The City of Richmond, however, fails to recognize that *Brooks* only addresses which rights may be invoked "*prior to trial*." *Id*. (emphasis

added). *Brooks* thus says absolutely nothing about which rights may be invoked *after* a trial (or a guilty plea). If it becomes clear that a prisoner is entitled to release, and state actors fail to take reasonable steps to secure that release, the prisoner may claim after his release that he was denied due process. *See Golson v. Department of Corrections*, 914 F.2d 1491 (4th Cir. 1990) (unpublished disposition).

Second, the City of Richmond argues that, even if a due process claim were permissible here, the only cognizable claim would be a fabrication of evidence claim. Br. at 21. In keeping with *Golson*, however, that is not true because Norwood was indifferent to the significant risk that persons like the Plaintiffs would be in jail despite their entitlement to release.

Third and finally, the City of Richmond argues that the Eighth Amendment is "inapplicable to the claims here." Br. at 21. This argument, however, is belied by *Golson*, 914 F.2d 149, in which the Fourth Circuit held that a plaintiff's allegations that he was not released from prison despite his entitlement to such a release states "a claim under the due process clause and the eighth amendment." Although the Eighth Amendment is usually invoked to challenge the conditions of confinement rather than the fact of confinement, courts (including the Fourth Circuit) have recognized confinement without lawful authority is fundamentally "cruel and unusual." *See, e.g.*, *Moore v. Tartler,* 986 F.2d 682, 686 (3d Cir.1993).

In sum, as explained above and more fully in the accompanying briefs, the City of Richmond's arguments regarding the Plaintiffs' right to liberty under the Fourteenth and/or Eighth Amendment are without merit.

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court deny Defendant City of Richmond's Motion to Dismiss in its entirety.

13

Respectfully submitted,

WILBUR ENSLEY,
COVEY ANDREWS,
SHAMAR ARCHER,
DEUNTE HUMPHRIES and
JAMAR GILLIAM

By: /s/ Mark J. Krudys
      Counsel

Mark J. Krudys (VSB# 30718)
THE KRUDYS LAW FIRM, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com
Web: www.krudys.com

John Frederick Preis (VSB# 45764)
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: jpreis@richmond.edu

Amy L. Austin (VSB# 46579)
THE LAW OFFICE OF AMY L. AUSTIN, P.L.L.C.
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Fax: (804) 343-1901
Email: amyaustinlawyer@gmail.com

*Counsel for Plaintiffs Wilbur Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam*

## CERTIFICATE OF SERVICE

I certify that on May 12, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all registered users.

By: /s/ Mark J. Krudys

Mark J. Krudys (VSB# 30718)
THE KRUDYS LAW FIRM, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com
Web: www.krudys.com