**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| WILBUR ENSLEY, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:17-CV-024 |
| ) | |
| CITY OF RICHMOND, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT BRYAN T. NORWOOD'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS THE AMENDED COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM</u>**

Each of these Plaintiffs was arrested because officers executing search warrants found their contraband drugs, guns, or both. Each Plaintiff then pled guilty, acknowledging ownership of the contraband. Each Plaintiff served time in prison following his guilty plea, and no Plaintiff now disputes his guilt.

Plaintiffs nevertheless demand more than $50 million for the time they spent in prison because of alleged Fourth Amendment violations preceding their arrests. In Plaintiffs' view, this case should be adjudicated as if they had not been caught red-handed and as if they had not confessed their guilt. The problem is that in civil cases, courts cannot ignore this undisputed evidence of guilt. Thus, each Plaintiff's arrest and guilty plea was fully supported by probable cause, and Plaintiffs fail to state a Fourth Amendment claim or any other constitutional violation. As one court said under nearly identical circumstances: "[T]his is not a case of actual innocence or wrongful imprisonment." There is accordingly "no reason to compensate" Plaintiffs for the time they served after pleading guilty to offenses of which they were guilty. *Williams v. City of Tulsa*, 2016 WL 1572957, at *7 (N.D. Okla. Apr. 19, 2016).

Even if Plaintiffs could state a predicate claim—under the Fourth Amendment or otherwise—Chief Norwood would not be liable. Under *Ashcroft v. Iqbal*, the Court must dismiss a § 1983 complaint against a supervisor unless the supervisor's *own individual actions* violated the Constitution. 556 U.S. 662, 676 (2009). Even under the pre-*Iqbal* standard for supervisory liability, Plaintiffs bear a "heavy burden of proof," *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), because proving that a supervisor was *negligent* is not enough. Rather, supervisors are only liable for being *deliberately indifferent* to constitutional violations—for choosing to do nothing in the face of a serious problem.

Plaintiffs' own allegations doom any claim of deliberate indifference. Far from turning a blind eye to Officer Norton, the RPD reprimanded him multiple times under Chief Norwood's leadership. And far from doing nothing for the confidential informant program, the RPD assigned a lieutenant to spearhead reform in what even Plaintiffs acknowledge was a "targeted effort by RPD leadership." Am. Compl. ¶ 147.

Because Plaintiffs cannot argue that Chief Norwood did *nothing* to address the RPD's confidential informant program, they must argue that he should have done *more*. And so they do—setting out a series of "reasonable" (in their view) steps that the RPD should have taken here. Whether Plaintiffs' policy recommendations would have been reasonable or effective is academic, however, because that would only show potential *negligence*. Deliberate indifference is a much higher standard, and Plaintiffs' attempt to meet that standard with allegations of negligence fails as a matter of law. Because there is no basis for making Chief Norwood liable for the imprisonment of these undisputedly guilty men, the Court should dismiss all claims against him.

# ARGUMENT

## I. Plaintiffs fail to state a Fourth Amendment claim against Chief Norwood as a supervisor.

### A. Plaintiffs fail to state a predicate Fourth Amendment claim.

The malicious prosecution claims at the heart of the Amended Complaint remain defective because Plaintiffs were not seized "pursuant to legal process unsupported by probable cause." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

First, it is undisputed that Plaintiffs were arrested *without* warrants, not pursuant to search warrants. *See* Norwood Motion to Dismiss ("MTD"), Doc. No. 43, at 3. A warrantless arrest is not "a seizure . . . pursuant to legal process." *Evans*, 703 F.3d at 647; *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (a detention pursuant to warrantless arrest was "*without legal process*"). Because Plaintiffs' Opposition does not allege any other seizure that was made pursuant to legal process without probable cause, they fail to state a claim for malicious prosecution. Moreover, Plaintiffs concede that they "do not allege a false arrest claim," Opp. to Norton MTD, Doc. No. 51, at 22 n.14, so they fail to state *any* claim under the Fourth Amendment.

