IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILBER ENSLEY, COVEY ANDREWS,
SHAMAR ARCHER, DEUNTE
HUMPHRIES AND JAMAR GILLIAM,

   Plaintiffs,

v.                                                            Case No. 3:17CV024

CITY OF RICHMOND, VIRGINIA, JASON
NORTON, BRYAN T. NORWOOD,
CHRISTOPHER GLEASON, CHARLES
SIPPLE, ROGER RUSSELL, MICHAEL
ALSTON, BRIAN CORRIGAN, MARTIN
HARRISON, AND WILLIAM
BLACKWELL,

   Defendants.

## DEFENDANT JASON NORTON'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

### I.    INTRODUCTION

Try as they might, Plaintiffs' inescapable reality is that their arrests were all supported by probable cause, and they are each guilty of the crimes to which they pleaded guilty. While there may have been inconsistencies with the resumes used for confidential informants in the search warrant applications submitted by Norton, the probable cause information in the search warrant affidavits was accurate, and the drugs and contraband found on each Plaintiff was precisely what was expected to be found. Plaintiffs do not, and cannot, dispute that.

On April 13, 2009, after being duly indicted by a grand jury on federal charges, Wilbur Ensley ("Ensley") pleaded guilty to possession of a firearm and possession of cocaine with the intent to distribute. (3:09-cr-00032-HEH-DJN, ECF Docs. 7, 14). In the criminal proceedings, even after he had moved to have his guilty plea vacated, Ensley did not contest that: (1) On

1

January 2009, a person secretly working for the Richmond Police Department saw approximately two kilograms of cocaine hydrochloride and two firearms in a residence in which he was staying; (2) Norton obtained a search warrant for the residence; and (3) as a result of a search pursuant to the warrant, 1444.3 grams of cocaine hydrochloride, 178.8 grams of cocaine base, narcotics packaging material, three digital scales, a firearm and ammunition, and $6,530 in U.S. Currency were found. (3:09-cr-00032-HEH-DJN, ECF Doc. 29 at p. 1). The contraband found was consistent with Norton's affidavit, which indicated that a confidential informant stated that there was more than half of a kilogram of cocaine, packaging materials, a digital scale, and handguns present on the premises. (3:09-cr-00032-HEH-DJN, ECF Doc. 20-3 at p. 9).

On December 22, 2009, after being indicted on federal charges, Covey Andrews ("Andrews") pleaded guilty to possession of heroin with the intent to distribute and possession of a firearm in furtherance of a drug crime. (3:09-cr-00368-HEH-DJN, ECF Doc. 13, p. 1). Andrews, after filing a motion to withdraw his guilty plea, still did not contest that Richmond Police Department officers executed a search warrant on September 11, 2009 and recovered 33.4 grams of heroin, a loaded .357 caliber Smith & Wesson pistol, a digital scale, a box of plastic sandwich baggies, and a bag of rubber bands from the Mercedes Benz he was then operating. (3:09-cr-00368-HEH-DJN, ECF Doc. 47 at p. 1). The contraband found was consistent with Norton's affidavit, which indicated that a confidential informant stated they observed a black male known to them as "BOO" place a large amount of heroin into a silver Mercedes Benz. (3:09-cr-00368-HEH-DJN, ECF Doc. 33-4 at p. 3).

Shamar Archer ("Archer"), like Ensley and Andrews before him, pleaded guilty to the federal crimes of possession of cocaine with intent to distribute and possession of ammunition by

a felon. (3:09-cr-00436-HEH-DJN, ECF Doc. 17 at p. 1). Archer waived indictment before pleading guilty. Id. The search warrant was executed on October 9, 2014, and eleven items were recovered from the residence, including a quantity of cocaine hydrochloride, a digital scale, narcotics packaging, and ammunition. (3:09-cr-00436-HEH-DJN, ECF Doc. 28 at p. 4). The contraband found was consistent with Norton's affidavit, which indicated that a confidential informant stated they had "been inside 723 Arnold Avenue within the past forty eight hours" and had observed "a black male known to them as Weasel [Mr. Archer] distribute a quantity of crack cocaine . . . to an unknown black male" and had also seen "a black handgun, that looked to be a 9MM, lying on the kitchen table." (3:09-cr-00436-HEH-DJN, ECF Doc. 28 at p. 4, ECF Doc. 28-1 at p. 3).

