**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **WILBUR ENSLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-cv-00024-MHL** |
| | ) | |
| **CITY OF RICHMOND, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS ALSTON, CORRIGAN, HARRISON AND BLACKWELL**

Defendants Lieutenant Michael Alston ("Lt. Alston"), Lieutenant Brian Corrigan ("Lt. Corrigan"), Captain Martin Harrison ("Cpt. Harrison"), and Captain William Blackwell ("Cpt. Blackwell") (collectively, the "Officers"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit this Reply Memorandum in support of their Motion to Dismiss the Amended Complaint of Plaintiffs Wilbur Ensley ("Ensley"), Covey Andrews ("Andrews"), Shamar Archer ("Archer"), Deunte Humphries ("Humphries"), and Jamar Gilliam ("Gilliam) (collectively, "Plaintiffs").

### INTRODUCTION

This case is not about innocent individuals seeking their liberty or restoring compensation for time spent behind bars. Instead, this case is about individuals who acknowledged their guilt, yet already achieved a remedy for alleged Constitutional violations – either by gaining their freedom or vacatur of their convictions – but now seek a windfall in the millions of dollars.

Plaintiffs' lengthy and convoluted Response features numerous procedural and legal flaws.

First, Plaintiffs expend so much effort regurgitating the facts that they fail to address key arguments within the page limits required under Local Rule 7(F)(3). As a result, Plaintiffs attempt to incorporate by reference seventeen pages from their briefs in response to the Motions to Dismiss filed by Co-Defendant Norton, thereby effectively creating a forty-seven page response to which the Officers must reply within the page limits imposed by this Court. This improper and unfair procedure is the subject of a separate Motion to Strike.[1]

Second, Plaintiffs do not allege that any Officer took part in any Plaintiffs' search warrant, arrest, guilty plea, conviction, or incarceration. Yet the Amended Complaint purports to state a claim for malicious prosecution against the Officers who knew nothing of Plaintiffs or their criminal proceedings. And the scant pages that Plaintiffs actually commit to argument are largely unsupported by any case law, relevant or otherwise. The few cases Plaintiffs do cite reject the very positions they urge the Court to adopt. For example, Plaintiffs ask the Court to ignore years of well-settled precedent in the Fourth Circuit and other jurisdictions holding that the fruit of the poisonous tree doctrine does not apply to Section 1983 cases and create a special exception allowing them to pursue claims against the Officers. Such an exception would require the Court to overlook Plaintiffs' underlying guilt in order to impose millions of dollars of liability on the Officers, who had no involvement in Plaintiffs' arrests, convictions or incarcerations.

Third, Plaintiffs have not alleged the requisite knowledge to impose liability upon the Officers. The Amended Complaint offers no evidence that any of the Officers knew – actually

---

[1] Plaintiffs' utter failure in their opposition brief to respond to arguments made by the Officers, opting instead to incorporate by reference large swathes of a brief filed in opposition to another defendant is distinguished from simply referring to an argument in another party's brief (something defendants have done appropriately). Plaintiffs' improper approach highlights the weakness in their substantive arguments.

or constructively – that any of the Plaintiffs were arrested or incarcerated, a deficiency fatal to any claims for supervisory or individual liability. Lacking facts to support liability, Plaintiffs create a "likely knew" standard for imposing liability out of whole cloth. *See* Pls.' Resp. Br. (ECF No. 55) at 13. Plaintiffs argue that because there were rumors that Defendant Jason Norton ("Norton") conducted sloppy police work, the Officers "likely knew" Norton was falsifying search warrant paperwork, and thus the Officers should be liable. Putting aside the leaps of logic required to reach this conclusion, "likely knew" is not the legal standard for any claim Plaintiffs could bring against the Officers.

Fourth, the same deficiency that led Plaintiffs to urge the adoption of a "likely knew" standard unknown to the law is fatal to their argument in opposition to qualified immunity. Plaintiffs ask the Court to assume that the Officers had knowledge of Plaintiffs' incarcerations. But, again, this essential allegation is found nowhere in Plaintiffs' Amended Complaint.

Finally, Plaintiffs fail to come to grips with the Officers' statute of limitations argument and do not explain why their claims are not time-barred. For these reasons and those stated in the Officers' Memorandum in Support of their Motion to Dismiss, the Court should dismiss Plaintiffs' Amended Complaint.