Plaintiffs also fail to state a Fourth Amendment claim because there *was* probable cause for their arrests: the search warrants revealed undisputed evidence of guilt that cannot be excluded in a civil case. MTD 3. Plaintiffs' argument for pretending that evidence did not exist under the "fruit of the poisonous tree" doctrine has no support in law or logic in this civil case.

Plaintiffs do not dispute that courts have applied a clear rule: the fruit of the poisonous tree doctrine does not apply in civil cases. *Id.* At least three circuits have held that "the exclusionary rule and the fruit of the poisonous tree doctrine *never* apply in a civil suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) (emphasis added)

3

(citing *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir. 1997)). And Plaintiffs have not identified a single case applying the doctrine in a civil case.

Instead, Plaintiffs ask this Court to carve an unprecedented exception out of that clear rule. The basis for that exception is that Plaintiffs' "exhaustive search" found no case refusing to apply the fruit of the poisonous tree doctrine to "a detention arising from the intentional deceit of a magistrate by a police officer." Opp. to Norton MTD 5. But *Williams v. City of Tulsa* is right on point. 2016 WL 1572957 (N.D. Okla. Apr. 19, 2016). There, an officer fabricated a confidential informant in an affidavit to obtain a search warrant. *Id.* at *2. Police then executed the search warrants, found drugs and a firearm, and later arrested the plaintiff, who was convicted and sentenced to life imprisonment. *Id.* at *3. After serving six years in a maximum-security federal prison, the plaintiff was released around the time that officer was indicted for—and later convicted of—perjury. *Id.* at *4.

Relying on *Black, Townes*, and *Wren*, the court held that the fruit of the poisonous tree doctrine did not apply to the plaintiff's malicious prosecution claim. *Id.* at *6-7. The court acknowledged that "a constitutional violation did occur" when the search warrant was executed. But "without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine . . . no further constitutional violation occurred." *Id*. at *7. The court concluded that "this is not a case of actual innocence or wrongful imprisonment," and accordingly found "no reason to compensate [the plaintiff] for the six years he served." *Id.*; *see also Bradshaw v. Mazurski*, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (refusing to apply the fruit of the poisonous tree doctrine where officers allegedly procured a search warrant using false testimony and then discovered contraband that led to the plaintiff's arrest and prosecution); *Hopkins v. O'Brien*,

4

2011 WL 4585233, at *5 (N.D. Ill. Sept. 30, 2011) (In *Townes* and *Bradshaw*, "an allegedly unlawful search disclosed evidence that supported the plaintiff's arrest; that evidence doomed the plaintiff's civil rights challenge to his arrest and prosecution, regardless of the circumstances in which it was uncovered.").

Plaintiffs' policy arguments do not justify applying the fruit of the poisonous tree doctrine to Chief Norwood either. As explained in the City of Richmond's brief, the Fourth Amendment is meant to protect privacy, not crime, but applying the doctrine in civil cases would protect the latter with little or no benefit to the former. Moreover, Plaintiffs' arguments suggest at most that additional deterrence is appropriate in civil cases against "'bad egg' officers" who have "intentionally defrauded the legal system." Opp. to Norton MTD 7-8. Even if that argument had merit—despite no court adopting it—it would not justify incorporating the fruit of the poisonous tree doctrine into civil cases against *supervisors* who have not participated in any intentional violations. Because Plaintiffs have neither precedent nor any policy argument for applying the doctrine *to Chief Norwood*, the Court cannot ignore the undisputed evidence of guilt when deciding whether there was probable cause that Plaintiffs were guilty.[1]

### B. Plaintiffs' theory of supervisory liability is foreclosed by *Iqbal*.

Plaintiffs contend (at 14-15) that the Court can determine supervisory liability without regard to *Ashcroft v. Iqbal*. But they ignore *Iqbal*'s holding that a supervisor "is only liable for his or her own misconduct," 556 U.S. at 677, and that "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *id.* at 676 (emphasis added); *see also id.* at 693 (Souter, J., dissenting) ("The

---

[1] In addition, Plaintiffs' claims remain time-barred under Va. Code § 8.01-243 for the reasons in the City of Richmond's brief and reply.