Deunte Humphries ("Humphries") and Jamar Gilliam ("Gilliam") both pleaded guilty to drug charges in the Circuit Court for the City of Richmond after being indicted. (See Exhibits 1 and 2).[1] Gilliam and Humphries were both present at the same residence. The search warrant affidavits completed by Norton indicated that a confidential informant stated that he had been inside the Gilliam and Humphries residence within the past 72 hours and observed one black male packaging heroin for street level distribution and another black male selling crack cocaine. (Exhibit 3). Humphries pleaded guilty to the cocaine possession. (Exhibit 4.) Gilliam made an Alford Plea to possession of cocaine and heroin. (Exhibit 5.)

---

[1] The Court may consider matters on the public record without converting the motion to one for summary judgment. Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995). ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion to dismiss the complaint . . . not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims."); see also Papasan v. Allain, 478 U.S. 265, 286 n.1. (1986). Norton does not intend to convert this motion to a motion for summary judgment.

There was clearly probable cause to arrest each of the Plaintiffs. They all pleaded guilty, and, importantly, they are all guilty. These are the facts of this case. As one court said under nearly identical circumstances: "[T]his is not a case of actual innocence or wrongful imprisonment." There is accordingly "no reason to compensate" Plaintiffs for the time they served after pleading guilty to offenses of which they were guilty. Williams v. City of Tulsa, 2016 WL 1572957, at *7 (N.D. Okla. Apr. 19, 2016).

Plaintiffs' claims stem from Norton employing "differing résumés . . . for the same informant and identical résumés . . . for purportedly different informants." See Amended Complaint (ECF Doc. 35, ¶ 69). This conduct allowed Plaintiffs to free themselves from jail; however, having already reaped the benefit of their freedom, they should not be permitted to recover money damages. The law does not permit such a result.

## II. LAW AND ARGUMENT

**A. Plaintiffs have failed to state a claim under Section 1983.**

### 1. Plaintiffs cannot sustain claims that their Fourth Amendment rights were violated by Norton.

Plaintiffs do not bring claims for false arrests or unlawful searches, because they know that those claims would be barred by the statute of limitations. (ECF Doc. 51 at pp. 22-26). Plaintiffs' claims are instead "based on wrongful prosecutions." (ECF Doc. 51 at p. 25). To that end, Plaintiffs' Fourth Amendment claims are premised on a malicious prosecution theory. (ECF Doc. 51 at pp. 2-8).

To state a Fourth Amendment violation under a malicious prosecution theory, Plaintiffs must allege that "[1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." Smith v. Munday, 848 F.3d 248, *2 (4th Cir. 2017). Plaintiffs do not argue that there

4

was no probable cause to arrest them. Nor could they, since they were each arrested after illegal contraband was discovered to be within their possession or control. Plaintiffs do not even dispute that the contraband was theirs. Instead, they pin their hopes on convincing this Court that that the fruit of the poisonous doctrine should apply to civil cases despite citing no authority for that proposition. Rather, the authority cited by all of the parties holds that the fruit of the poisonous tree doctrine does not apply to Section 1983 cases.

While the Fourth Circuit has not addressed this issue, the Eastern District of Virginia has held that the fruit of the poisonous tree doctrine does not apply to Section 1983 claims. See Ware v. James City County, Virginia, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (holding that the fruit of the poisonous tree doctrine does not apply in Section 1983 civil cases); see also Sommerville v. Dobson, No. 4:10CV67, 2011 WL 9160525, at *8 (E.D. Va. Mar. 8, 2011) (rejecting the argument that defendants were precluded from relying on probable cause evidence found during an unlawful search under the fruit of the poisonous tree doctrine in a Section 1983 claim); Guerrero v. Deane, 750 F. Supp. 2d 631, 652 (E.D. Va. 2010) (finding in a Section 1983 case that the lawfulness of an entry is a separate question from the lawfulness of a subsequent seizure).