**FACTUAL BACKGROUND**

Plaintiffs spill a great deal of ink in their Response reiterating the facts from their Amended Complaint in an equally convoluted and disjointed manner. To bring order to the confusion created by this approach, the Officers provide the following concise summary of the facts in the Amended Complaint:[2]

---

[2] *See also* Def.'s Mem. in Support of Mot. to Dismiss (ECF No. 39) at 7-8.

In 2009, Capt. Blackwell was in charge of the Richmond Police Department ("RPD") confidential informant program. (Am. Compl. ¶ 22.)

On January 20, 2009, Ensley was arrested. (*Id*. at ¶ 82.) On September 11, 2009, Andrews was arrested. (*Id*. at ¶ 96.) In October 2009, Archer was arrested. (*Id*. at ¶ 108.)

In or around 2011 through March 2013, Cpt. Harrison served as head of the RPD's special investigations division. (*Id*. at ¶ 21.)

On March 25, 2011, RPD reprimanded Co-Defendant Norton, for seizing contraband without making an arrest and for his work with confidential informants. (*Id*. at ¶¶ 35, 37, 133-35.)

Cpt. Blackwell left the confidential informant program by the end of 2011. (*Id*. at ¶ 22.)

On February 23, 2012, Humphries and Gilliam were arrested. (*Id*. at ¶ 118.)

In or around June 2012, Lt. Alston replaced Co-Defendant Christopher Gleason ("Gleason") as Norton's "Direct Supervisor." (*Id*. at ¶¶ 16, 19.)

In August 2012, Lt. Corrigan became head of RPD's confidential informant program and becomes Norton's "Intermediate Supervisor." (*Id*. at ¶¶ 20, 144.)

On September 19, 2014, Ensley filed a petition for habeas corpus.[3] *See United States v. Ensley*, Case No. 3:09-32-HEH-DJN-1 ECF No. 20.

On August 12, 2014, Andrews filed his habeas petition with this Court. (*Id*. at ¶¶ 97-98.) The Court granted these petitions in April 2015. (*Id*. at ¶¶ 87-8, 97-8.)

Archer filed a petition to void his conviction on September 18, 2014. (*Id*. at ¶ 110.)

---

[3] This Court is permitted to consider facts subject to judicial notice without converting a motion to dismiss into one for summary judgment. *Zak v. Chelsea Therapeutics Int'l, ltd*, 780 F.3d 597, 607 (4th Cir. 2015). Here, the Court may take judicial notice of information found in its own records. *See Magiafico v. Blumenthal*, 471 F.3d 391, 397 (2d Cir. 2006) (finding the district court could rely on docket sheet of a prior action involving plaintiff in dismissing a § 1983 claim under Rule 12(b)(6)).

On July 1, 2015, state prosecutors petitioned to have Gilliam's conviction vacated, which the court granted.  (*Id.* at ¶ 114-17, 120.)

Lastly, state prosecutors petitioned for Humphries' conviction to be vacated on July 6, 2015; the petition was granted.  (*Id.* at ¶¶ 110-11.)

ARGUMENT

I. **Plaintiffs Cannot State A Claim for Malicious Prosecution Against the Officers Because Their Pleading Fails to Assert Three of the Four Elements of the Cause of Action.**

Plaintiffs have clarified the allegations in the Amended Complaint in their Response, alleging that they seek to bring claims against the Officers for malicious prosecution.[4]  However, Plaintiffs' Amended Complaint fails to plead facts supporting a malicious prosecution claim against the Officers because probable cause existed at each stage following Plaintiffs' searches. In addition, Plaintiffs do not offer any facts indicating that the Officers had any personal involvement whatsoever in their arrests, detentions, convictions, or incarcerations.  Plaintiffs also fail to plead that any Officer acted with malice.  As a result, Plaintiffs' purported malicious prosecution count fails to state a claim.

---

[4]    Plaintiffs' claims have been a moving target since the outset of this litigation.  Their Amended Complaint describes Counts I-III as violations of the Fourth Amendment, Fourteenth Amendment, and Fourteenth Amendment and/or Eighth Amendment, respectively.  (Am. Compl. at ¶¶ 150, 154, 159.)  Plaintiffs attempt to attach supervisory liability for these violations onto the Officers in Counts IV and V and allege personal liability upon the Officers in Counts VII and VIII.  (*Id.* at ¶¶ 165-72, 178-89.)  Counts VII and VIII are predicated on the same logic of Count III:  but for Norton's falsified arrest warrants, the Plaintiffs would not have been incarcerated and suffered damages – and the Officers allegedly had actual or constructive knowledge of the supposed falsifications.  None of these Counts state a malicious prosecution claim.  Instead, all of the Counts are based upon the allegedly unreasonable search and seizures committed by Norton.  Plaintiffs' Response marks the first time that they have actually delineated their claims. Their failure to describe the Counts alleged in clear and precise terms, in and of itself, indicates that Plaintiffs' Amended Complaint falls far short of the *Twombly* and *Iqbal* pleading standards.