5

nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). Because Plaintiffs have not alleged that Chief Norwood violated the Constitution *through his own individual actions*, their supervisory liability claims fail.

Plaintiffs nevertheless contend that in the Fourth Circuit, "*Iqbal* is a pleading case, not a supervisory liability case," such that "tacit authorization" remains a viable theory of supervisory liability. Opp. to Norwood MTD ("Opp."), Doc. No. 52, at 15 (citing *Danser v. Stansberry*, 772 F.3d 340 (4th Cir. 2014)). That statement cannot be reconciled with *Iqbal*'s holding. *See also Evans*, 703 F.3d at 661 (Wilkinson, J., concurring) ("[T]he complaints in this case repeatedly allege that the so-called supervisory defendants violated plaintiffs' constitutional rights on the theory that they 'knew or should have known' about their subordinates' conduct. This directly contradicts *Iqbal*'s holding that such allegations, standing alone, cannot give rise to supervisory liability.").

In any event, *Danser* was an 8th Amendment case for which "tacit authorization" may be a viable theory of liability. Because a subordinate who is deliberately indifferent to a risk of serious physical harm can be directly liable under the 8th Amendment, a supervisor who is deliberately indifferent to the same harm is also *directly* liable under the 8th Amendment. *See Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) ("[A]fter *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges*." (emphasis added)). Thus, *Danser* is consistent with *Iqbal*'s holding as explained in Chief Norwood's brief (at 4-5 & n.1).

### C. Chief Norwood is not liable as a supervisor even under Plaintiffs' own theory.

Even under the pre-*Iqbal* standard, these Plaintiffs fail to satisfy the "heavy burden of proof in supervisory liability cases." *Slakan*, 737 F.2d at 373. That is because Plaintiffs have alleged no facts showing that Chief Norwood had "actual or constructive knowledge of a risk of constitutional injury," showed "deliberate indifference to that risk," and that there was "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).[2]

First, Plaintiffs still have not shown Chief Norwood's actual or constructive knowledge of a risk "that a violation of a *particular* constitutional or statutory right will follow." *Carter*, 164 F.3d at 218. At most, Plaintiffs' allegations amount to characterizing an officer as a "bad egg." Opp. to Norton MTD 7-8. Plaintiffs offer no argument that Officer Norton's alleged interference with the arrest of a confidential informant would render his informants unreliable. Opp. 17. Nor does the fact of an FBI interview with a confidential informant or the existence of rumors that Officer Norton was playing "too fast and too loose" reveal any risk of the *particular* constitutional violation that Plaintiffs allege here. *Id*. Likewise, failing to properly record signatures for payments to confidential informants may not be best practices for public funds, *id.*, but it does not implicate the reliability of the informants themselves. Such a splatter-painted picture of scattered violations is insufficient as a matter of law because Plaintiffs fail to show that Chief Norwood *knew* that Officer Norton was relying on confidential informants who were not reliable. *Carter*, 164 F.3d at 219; *see also Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D.

---

[2] Plaintiffs omit the requirement of "actual or constructive knowledge" from the standard for supervisory liability. *See* Opp. 17. But they cite no support for the proposition that they are excused from proving actual or constructive knowledge in a supervisory liability claim for malicious prosecution (or any other constitutional violation).

Va. 2011) (dismissing a supervisory claim for failing to plead a supervisor's knowledge of "factually similar" violations).

Second, Plaintiffs still have not shown that Chief Norwood was deliberately indifferent to the risk that warrants were issuing based on unreliable informants. Plaintiffs ignore the important steps that the RPD took under his leadership. In particular, the RPD initiated an investigation into the confidential informant program that even Plaintiffs acknowledge was a "targeted effort" to fix issues with that program. Am. Compl. ¶ 147. Furthermore, the RPD actually reprimanded Officer Norton for his behavior. Am. Compl. ¶¶ 133-35. That disciplinary action shows that Chief Norwood was not deliberately indifferent. *See Carter*, 164 F.3d at 221. And Plaintiffs raise no allegation that Chief Norwood failed to fully comply with the FBI's investigation.