Moreover, Courts of Appeals for the Second, Third, Fifth, Ninth, and Eleventh Circuits have also found that the doctrine does not apply to Section 1983 claims. Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) ("[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."); Hector v. Watt, 235 F.3d 154, 157 (3rd Cir. 2001) (declining to extend the exclusionary rule to civil cases) ; Wren v. Towe, 130 F.3d 1154 (5th Cir. 1997) (holding that

the exclusionary rule was not applicable in a truck owner's Section 1983 action against law enforcement officers who allegedly conducted an illegal search of truck); Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016) ("Nothing within the fruit-of-the-poisonous-tree doctrine suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search."); Black v. Wigington, 811 F.3d 1259, 1267-68 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers", finding that arrest warrants were plainly supported by probable cause listing the marijuana, drug paraphernalia, and clothing that the officers found in the Blacks' trailer).

Further, as the Second Circuit observed in Townes,

> The Supreme Court has refused . . . to extend the exclusionary rule to non-criminal contexts, including civil tax proceeding, see U.S. v. Calandra, 414 U.S. 338 at 454 & n. 28, 96 S.Ct. at 3032 & n. 28, habeas proceedings, see Stone v. Powell, 428 U.S. 465, 493, 96 S.Ct. 3037, 3051–52, 49 L.Ed.2d 1067 (1976), grand jury proceedings, see Calandra, 414 U.S. at 349–52, 94 S.Ct. at 620–22, INS deportation proceedings, see INS v. Lopez–Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984), and parole revocation proceedings, see Pennsylvania Bd. of Prob. & Parole v. Scott, 118 S.Ct. 2014, 2020 (1998).

Townes, 176 F.3d at 145–46 (2d Cir. 1999).

Not extending the exclusionary rule to civil claims makes sense when the genesis of the exclusionary rule is considered. "The exclusionary rule is [ ] a judicially created means of deterring illegal searches and seizures." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363 (1998). **The Supreme Court has "emphasized repeatedly that the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."** Id. at 362. **The rationale behind the exclusionary rule is "to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal**

6

**constitutional right of the party aggrieved," and "application of the rule has been restricted to those areas where its remedial objectives are thought to be most efficaciously served."** United States v. Janis, 428 U.S. 433, 446–447 (1976) (citing U.S. v. Calandra, 414 U.S. 338, 348, 94 S. Ct. 613, 620, 38 L.Ed.2d 561 (1974)).

Again, the Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363, 118 S. Ct. 2014, 2019, 141 L. Ed. 2d 344 (1998). That is because applying the exclusionary rule to civil claims under Section 1983 has minimal deterrence benefits, since the use of the exclusionary rule in criminal trials already deters illegal searches. See e.g., U.S. v. Janis, 428 U.S. 433, 448 (1976) (holding that the exclusionary rule did not bar the introduction of unconstitutionally obtained evidence in a civil tax proceeding because the costs of excluding relevant and reliable evidence would outweigh the marginal deterrence benefits, which, the Court noted, would be minimal because the use of the exclusionary rule in criminal trials already deterred illegal searches).

By arguing that the exclusionary rule should be extended to civil proceedings, Plaintiffs effectively acknowledge there was probable cause to arrest. Plaintiffs just do not believe that the evidence found during the searches should be considered in making a probable cause determination so that they can proceed on their malicious prosecution theory. While an illegal search may be actionable, a prosecution based on that search is not grounds for a malicious prosecution claim.

Williams v. City of Tulsa demonstrates this point. 2016 WL 1572957 (N.D. Okla. Apr. 19, 2016). There, an officer fabricated a confidential informant in an affidavit to obtain a search warrant. Id. at *2. Police then executed the search warrants, found drugs and a firearm, and later

arrested the plaintiff, who was convicted and sentenced to life imprisonment. Id. at *3. After serving six years in a maximum-security federal prison, the plaintiff was released around the time that officer was indicted for—and later convicted of—perjury. Id. at *4.

Relying on Black, Townes, and Wren, the court held that the fruit of the poisonous tree doctrine was inapplicable in the plaintiff's malicious prosecution case. Id. at *6-7. The court acknowledged that "a constitutional violation did occur" when the search warrant was executed. But "without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine . . . no further constitutional violation occurred." Id. at *7. The court concluded that "this is not a case of actual innocence or wrongful imprisonment," and accordingly found "no reason to compensate [the plaintiff] for the six years he served." Id.; see also Bradshaw v. Mazurski, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (refusing to apply the fruit of the poisonous tree doctrine where officers allegedly procured a search warrant using false testimony and then discovered contraband that led to the plaintiff's arrest and prosecution); Hopkins v. O'Brien, 2011 WL 4585233, at *5 (N.D. Ill. Sept. 30, 2011) (In Townes and Bradshaw, "an allegedly unlawful search disclosed evidence that supported the plaintiff's arrest; that evidence doomed the plaintiff's civil rights challenge to his arrest and prosecution, regardless of the circumstances in which it was uncovered."). Using illegally obtained evidence to prosecute does not itself violate the Constitution. Scott, 524 U.S. at 362. Thus, Plaintiffs' malicious prosecution claim must fail.