5

The elements of a common law claim for malicious prosecution are: "(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (internal citations omitted).[5] Malicious prosecution is not an independent cause of action under Section 1983; however, courts typically interpret a "malicious prosecution" claim brought under federal law as "simply a claim founded on a *Fourth Amendment* seizure that incorporates elements of the analogous common law tort . . . specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* at 262 (emphasis in original). Plaintiffs' Amended Complaint fails to offer any support for the first, third, or fourth element of a "malicious prosecution" claim against the Officers.[6]

The first element of a malicious prosecution claim requires the initiation or maintenance of a proceeding against the plaintiff *by the defendant*. *See Lambert*, 223 F.3d at 260 (emphasis added). As the Amended Complaint makes clear, however, none of the Officers himself initiated or maintained a proceeding against any Plaintiff. The Amended Complaint does not allege that any of the Officers were involved in or even knew about the search warrants at issue. It does not allege that any of the Officers participated in the arrests of Plaintiffs or were somehow involved

---

[5]     It is unclear whether the Fourth Circuit recognizes malicious prosecution as a distinct claim under Section 1983. *See Davis v. Beck,* Civil Action No. 3:09cv557, 2010 U.S. Dist. LEXIS 42030, at *37-38 (E.D. Va. Apr. 29, 2010) ("The Fourth Circuit acknowledges that it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution.") (quoting *Snider v. Lee*, 584 F.3d 193, 199 (4th Cir. 2009)) (internal quotation marks omitted); *see also Albright v. Oliver*, 510 U.S. 266, 279-80 n.5 (1994) (Ginsburg, J., concurring) ("Albright's reliance on a 'malicious prosecution' theory, rather than a Fourth Amendment theory, is anomalous.").

[6]     To the extent the Plaintiffs argue that they incorporate a malicious prosecution claim against the Officers in a supervisory role, this argument fails also. (*See* Sections II, III, and IV, *infra*.)

in their prosecutions. Indeed, it is devoid of any allegation directly connecting any Plaintiff to any Officer. The absence of any such allegation demonstrates conclusively that Plaintiffs have not satisfied the first element of a malicious prosecution claim.

The U.S. District Court for the Western District of Virginia recently considered a similar set of allegations in *Krumtum v. Crawford*, No. 1:16CV00007, 2016 U.S. Dist. LEXIS 112936, (W.D. Va. Aug. 24, 2016). In that case, the plaintiff sought to include a police chief in a federal "malicious prosecution" claim against an officer under his supervision (among other individuals). Apart from his supervisory status, there were "no specific facts . . . alleged that would connect [the chief] to the alleged misconduct." The court held that although "the plaintiff's Complaint repeatedly makes allegations against the defendants as a whole[,] these general allegations against the entire group of defendants are not enough to save the plaintiff's Complaint as it relates to [the chief] or any other defendant who is not *specifically identified as having engaged in some tortious conduct*." *Id.* at *9 (emphasis added). Accordingly, the court granted the chief's Rule 12(b)(6) motion. *Id.*[7] The same analysis applies here where the Amended Complaint is devoid of any allegations specifically identifying any tortious conduct by the Officers against any of the Plaintiffs. Just as in *Krumtum*, the malicious prosecution claim against the Officers should be dismissed.

The deficiencies in Plaintiffs' claim do not end there. Probable cause supported the criminal proceedings against each Plaintiff. "[S]ubsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful

---

[7]     The court also found that the plaintiff had not satisfied the elements necessary to establish supervisory liability. *Id.* The same holds true in this case with respect to the Officers. *See* Sect. III, *infra*.

seizure." *Bryant v. Carico*, 616 F. App'x 84, 85 (4th Cir. 2015) (quoting *Evans v. Chalmers,* 703 F.3d 636, 647 (4th Cir. 2012)). Each Plaintiff was arrested after he was found by police in possession of contraband. (Am. Compl. ¶¶ 82, 96, 108, 118.) Criminal charges were instituted against each Plaintiff, either by indictment or waiver of indictment. (Am. Compl. ¶¶ 83, 96, 109, 119.) Each Plaintiff pled guilty. (Am. Compl. ¶¶ 84, 96, 109, 119.) As discussed in Section II(A), *infra*, the fruit of the poisonous tree doctrine applies only in the context of criminal proceedings, not civil proceedings. While the initial search and seizure of each Plaintiff may not have been supported by probable cause, each *subsequent* event in his criminal proceeding was supported by probable cause. As a result, Plaintiffs cannot state a claim against any of the Officers for malicious prosecution. *See, e.g.*, *Williams v. City of Tulsa*, Case No. 11-CV-469-TCK-FHM, 2016 U.S. Dist. LEXIS 52066 (N.D. Okla. Apr. 19, 2016) (discussed in Section II.A *infra*).