Plaintiffs' Opposition attempts to pivot from a deliberate indifference standard to mere negligence, and urges that Chief Norwood was negligent because it was unreasonable not to do *more* than reprimand Officer Norton and clean up the CI program. *See, e.g.*, Opp. 19 ("Norwood failed to take *reasonable steps*"); *id.* (alleging that Chief Norwood did not have a "*reasonable response*" to Officer Norton) (emphases added). Even if those allegations amounted to negligence, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "Actions that in hindsight are 'unfortunate' or even 'imprudent' will not suffice" for deliberate indifference. *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001). The law of deliberate indifference accordingly "does not burden a superior officer with a heightened affirmative duty to investigate." *Jackson*, 771 F. Supp. 2d at 603. Thus, whether it would have been reasonable to take additional steps such as

launching additional investigations is irrelevant: Chief Norwood's actions were more than adequate under the deliberate indifference standard.

Finally, Plaintiffs fail to state a claim that Chief Norwood is liable as a supervisor because they ignore the "intervening superseding causes that break the causal chain." *Evans*, 703 F.3d at 647. In particular, Plaintiffs have no response to the insulating effect of "subsequent acts of independent decision-makers," *id.*, including the independent prosecutors, grand juries, and their own decisions to plead guilty. MTD 8. Because all of those actors break the "affirmative causal link" as a matter of law, Plaintiffs' claims for supervisor liability must be dismissed.

## II. Plaintiffs fail to state a claim against Chief Norwood as a supervisor for allowing the guilty to plead guilty.

As explained above, Chief Norwood is not liable as a supervisor either under *Iqbal* or under the pre-*Iqbal* standard. Plaintiffs agree that supervisory liability analysis is "nearly identical" for the malicious prosecution and guilty plea claims, and offer no reason why Chief Norwood could be liable for the former but not the latter. Opp. 24 ("The Plaintiffs' allegations state a claim for relief under this standard for the same reasons discussed above in relation to their malicious prosecution claim."). Thus, these claims should be dismissed for the same reasons.

## III. Chief Norwood is not liable under the Eighth or Fourteenth Amendments for failing to have admittedly guilty Plaintiffs released from prison sooner.

### A. Plaintiffs fail to state a claim for bystander liability.

Plaintiffs do not dispute that their bystander liability claims under the Eighth or Fourteenth Amendments require *actual knowledge* that "a fellow officer is violating an individual's constitutional rights." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014); *see also* Opp. 25. This requires such "specific knowledge" that the bystander, "by

9

choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002). Thus, bystander liability might attach if one officer passively observes another beating an arrestee, *see, e.g.*, *Stevenson*, 743 F.3d at 419, or one officer is a passenger in a car with which the driver attempts to injure a citizen, *Yang v. Hardin*, 37 F.3d 282, 283 (7th Cir. 1994).

The facts alleged by Plaintiffs simply do not amount to such functional participation in another officer's unconstitutional act. *Randall*, 302 F.3d at 204. Unlike the defendants in those successful bystander liability cases, there is no allegation that Chief Norwood knew about the decision to seek the search warrants at issue, or to arrest these particular Plaintiffs, or to allow them to plead guilty. Plaintiffs rely on a series of innuendo and inference that does not even plausibly demonstrate deliberate indifference, *see supra* at 7-8, let alone the sort of "specific knowledge" necessary for liability as a bystander. Moreover, Plaintiffs do not dispute that at the time, their guilty pleas constituted "an admission of past conduct" that rebutted any inference that their imprisonment was unwarranted. MTD 11 (quoting *United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010)). Plaintiffs have no persuasive explanation for how Chief Norwood could have had actual knowledge that they should not be in jail when they publicly confessed to jailable offenses.

### B. Plaintiffs fail to state a claim for supervisory liability.

Chief Norwood is not liable as a supervisor under the Eight and Fourteenth Amendment claims for the same reasons that the other supervisory liability claims fail. Plaintiffs agree that the same *Shaw* standard of supervisory liability applies, and offer no reason why this last batch

of supervisory liability claims could survive when the others fail. These claims should be dismissed.³

## IV. Chief Norwood is entitled to qualified immunity.

### A. Qualified immunity bars the malicious prosecution claims.

Chief Norwood's brief explained that he is entitled to qualified immunity, which shields government officials from liability in a § 1983 suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). In particular, qualified immunity bars Plaintiffs' malicious prosecution claims, because the "facts would not have put a reasonable officer on notice of any defects in the warrants that produced uncontested proof of Plaintiffs' guilt." MTD 12; *see also Smith v. Munday*, 848 F.3d 248, 255-56 (4th Cir. 2017) ("[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner").