Plaintiffs have presented no compelling reason to extend the exclusionary rule to their Fourth Amendment claims in contravention of the great weight of the authority on this issue. Their argument that officers who "intentionally defraud" the legal system by obtaining "bogus warrants" are not sufficiently deterred by limiting application of the exclusionary rule to the criminal setting is without merit. Only three reasons come to mind for why an officer might

intentionally defraud the legal system: (1) the officer has a strong desire to bring justice to criminals regardless of the means; (2) the officer is motivated by self-interest in wanting to be perceived as a high performer worthy of recognition within his department; and (3) to make money. Engaging in fraudulent behavior to fulfill those motivations would be undermined if the criminal is let go once the fraudulent acts of the officer were discovered. That is, the prospect that criminal cases will be thrown out or convictions overturned already deters such conduct. Additionally, the discovery of truly fraudulent behavior could place the officer at risk of losing his job or facing criminal prosecution, both of which are also sufficient deterrents. Applying the exclusionary rule to the civil setting would, therefore, provide only marginal deterrent benefits since the use of the exclusionary rule in criminal trials already deters illegal searches.

Further, the costs of excluding evidence of the possession of drugs and contraband in a Section 1983 malicious prosecution claim is far outweighed by the minimal benefits of applying the rule. That is to say, allowing those who are in fact guilty (or at least possessed contraband sufficient to support a probable cause finding that a crime had been committed) "to proceed solely on a fruit of the poisonous tree theory of damages would vastly overdeter state actors." Townes, 176 F.3d at 146. "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." Id. at 148 (2d Cir. 1999).

Indeed, no Fourth Amendment value would be served if Plaintiffs, who illegally possessed narcotics, are permitted to reap the financial benefits they seek since they have already "reaped an enormous benefit" of their freedom. See id. at 148. As the Second Circuit observed, "that remedy would vastly overdeter police officers and would result in a wealth transfer that 'is peculiar, if not perverse.'" Id. (internal citations omitted).

Probable cause unquestionably existed to arrest each of the Plaintiffs at the moments the illegal drugs and contraband were found. Because there was probable cause to arrest, there can be no malicious prosecution claim.[2] As a result, Plaintiffs cannot sustain their claims.

## 2. **Plaintiffs do not have a claim that their Fourteenth Amendment right to make a voluntary and intelligent plea was violated.**

Plaintiffs do not dispute that there is no direct authority in this Circuit to support their theory that Section 1983 can be used as a vehicle to rectify an involuntary or unintelligent guilty plea. Plaintiffs instead rely on the general notion that Section 1983, by its terms, permits individuals to seek damages from any person who causes a deprivation of a right secured by the Constitution. Plaintiffs also analogize their cases to claims under Brady v. Maryland, 373 U.S. 83 (1963), arguing that it would be anomalous for courts to permit Section 1983 claims based on a failure to disclose exculpatory evidence and not permit Section 1983 claims based on a failure to inform Plaintiffs of discrepancies in the search warrants.

Plaintiffs rely on the Fourth Circuit's decision in United States v. Fisher, 711 F.3d 460 (4th Cir. 2013) to support their theory. Fisher, unlike the case at bar, was a criminal case. In Fisher, the defendant was charged with drug trafficking and a firearm crime solely based on evidence seized from his residence during the execution of a search warrant. Id. at 463.

---

[2] Plaintiffs do not directly address Norton's argument that their indictment and/or waiver of indictments are intervening and superseding causes that insulate Norton from liability. Plaintiffs instead characterizes this argument as a variation of the fruit of the poisonous tree argument. It is not. Norton stands on the arguments presented in his Brief in Support of the Motion to Dismiss as it relates to intervening and superseding causes. "It has long since been settled by the Supreme Court that 'an indictment "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the existence of probable cause.'" Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (citation omitted). Although "'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision,'" (id., internal citation omitted), there is no allegation here that Norton testified before any of the grand juries. But see Rehberg v. Paulk, 566 U.S. 356 (2012) (police officer entitled to absolute immunity for grand jury testimony).