Finally, Plaintiffs' Amended Complaint does not plead facts sufficient to demonstrate malice. Malice is "any *controlling* motive other than a good faith desire to further the ends of justice, enforce disobedience to the criminal laws, suppress any crime, or see that the guilty are punished." *Safar v. Tingle*, 178 F. Supp. 3d 338, 346 (E.D. Va. 2016) (internal citations and quotation marks omitted) (emphasis in original). While malice may be inferred from an absence of probable cause, "malice must still exist in fact and be proven like any other fact." *Caldwell v. Green*, 451 F. Supp. 2d 811, 818 (W.D. Va. 2006) (internal citations omitted). And where a plaintiff fails to demonstrate an absence of probable cause as a matter of law, "it cannot be used to infer malice." *Id.* at 819.

In this case, Plaintiffs' Amended Complaint does not include any indication that the Officers acted with any controlling motive that would indicate malice. In fact, Plaintiffs'

Amended Complaint barely mentions the Officers, let alone provides facts indicating anything about their mental states or motives. It does not even provide an indication that any of the Officers knew that the Plaintiffs had been arrested, indicted, convicted, or incarcerated, as discussed in Section III, *infra*. And, as demonstrated above, Plaintiffs' criminal proceedings were supported by probable cause, so the Court cannot infer malice. Plaintiffs' failure to plead any facts supporting this essential element of their purported cause of action requires dismissal of their claim.

## II. Plaintiffs' Arguments for Supervisory Liability Against the Officers Would Require the Court to Ignore Long-Standing Fourth Circuit Precedent in Order to Rule in Plaintiffs' Favor.

Plaintiffs' attempts to state a claim for supervisory liability with regard to Fourth Amendment violations fail for a number of reasons. First, their underlying guilt preempts any Section 1983 liability because the fruit of the poisonous tree doctrine does not apply to save their claims. Second, Plaintiffs' claims are barred by the applicable statute of limitations, a reality that Plaintiffs fail to address in their Response to the Officers' Motion to Dismiss.

### A. The Fruit of the Poisonous Tree Doctrine Does Not Apply.

As Plaintiffs' claims against the Officers are actually claims for damages arising from improper searches and seizures, the Court must determine whether any intervening actions break the causal link between any alleged inaction by the Officers and any constitutional injury suffered by the Plaintiffs. In the present case, Plaintiffs admit numerous intervening causes, including their arrests (Am. Compl. ¶¶ 82, 96, 108, 119), their criminal charges (*Id.* at ¶¶ 83, 96, 109, 119) and, most importantly, their guilty pleas (*Id.* at ¶¶ 84, 96, 109, 119).

In their response to Norton's Motion to Dismiss, Plaintiffs urge this Court to take on the role of judicial activism.[8]  As noted by each of the Defendants in their Motions to Dismiss, precedent in this district and many others is clear.  The fruit of the poisonous tree doctrine does not apply in the context of Section 1983 cases.  *See Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (quoting *Townes v. City of new York*, 176 F.3d 138, 148-49 (2d Cir. 1999)).

Plaintiffs' case hinges on shielding the Court's eyes from their acknowledged guilt in order to preserve a causal connection between any alleged inaction by any of the Defendants and their alleged injury.  The fruit of the poisonous tree doctrine is the only way that Plaintiffs' blindfold can be applied.  Unfortunately for Plaintiffs, this doctrine does not and was never intended to apply in the civil context.  *See Ware*, 652 F. Supp. 2d at 705 (finding the fruit of the poisonous tree is unavailable to § 1983 plaintiffs).  The doctrine exists solely to prevent "dubious shortcuts" by officers attempting to obtain evidence for a criminal conviction.  *Nix v. Williams*, 467 U.S. 431 (1984).  Thus, it operates as a deterrent against improper criminal investigations, not as an aid to civil litigants.