Plaintiffs still do not dispute that those warrants produced uncontested proof of guilt, and under the law in effect at the time, each Plaintiff's guilty plea was "an admission of past conduct" that "does not depend on the seized evidence." *United States v. Murphy*, 380 F. App'x

---

³ Plaintiffs assert that Counts VII and VIII address "non-supervisory" liability, and that Chief Norwood did not contest the allegations in those counts "in any way." Opp. 26 n.9. Yet his brief cited the allegations in those very counts and explained that such allegations create "no duty to intervene except where an officer would be liable as a bystander." MTD 10. Plaintiffs do not dispute that there is no duty to intervene except in those circumstances. In any event, for the reasons above, Plaintiffs' allegations are implausible and would not create liability under *any* theory.

344, 345 (4th Cir. 2010). Thus, a reasonable officer in Chief Norwood's position would see no need to seek Plaintiffs' release. The fact that the fruit of the poisonous tree doctrine (*see supra* at 3-5) does not apply here (and it is *certainly* not clearly established that it applies here) only confirms that Chief Norwood is entitled to qualified immunity.

Plaintiffs' response that Chief Norwood "ha[d] a duty to act" to achieve their release is a non sequitur. Opp. 28. Plaintiffs are not actually innocent, and do not allege that they are. Even if they were, the facts allegedly available to Chief Norwood do not show that he was aware that their incarceration was unlawful. In any event, Plaintiffs' best case for the supposed duty to act does not remotely suggest that officers have a duty to seek the release of prisoners before the end of their judicially determined sentence. *See Golson v. Dep't of Corrections*, 914 F.2d 1491 (4th Cir. 1990) (unpublished) ("Incarceration *beyond the termination of one's sentence* may state a claim under the due process clause and the eighth amendment."); *see infra* at 14-15.

### B. Qualified immunity bars the guilty-plea claims.

Chief Norwood is also immune from Plaintiffs' guilty-plea claims because it was not clearly established *at the time of their pleas* that undiscovered Fourth Amendment violations rendered a guilty plea invalid. *Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017). To the contrary, in 2010 the Fourth Circuit held that "even assuming arguendo a Fourth Amendment violation had occurred, this would not undermine [a criminal defendant's] guilty plea because a plea is an admission of past conduct and does not depend on the seized evidence." *Murphy*, 380 F. App'x at 345. It follows that a proposition *cannot* be clearly established when circuit precedent holds to the contrary.

Plaintiffs nevertheless rely (at 29) on *Brady v. United States*, 397 U.S. 742 (1970), for the proposition that misstatements in a search warrant application render a subsequent guilty plea involuntary. Opp. 19. But qualified immunity requires courts to "first identify the specific right

12

that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). *Brady* is far too vague to clearly establish that specific right that Plaintiffs invoke. *See Brady*, 397 U.S. at 757 ("More particularly, absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

Whatever *Brady* was subsequently construed to mean, it did not place Plaintiffs' proposition "beyond debate." *Brickey v. Hall*, 828 F.3d 298, 303 (4th Cir. 2016). Thus, reasonable officers (like reasonable Fourth Circuit judges) could certainly view the case as "strictly limited . . . only to false representations directly designed to induce a defendant to plead guilty." *United States v. Fisher*, 711 F.3d 460, 475 (4th Cir. 2013) (Agee, J., dissenting). In fact, the Supreme Court implicitly took that view of *Brady* in *Haring v. Prosise*, 462 U.S. 306, 321 (1983): "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." The Fourth Circuit did likewise in *Murphy*.