Subsequently, the defendant pleaded guilty to the firearm charge and was sentenced to 10 years in prison. Id. Over a year later, Officer Lunsford, who swore out the affidavit that supported the search warrant, pleaded guilty to a variety of fraud and theft offenses related to his duties as a DEA taskforce officer. Id. As a part of the officer's plea, the officer admitted to falsely identifying a confidential informant on an affidavit supporting a wiretap application, an affidavit supporting a criminal complaint, and numerous investigation reports. Id. Specifically with regard to Fisher's case, the officer admitted that the confidential informant he identified in the search warrant affidavit "had no connection to the case" and that another individual was "the real informant[.]" Id. The officer also admitted to receiving monetary kickbacks by splitting reward money with the confidential informants he falsely attributed information to. Id.

Fisher filed a motion to vacate his guilty plea based on this new information which the district court denied. Subsequently, the Federal Public Defender's Office filed a Section 2255 motion on Fisher's behalf, asking the court to vacate the judgment. Id. The district court denied that motion as well. The Fourth Circuit reversed, holding that the officer's false statement in the search warrant affidavit amounted to impermissible government conduct and that the defendant's plea was induced by that misconduct. Id. at 462, 467-68.

In so holding, the Fourth Circuit stated:

> Given the totality of the circumstances of this case - a law enforcement officer intentionally lying in an affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found - Defendant's plea was involuntary and violated his due process rights. Under these egregious circumstances, Defendant was "deceived into making the plea, and the deception prevents his act from being a true act of volition." Lassiter v. Turner, 423 F.2d 897, 900 (4th Cir. 1970).

Id. at 469.

In the case at bar, unlike in Fisher, Norton did not commit a crime, and there is no allegation that Norton personally profited in any of these cases like the officer in Fisher had done. Here, Plaintiffs were found to be in possession of nearly everything that Norton's search warrant affidavits identified. As the United States government observed, the probable cause information in the affidavits concerning Ensley, Archer, and Shamar was accurate and was provided by a reliable informant. The same is true of the probable cause information in the affidavits concerning Humphries and Gilliam. Thus, there can be no civil claim based on Fisher. See e.g., United States v. Doyle, 650 F.3d 460, 468 (4th Cir. 2011) ("[F]alse information will only void a warrant if the information was necessary to the finding of probable cause.")[3]

### 3. Plaintiffs have not stated a claim for deprivation of liberty under the Eighth and/or Fourteenth Amendments.

Plaintiffs argue that their claims are akin to deprivation of liberty claims asserted by prisoners who have been detained past when their sentences have terminated. So-called "overdetention" cases arise when a jailer fails to timely release a prisoner. See e.g., Golson v. Department of Corrections, 814 F.2d 1491 (4th Cir. 1990) (ECF Doc. 51 at p. 13, fn. 10). Plaintiffs have not identified a single case in which a deprivation of liberty claim was asserted against an officer who was merely involved in pre-indictment activities. Plaintiffs acknowledge that they "do not allege a classic overdetention case." (ECF Doc. 51). They instead attempt to

---

[3] Contrary to Plaintiff's assertion, Norton has not argued that Judge Hudson failed to obey the Constitution in this case. Longstanding precedent indicates that guilty pleas cannot be accepted by a criminal court without an affirmative showing that the plea was intelligent and voluntary. See Boykin v. Alabama, 395 U.S. 238, 242 (1969). In that regard, the Supreme Court has advised that a trial court should satisfy itself, through an on-the-record examination of the criminal defendant, that the criminal defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and, the permissible range of sentences. Id. at 244, n. 7. See also Fed. R. Crim. P. 11(b) (setting forth requirements for a court to accept a guilty plea). The judges in Plaintiffs' criminal cases satisfied their obligations.

conjure a new claim out of thin air in an effort to mitigate against their failure to state a fourth amendment claim against Norton. This Court should deny this effort.