Each Plaintiff's acknowledgment of his own guilt is a fact that Plaintiffs cannot avoid and it prevents them from maintaining a Section 1983 suit against the Officers.  By pleading guilty, each Plaintiff removed any causal link between any alleged inaction by the Officers and any alleged constitutional injury.  The Officers, who had no personal involvement in Plaintiffs' arrests, cannot be held directly liable for failing to prevent guilty men from going to prison or for

---

[8]     As noted in the Officers' Motion to Strike, any argument made by Plaintiffs in their Response to another Defendant's Motion to Dismiss, but not made by Plaintiffs in their Response to the Officers' Motion to Dismiss, is not properly before the Court.  This argument is made without waiving the Officers' Motion to Strike, to the extent the Court considers Plaintiffs' arguments incorporated by reference from another brief.

failing to effectuate their releases from prison. And, to find supervisory liability under these circumstances requires actual or constructive knowledge, which Plaintiffs have failed to allege, let alone demonstrate. *See* Sec. III, *infra*.

Furthermore, Plaintiffs fail to acknowledge that despite admitting their wrongdoings, they have already achieved their freedom, which is the appropriate remedy for any alleged violations. As the *Townes* court stated, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." 176 F.3d at 148. Plaintiffs have already received their remedies. This, in and of itself, is a tremendous benefit. *See Ware*, 652 F. Supp. 2d at 706 (stating that the freedom obtained due to an unreasonable search is an "enormous benefit"). Now, Plaintiffs want to be rewarded with millions of dollars from the Officers despite the fact that they have already received their respective resolutions. The Court should decline that invitation.

The Northern District of Oklahoma recently confronted a similar situation in *Williams v. City of Tulsa*, when a newly-freed criminal defendant brought suit against a police officer who falsified information supporting a search warrant. The court concluded that the fruit of the poisonous tree did not apply to save the plaintiff's claims.

> Here, a constitutional violation did occur – namely, an unreasonable search in violation of the Fourth Amendment. But without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine, which are not available in this Section 1983 action, no further constitutional violation occurred. Williams' seizure/imprisonment were not wrongful and his prosecution was not malicious due to the existence of probable cause. This is not an inequitable result because Williams already reaped the benefit of being released from prison. In short, this is not a case of actual innocence or wrongful imprisonment, and the Court finds no reason to compensate Williams for the six years he served.

2016 U.S. Dist. LEXIS 52066 at *23-24. Plaintiffs' argument is the same one made in *Williams* and rejected by that court in its well-reasoned decision. This Court should do the same and dismiss the claims against the Officers with prejudice.

    **B.**    **Plaintiffs Fail To Address the Officers' Argument that the Statute of Limitations Bars Their Claims, Instead Attempting to Incorporate by Reference Another Argument from Another Response Brief.**

Plaintiffs' Response fails to address the Officers' argument that the applicable statute of limitations bars their claims. Instead, they attempt to incorporate by reference an argument proffered in their Response to Defendant *Norton's* Motion to Dismiss. *See* Pls.' Resp. Brief at 16 (purportedly incorporating Pls.' Resp. Br. to Norton at 22-27 (ECF No. 51)). In the Norton brief, Plaintiffs assert that they could not pursue a Section 1983 action for malicious prosecution against Norton while in prison because of the bar imposed by *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). This approach of incorporating another brief by reference, rather than addressing the Officers' arguments directly, is improper and should be rejected. Plaintiffs effectively offer no rebuttal to the Officers' argument that the cause of action accrued when they filed their habeas petitions. By failing to offer any response to the Officers' statute of limitations argument, Plaintiffs have conceded this point. *See, e.g., Irani v. Palmetto Health*, C/A No. 3:14-cv-3577-CMC, 2016 U.S. Dist. LEXIS 71547, at *159 (D.S.C. June 1, 2016) (citing *Eady v. Viola Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("By failing to offer opposing arguments, [the plaintiff] has waived or abandoned this claim.").

The Officers' position on this issue is not only unrebutted, it is well-supported. Federal courts use the forum state's statute of limitations for Section 1983 claims. *Wallace v. Cato*, 549 U.S. 384 (2007). In Virginia, the limitations period is two years from the date of accrual. Va. Code § 8.01-243. Section 1983 claims accrue when the plaintiff either is aware of his or her

injury, or is put on notice that he or she should make a "reasonable inquiry as to whether a claim exists." *Keck v. Commonwealth*, Civil Action No. 3:13-cv-555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32 (E.D. Va. Sept. 9, 2011) (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Almond v. Sisk*, No. 3:08-cv- 138, 2009 U.S. Dist. LEXIS 686688, at *4 (E.D. Va. Aug. 6, 2009) (internal quotation marks omitted)). According to well-settled Fourth Circuit precedent, the accrual date for Plaintiffs' claims was the date of the search. *See* Defs.' Br. at 12-13 (ECF No. 39).