Plaintiffs also rely (at 29) on *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), in support of their guilty-plea claims. But *Fisher* cannot overcome qualified immunity because it was not decided until April 2013, *after* each Ensley, Andrews, Archer, and Humphries pleaded guilty and only shortly before Gilliam pleaded guilty. Am. Compl. ¶¶ 84, 96, 109, 119. A case decided after or only shortly before the alleged violation cannot clearly establish the law *at the*

13

*time of the violation.*[4]  *See Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) ("The qualified immunity inquiry depends on the official's perceptions *at the time of the incident in question*."); *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) ("*existing precedent* must have placed the statutory or constitutional question beyond debate") (emphases added).  Moreover, Judge Agee's dissent confirms that the right recognized in *Fisher* was not clearly established before *Fisher*. *See Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) ("Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, it . . . surely must be appropriate when reasonable jurists can do so.").[5]

### C. Qualified immunity bars the Eighth and Fourteenth Amendment claims.

Finally, Chief Norwood is entitled to qualified immunity on Plaintiffs' Eighth and Fourteenth Amendment claims.  Those claims allege that he failed to take action to secure their release from prison before the end of their term.  But Plaintiffs identify no clearly established

---

[4] Plaintiffs assert without citation that Chief Norwood might have lost qualified immunity *after Fisher* was decided in 2013.  Opp 29 n.11.  That assertion misunderstands the nature of qualified immunity, which attaches once and for all if the allegedly violated right was not clearly established "at the time of the violation."  *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017).  Plaintiffs actually concede that the time of the alleged violation of the guilty-plea right was "up to and including the guilty pleas."  Norton Opp. 12 ("The misconduct underlying Counts I and II occurred up to and including the guilty pleas; in contrast, the misconduct underlying Count III occurred *after* the Plaintiffs' guilty pleas.").  Because that alleged violation was complete when Plaintiffs pleaded guilty, Chief Norwood was protected by qualified immunity against the guilty-plea claims at all relevant times.

[5] Plaintiffs' opposition to Norton's motion (at 20) also ventures out to the First Circuit's decision in *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006).  *Ferrara* does not resuscitate their case against qualified immunity because courts determine "whether the right 'was clearly established at the time of the claimed violation' by looking at 'the decisions of the Supreme Court, [the Fourth Circuit] and the highest court of the state in which the case arose.'" *Trump Tight, LLC v. Bell*, 188 F. Supp. 3d 565, 570 (E.D. Va. 2016) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir. 2003)).

Eighth or Fourteenth Amendment right to be released from prison early—despite a guilty plea—due to alleged Fourth Amendment violations.

Plaintiffs' only hope that such a right is clearly established comes from *Golson*, 914 F.2d 1491 (4th Cir. 1990) (unpublished). *See, e.g.*, Opp. to Norton MTD 21. In Plaintiffs' view (at 28), "*Golson* stated as clearly as possible that, when a person has reason to believe that someone is in jail but ought not to be, that person has a duty to act." That is a serious overreading of *Golson*, which Plaintiffs tellingly fail to support with any language from that case. Rather, *Golson* was limited by its terms to "overdetention" situations where prisoners remain in prison after their judicially determined sentence expires: "Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment." *Id.* Thus *Golson* does not establish *any* right that Plaintiffs can invoke here, let alone a *clearly established* right. *See* Opp. to Norton MTD 14 (conceding that the Eight and Fourteenth Amendment claims "do not allege a classic overdetention case.").

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

| | |
|---|---|
| Dated: May 25, 2017 | Respectfully submitted, |
| | /s/ Brian D. Schmalzbach<br>Jonathan P. Harmon (VSB #39081)<br>Brian D. Schmalzbach (VSB #88544)<br>McGuireWoods LLP<br>Gateway Plaza<br>800 East Canal Street<br>Richmond, VA 23219<br>(T) (804) 775-1000<br>(F) (804) 698-2304<br>jharmon@mcguirewoods.com<br>bschmalzbach@mcguirewoods.com |

15

**CERTIFICATE OF SERVICE**

I certify that on May 25, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

/s/ Brian D. Schmalzbach
Brian D. Schmalzbach (VSB #88544)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
bschmalzbach@mcguirewoods.com