There is no disputing that the Eighth Amendment does not attach "until after conviction and sentence." Ingraham v. Wright, 430 U.S. 651, 664 (1977); Graham v. Connor, 490 U.S. 386, 393 n.6 (1989). All of the conduct attributed to Norton occurred before Plaintiffs were convicted. As a result, Norton's alleged conduct is not governed by the Eighth Amendment. See Shanklin v. Seals, No. CIV.A 3:07CV319, 2010 WL 1225741, at *8 (E.D. Va. Mar. 26, 2010) ("The conduct of which Shanklin complains clearly occurred prior to any conviction, as his Complaint is devoted to a discussion of Defendants' actions during an investigation. Therefore the Eighth Amendment prohibition against cruel and unusual punishment does not apply.").

Plaintiffs are wrong to rely on Golson, because what the Fourth Circuit actually held does not support their strained reading of the case. Golson was a *pro se* plaintiff who filed a Section 1983 lawsuit against the Department of Corrections and various corrections officials alleging that he was not given the proper credit for previous time spent in jail, and was therefore incarcerated for a longer period of time than he should have been. While the Court recognized Golson's claim, it was hardly a novel development, because the Eighth Amendment claim in that case was brought against those who managed and maintained the jail – those who were directly responsible for the conditions and manner in which Golson was confined. See, e.g., Wells v. Artrip, No. 1:16CV00041, 2017 WL 1788385, at *1 (W.D. Va. May 3, 2017); Owens v. Butler, 2016 U.S. Dist. LEXIS 15673, *13 (W.D. N.C. February 9, 2016) ("Specifically, [the Plaintiff] must establish that a *jail official* knew of and disregarded a serious risk that he was being improperly detained." (Emphasis added)); Cheatham v. Johnson, 2010 U.S. Dist. LEXIS 14346, *13-15 (E.D. Va. February 18, 2010) (also rejecting due process claim). The common thread is

13

that these types of claims are brought against those responsible for holding the individual – for the conditions or manner of confinement – not those responsible for providing the legal basis for the incarceration.

Likewise, Plaintiffs do not have a substantive due process claim for deprivation of liberty under the Fourteenth Amendment. In Brooks v. City of Winston-Salem, 85 F.3d 178, 184 (4th Cir. 1996), the Fourth Circuit rejected a deprivation of liberty claim under Section 1983 and held that "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." Plaintiffs discount Brooks on the grounds that it only addresses rights that may be invoked before trial, but Plaintiffs again fail to consider that the only conduct at issue here is what Norton may or may not have done before Plaintiffs' indictments. Because Plaintiffs' substantive due process claim is predicated on damages resulting from an allegedly unconstitutional search, that claim must be grounded in the Fourth Amendment. See e.g. Albright v. Oliver, 510 U.S. 266, 274 (1994) (holding that if a right to be free from prosecution absent probable cause exists, it must instead be grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures.)

There is simply no justification – either in fact or law – for permitting Plaintiffs to proceed against Norton on a substantive due process claim. Plaintiffs' claims are merely an attempt to assert a false arrest claim against Norton and/or to repackage their efforts to pursue a malicious prosecution theory.

### 4. Norton is entitled to qualified immunity.

Norton is entitled to qualified immunity, because he did not violate a clearly established constitutional right. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that **every**

"reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis added).  The Court "[does] not require a case directly on point, but **existing precedent must have placed the statutory or constitutional question beyond debate**." Ashcroft, 563 U.S. at 741 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)) (emphasis added).

With respect to the Section 1983 malicious prosecution claim, there indisputably was sufficient evidence to arrest and prosecute in light of the drugs and contraband found within the possession and control of each Plaintiff. There is no clearly established constitutional right to avoid arrest and prosecution when police officers discover illegal drugs and other contraband during a search. That is true even if the evidence was seized pursuant to an unlawful search. Indeed, the Supreme Court has made clear that, **"[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.'"** United States v. Leon, 468 U.S. 897, 906 (1984) (internal citations omitted) (emphasis added).

Plaintiffs must recognize this since they argue that "qualified immunity does not protect Norton from sub-constitutional rules of procedure or evidence." There is no basis for that argument, since Section 1983 only creates a civil remedy for a violation of rights, privileges, and immunities secured by the Constitution and laws. Permitting Plaintiffs to proceed on their malicious prosecution theory by following their tortured argument to extend the exclusionary rule to civil proceedings is not permitted by Section 1983, because the exclusionary rule is merely a judicially created rule and not a constitutional right.