Instead of addressing their claims as search and seizure claims, Plaintiffs attempt to incorporate their statute of limitations argument in reference to a *separate* claim – one for *state law malicious prosecution* against Norton. Of course, a malicious prosecution claim has the additional element that a cause of action must be "terminated in a manner not unfavorable to [the plaintiff]." *Safar v. Tingle*, 178 F. Supp. 3d 338, 345 (E.D. Va. 2016) (quoting *O'Connor v. Tice*, 281 Va. 1, 7, 704 S.E.2d 572 (2011) (alteration by *Safar* court)). This explains why a cause of action for malicious prosecution does not accrue until the Plaintiff has been exonerated. A claim for an unreasonable search and seizure does not include this element. Instead, that claim arises when the search occurs. *See, e.g., Smith v. McCarthy*, 349 F. App'x 851, 857 (4th Cir. 2009); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981); *Irving v. Hall*, Civil Action No. 3:16CV308, 2016 U.S. Dist. LEXIS 158177, at *11 (E.D. Va. Nov. 15, 2016); *Craddock v. Fisher*, Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015); *Keck*, 2011 U.S. Dist. LEXIS 112695, at *32; *Horne v. Bailey*, Civil Action No. 1:10cv641 (CMH/IDD), 2010 U.S. Dist. LEXIS 145096, at *5 (E.D. Va. June 25, 2010); *Blackmon v. Perez*, 791 F. Supp. 1086, 1091 (E.D. Va. 1992). Plaintiffs provide no case law to refute these many cases, which the Officers cited in their initial brief. Thus, Plaintiffs' claims

are barred by the statute of limitations, as the searches occurred more than two years prior to filing suit.

In the alternative, the Officers argued that Ensley, Andrews and Archer's claims accrued at the *latest* when they filed their habeas petitions. *See* Defs.' Br. at 14 (ECF No. 39). Plaintiffs do nothing to rebut this argument, either. In fact, Plaintiffs do not address this argument at all. Nearly three years ago, in August and September 2014, Ensley, Andrews, and Archer filed habeas petitions seeking vacatur of their convictions based on Norton's allegedly falsified paperwork related to the search warrants that lead to their arrests. It is impossible to argue that at that time Ensley, Andrews, and Archer were not at the very least "on notice . . . to make a reasonable inquiry as to whether a [§ 1983] claim exist[ed]." *Keck*, 2011 U.S. Dist. LEXIS 115795, at *32. Since these Plaintiffs' claims accrued more than two years prior to the date they filed suit, their actions are barred by the statute of limitations, a conclusion Plaintiffs cannot and do not rebut.

III. **Plaintiffs Have Failed to Allege the Officers Had Any Knowledge, a Deficiency Which Is Fatal to Both Their Supervisory Claims and Their Individual Claims Against the Officers.**

Plaintiffs' allegations regarding the Officers' knowledge are entirely insufficient to support any of their claims. Indeed, so deficient are they that Plaintiffs have attempted to create a new knowledge standard for imposing liability: "likely knew." *See* Pls.' Resp. Br. at 13. This standard appears nowhere in any relevant law. Instead, the applicable standard requires Plaintiffs to plead that the Officers had actual or constructive knowledge. *See Patrick v. City of Petersburg, et al.,* Civil Action No. 3:15cv565-MHL, 2016 U.S. Dist. LEXIS 136380, at *17-18 n.19 (E.D. Va. Sept. 30, 2016) (noting the first element for supervisory liability is a showing that "the supervisor had actual or constructive knowledge that his or her subordinate was engaged in

conduct that posed 'a pervasive and unreasonable risk' of constitutional injuries . . .") (quoting *Shaw v. Stroud*, 13 F.3d 791,799 (4th Cir. 1994)); *Oliver v. Powell*, 250 F. Supp. 593, 598 (E.D. Va. 2002) (finding that a plaintiff alleging a Section 1983 violation must allege that a defendant "had personal knowledge of and involvement in the alleged violations of constitutional rights").