There also was no clearly established constitutional right to have an officer who was only involved before Plaintiffs' conviction ensure that Plaintiffs' guilty pleas were voluntary and intelligent. The law is clear that the right at issue must have been "**clearly established at the time of defendant's alleged misconduct.**" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (emphasis added). The Fisher case, relied on by Plaintiffs to establish their claim, was not decided until April 2, 2013. All of the alleged conduct of Norton took place well before then. The searches of Ensley, Andrews, and Archer all occurred in 2009. The searches of Humphries and Gilliam took place in 2012.

Plaintiffs' argument that the result in Fisher was dictated by precedent is unavailing. **The law in the Fourth Circuit at the time of Norton's alleged conduct was that Fourth Amendment violations did not undermine guilty pleas**. See United States v. Murphy, 380 F. App'x 344, 345 (4th Cir. 2010) (Guilty plea entered by defendant on drug and firearms charges was voluntarily and intelligently made, since defendant had adequate ability to consult with her attorney and understood proceedings against her, and plea constituted admission of past conduct irrespective of admissibility of seized evidence) (citing United States v. Broce, 488 U.S. 563, 573 (1989) (valid guilty plea does not require conscious waiver of potential defenses); Haring v. Prosise, 462 U.S. 306, 321, (1983) (explaining that guilty plea amounts to admission of past conduct and is not undermined by validity of Fourth Amendment violation because plea does not rest on seized evidence)). Thus, any rights announced in Fisher were not recognized at the times relevant to the conduct of Norton. Accordingly, Plaintiffs did not have a clearly established right that was violated.

Finally, it also was not clearly established that the alleged actions of Norton constituted a deprivation of liberty under either the Eighth or Fourteenth Amendments. Plaintiffs have

16

identified no case law to support their claims. Accordingly, Plaintiffs' Section 1983 claims should be dismissed on this basis as well.

B. **Plaintiffs cannot overcome the statute of limitations bar to their Section 1983 claims.**

The statute of limitations analysis is simple. Plaintiffs' assert that their claims are not based on unreasonable searches. That is their hope, but it is not reality. Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. Miller v. Prince George's County, MD, 475 F.3d 621 (4th Cir. 2007). Such claims "do not necessarily imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994). Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015). Plaintiffs' claims here are predicated solely on the use of evidence that was allegedly obtained illegally through the execution of invalid search warrants. Because their claims are in reality claims for illegal search and seizure, Plaintiffs' claims are time-barred.

C. **Plaintiffs have also failed to state a malicious prosecution claim under Virginia law.**

Like Plaintiffs' malicious prosecution claims under federal law, the presence of probable cause is fatal to Plaintiffs' state law malicious prosecution claims. See O'Connor v. Tice, 281 Va. 1, 7, 704 S.E.2d 572, 575 (2011). Plaintiffs do not dispute that their arrests were supported by probable cause. They instead argue that "[w]here probable cause in [sic] generated [through intentional and unlawful behavior], there is good reason to hold the unlawful conduct tainted the existence of probable cause." (ECF Doc. 51 at 28). Plaintiffs concede that there does not appear to be any Virginia law that supports their proposition, and there is no reason to believe that a Virginia court would follow their logic. Indeed, the Supreme Court of Virginia has repeatedly held that malicious prosecution actions "are not favored in Virginia" and "the requirements for maintaining such an action are more stringent than other tort cases." Reilly v. Shepherd, 273 Va.

17

728, 733, 643 S.E.2d 216, 218 (2007); Pallas v. Zaharopoulos, 219 Va. 751, 250 S.E.2d 356 (1979).

Here, Norton's allegedly intentional and unlawful conduct speaks to the issue of malice; it does not speak to the existence of probable cause for Plaintiffs' arrests. Because probable cause existed in each of Plaintiffs' cases, they cannot pursue a malicious prosecution claim under Virginia law.

### III. CONCLUSION

WHEREFORE, Defendant Jason Norton, by counsel, respectfully requests that this Court enter an Order granting his Motion to Dismiss and dismissing the Amended Complaint against him in its entirety and with prejudice.

**JASON NORTON**

By Counsel

/s/
David P. Corrigan
VSB No. 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB No. 78485
Attorneys for Defendant Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 25th day of May, 2017, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a Notice of Electronic Filing to all counsel of record.

/s/
David P. Corrigan
VSB No. 26341
Attorney for Defendant Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 – Phone
804-747-6085 – Fax
dcorrigan@hccw.com