Plaintiffs cannot point to a single allegation in the Amended Complaint that suggests the Officers had *actual* knowledge of their arrests, convictions, or incarcerations. Plaintiffs thus are left to rely on constructive knowledge. But the facts alleged are insufficient as a matter of law to demonstrate that the Officers had constructive knowledge of their arrests, convictions or incarcerations. A plaintiff can allege constructive knowledge in a number of ways, from pointing to written reports of misconduct, to a "supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch." *Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 553 (E.D. Va. 2015) (quoting *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)).

In support of their claim that knowledge of Norton's misconduct was widespread, Plaintiffs offer an alleged interview with a confidential informant. (Am. Compl. ¶¶ 111-14.) Plaintiffs, however, provide no information about this interview – not even the date the interview took place or any information about its contents. Like the rest of their allegations, Plaintiffs' timeline of the interview is based on a guess. And, without evidence of its contents, there is no way to know whether any alleged wrongdoing by Norton was even discussed. Thus, there are no allegations to demonstrate the Officers knew or should have known that Norton allegedly was violating Plaintiffs' constitutional rights.

It also is important to note that the Amended Complaint alleges violations that occurred while the Officers were employed in other divisions of the Richmond Police Department. *See*

*also* Defs.'s Br. at 15-18 (ECF No. 39). According to the Plaintiffs' allegations, Lt. Alston and Lt. Corrigan had no supervisory responsibility for Norton at the time of the arrest of *any* of the Plaintiffs. Cpt. Harrison did not supervise Norton until 2012, and Cpt. Blackwell's supervision of Norton ended sometime in 2011.[9] Thus, Plaintiffs have not alleged any facts which could suggest constructive knowledge of the alleged violations.

Furthermore, Plaintiffs argued in their Response that the individual claims are not tethered to any allegations of supervisory responsibility and, "[t]hat is, Defendants' liability in this respect does not depend on their roles as supervisors, but simply on their failures to act given their knowledge that Norton's misconduct would likely have caused persons like Plaintiffs to be unlawfully jailed." Pls.' Resp. Brief at 16. But, this assertion ignores the facts pled in the Amended Complaint. The Amended Complaint is entirely devoid of any allegations of the Officers' personal involvement or knowledge of Plaintiffs' respective incarcerations. The *only* way that the Amended Complaint attempts to tie the Officers to Norton's alleged acts is through the Officers' roles as supervisors. The Amended Complaint offers no facts upon which the Court could find that Plaintiffs have stated a plausible claim for relief against the Officers in their individual capacities.

The failure to plead any facts demonstrating that the Officers had knowledge of Plaintiffs' arrests or incarcerations also means Plaintiffs are unable to state a claim for bystander liability. As noted in the Officers' Brief, "[t]o succeed on a theory of bystander liability, a

---

[9]  In their response, Plaintiffs claim the fact that the Officers were not Norton's supervisors at the time of any of the alleged violations is irrelevant, and that the Officers misrepresented and incorrectly cited *Brown v. Poplin*, No. 10-cv-565, 2011 U.S. Dist. LEXIS 124912, at *22 (W.D.N.C. Oct. 27, 2011). This is incorrect. The Officers cited the opinion of the district court while Plaintiffs have cited the report and recommendation issued by the magistrate judge, which could be the source of their confusion. The district court in *Brown* clearly held that acting in a supervisory role at the time of the alleged violation is, naturally, an essential element of any supervisory claim. *Id.*

plaintiff must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014) (internal quotation marks and modifications omitted). The first element of this claim plainly requires knowledge, something Plaintiffs have demonstrably failed to allege in their Amended Complaint (leading to Plaintiffs arguing the "likely knew" standard in their response).

In sum, Plaintiffs' novel "likely knew" standard does not apply. Plaintiffs have failed to plead actual or constructive knowledge on the part of the Officers of any alleged violations by Norton. Plaintiffs therefore may not maintain personal or supervisory claims against the Officers, and all the claims against them must be dismissed with prejudice.

## IV. The Officers Are Entitled to Qualified Immunity Because Their Conduct Was Reasonable Under Any Objective Standard.

Finally, Plaintiffs' response does not refute the Officers' assertion that they are entitled to qualified immunity. Plaintiffs have failed to (1) allege sufficient facts to make out a violation of constitutional right, that was (2) clearly established at the time of the alleged violation, and (3) that a reasonable person in the Officers' position would have known. *See Alfaro-Garcia v. Henrico Cnty.*, Civil Action No. 3:15-cv-349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38-39 (E.D. Va. Sept. 26, 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In analyzing Plaintiffs' claims, the Court must view the Officers' conduct objectively, taking into consideration the relevant facts and circumstances existing at the time of the alleged violation. *See Henry v. Prunell*, 652 F.3d 524, 535 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989) (finding that objective reasonableness has been the "touchstone" of qualified immunity). Plaintiffs' Amended Complaint and their response brief offer no tangible evidence that would indicate to the Officers that Norton was falsifying or altering paperwork

used to obtain search warrants. Instead, Plaintiffs' Response asks the Court to make incredible leaps in logic without laying any factual groundwork. For example, Plaintiffs allege that all of the Officers should have known Norton was lying to obtain search warrants because his partner called him a "sinking ship," or that another officer stated Norton's desk was messy and he was "flying too fast and too loose." Pls.' Resp. Br. (ECF No. 55) at 4. Furthermore, Plaintiffs fail to allege facts showing how *any* reasonable police officer in the Officers' position would have any indication Plaintiffs' rights were being violated.[10] Plaintiffs do not allege the Officers were present for their arrests or even signed off on the arrest paperwork. The best Plaintiffs can allege is that the Officers "likely knew" there was some violation. They cite no case law for this standard. *See* Sec. III, *supra*.

Most importantly, there were two occasions alleged where Norton's missteps came to light. On these occasions, Norton's supervisors issued a reprimand, a reasonable action by any standard. Indeed, the law is clear that even if an action proved to be ineffective, it does not render that action unreasonable. *See Mikkelsen v. DeWitt*, 141 F. App'x 88, 92 (stating that ineffective actions can still be reasonable because they are judged at the time they are made, not in hindsight) (citing *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001)). As a result, all of the Officers are entitled to qualified immunity, and Plaintiffs' Amended Complaint should be dismissed with prejudice.

CONCLUSION

For the reasons stated above, Defendants Lieutenant Michael Alston, Lieutenant Brian Corrigan, Captain Martin Harrison, and Captain William Blackwell, by counsel, respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice,

---

[10] It is particularly difficult to understand how the Officers would have known that Norton had violated the rights of five individuals who pled guilty.

enter judgment in favor of these Defendants, award costs and attorneys' fees expended herein, and grant such other and further relief as the Court deems just and appropriate.

Dated:  May 25, 2017

**MICHAEL ALSTON,**
**BRIAN CORRIGAN,**
**MARTIN HARRISON, and**
**WILLIAM BLACKWELL**

By: /s/ Stephen C. Piepgrass
Ashley L. Taylor, Jr. (Va. Bar No. 36521)
Stephen C. Piepgrass (Va. Bar No. 71361)
Brooke K. Conkle (Va. Bar No. 87413)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: ashley.taylor@troutmansanders.com
E-mail: stephen.piepgrass@troutmansanders.com
E-mail: brooke.conkle@troutmansanders.com

*Counsel for Michael Alston, Brian Corrigan,*
*Martin Harrison, and William Blackwell*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 25th day of May, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

<u>**Counsel for Plaintiffs Wilbur Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam**</u>
Mark J. Krudys
The Krudys Law Firm, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: <u>mkrudys@krudys.com</u>

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: <u>jpreis@richmond.edu</u>

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Fax: (804) 343-1901
Email: <u>amyaustinlawyer@gmail.com</u>

<u>**Counsel for Defendant City of Richmond**</u>
Stephen Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad St.
Richmond, VA 23219
Phone: (804) 646-7946
Email: <u>Stephen.Hall@richmondgov.com</u>
Email: <u>Richard.HillJr@richmondgov.com</u>

**Counsel for Defendant Jason Norton**
David P. Corrigan
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
Phone: (804) 762-8017
Email:  dcorrigan@hccw.com
Email: sfisher@hccwcom

**Counsel for Defendant Bryan T. Norwood**
Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods
Gateway Plaza
800 E. Canal St.
Richmond, VA 23219-3916
Phone:  (804) 775-4712
Email: jharmon@mcguirewoods.com
Email: bschmalzbach@mcguirewoods.com

**Counsel for Defendants Christopher Gleason, Charles Sipple, and Roger Russell**
D. Cameron Beck, Jr.
C. Walker Terry
McCandlish Holton Morris
1111 E. Main Street, Suite 2100
P.O. Box 796
Richmond, VA 23218-0796
Phone: (804) 344-6322
Email: cbeck@lawmh.com
Email:  wterry@lawmh.com

/s/ Stephen C. Piepgrass
Stephen C. Piepgrass (Va. Bar No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: stephen.piepgrass@troutmansanders.com

31413810