UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILBER ENSLEY, *et al.*,

    Plaintiffs,

v.                                                                                          Civil Action No. 3:17CV024

CITY OF RICHMOND, VIRGINIA, *et al.*,

    Defendants.

**DEFENDANTS GLEASON, SIPPLE, AND RUSSELL'S REBUTTAL BRIEF**

Defendants Christopher Gleason ("Gleason"), Charles Sipple ("Sipple"), and Roger Russell ("Russell") (collectively "Defendants"), by counsel, submit this Rebuttal Brief in support of their Rule 12(b)(6) Motion to Dismiss.

## I. INTRODUCTION

Plaintiffs' Opposition to Defendants Gleason, Sipple, and Russell's Rule 12(b)(6) Motion to Dismiss ("Plaintiffs' Brief") is merely a recitation of the allegations stated in the Amended Complaint. Plaintiffs gloss over the points raised in Defendants' Memorandum in Support and fail to address most of the authorities cited. Plaintiffs' Brief fails to rebut the arguments advanced by Defendants, and, in fact, it highlights several critical problems with the Plaintiffs' case.

First, all of Plaintiffs' claims hinge on the allegation that Jason Norton ("Norton") provided false information about the identities and credentials of confidential informants to obtain the search warrants that lead to the Plaintiffs' arrests. Plaintiffs do not contest the searches conducted pursuant to the warrants, but claim, instead, that Norton's misconduct started a chain reaction, culminating in their unlawful arrests and imprisonment. This theory of liability

1

is fundamentally flawed, as it is firmly established that the fruit of the poisonous tree doctrine does not apply in civil cases. Plaintiffs argue that their case is unique, that Norton's conduct was especially egregious, and that prior case law prohibiting the fruit of the poisonous tree doctrine should be disregarded. However, they provide no authority from any jurisdiction to support this position, and they ignore the public policy concerns raised by Defendants, which highlight the fundamental difference between criminal prosecutions and civil claims. Because they are all based on the same erroneous theory of liability, Plaintiffs' underlying claims against Norton and their supervisory claims against the Defendants fail as a matter of law.

Plaintiffs' second problem is that their supervisory claims depend on the Defendants' knowledge that Norton falsified the warrant affidavits in question or posed a risk of constitutional harm. Plaintiffs cannot prove such knowledge under the facts alleged. They cite "six major circumstances or events that establish knowledge. . ." Pls.' Br. 17. However, these circumstances/events are merely vague allegations of inter-department gossip and isolated incidents of misconduct, entirely unrelated to Norton's procurement of search warrants.

Plaintiffs' non-supervisory claims require not only that the Defendants knew of Norton's misconduct, but also that they knew the Plaintiffs were wrongfully convicted, despite their guilty pleas. This claim is wholly speculative and unsupported, as there is no indication that Gleason, Sipple, or Russell had any involvement in or knowledge of the Plaintiffs' criminal prosecutions. Further, the non-supervisory claims fail on additional grounds because Plaintiffs do not allege a plausible Eighth or Fourteenth Amendment violation.

Finally, although Plaintiffs do not allege that the Defendants had any involvement in Norton's misconduct, the Defendants are entitled to qualified immunity for any perceived action or inaction taken.

Plaintiffs do not provide a valid argument for why their case should survive Defendants' motion. Thus, this Court should dismiss Gleason, Sipple, and Russell with prejudice.

## II. PLAINTIFFS' BRIEF IN OPPOSITION

Plaintiffs do not provide substantive responses to most of the Defendants' arguments. Instead, they reference portions of their other opposition briefs and simply insist that they have alleged sufficient facts to support their claims. A summary of Plaintiffs' brief illustrates that their claims rely on overturning established precedent, focusing on conclusory allegations that rest on irrelevant facts, and creating claims that do not exist under the Eight or Fourteenth Amendment.

Plaintiffs begin their Argument section by summarizing their claims against the Defendants. Their overarching allegation is that the "<u>Defendants likely knew that Norton lied about informants</u>, but did nothing, despite the fact that persons in the Plaintiffs' position would be unlawfully detained." *Id.* at 12 (emphasis added).

In support of their supervisory claims, Plaintiffs allege that Defendants failed to take reasonable steps to prevent Norton from violating their rights to be free from malicious prosecution, make knowing and intelligent pleas, and enjoy liberty under the Eighth and Fourteenth Amendments. *Id.* at 13. Plaintiffs argue that supervisory liability attaches not only to prospective constitutional violations by a subordinate, but to past and ongoing violations as well, though they do not cite any authority in support of this claim. *Id.* at 13-14, n.1. However, Plaintiffs acknowledge that to prevail on a theory of supervisory liability, they must establish an underlying claim against Norton and show that the Defendants had knowledge of Norton's misconduct. *Id.* at 14.

Plaintiffs allege non-supervisory claims against the Defendants as well. They claim that the Defendants violated their Eighth and Fourteenth Amendment rights by failing to expedite their release from prison. Am. Compl. 56-57. Plaintiffs concede that like their supervisory claims, their non-supervisory claims also depend on the Defendants' knowledge of Norton's misconduct. Pls.' Br. 14. However, they argue that the non-supervisory claims are distinct because liability is not based on the Defendants' "role as supervisors." *Id.*

Plaintiffs defend each of their underlying claims against Norton, beginning with their Fourth Amendment (federal malicious prosecution) claim. Plaintiffs conflate Defendants' arguments regarding the existence of probable cause and the lack of proximate cause and argue that both issues depend on whether the fruit of the poisonous tree doctrine applies to the case at hand. *Id*. at 15. Plaintiffs admit that this doctrine is normally inapplicable in Section 1983 cases. *Id.* To overcome this established precedent, the Plaintiffs urge the Court to apply an exception because Norton intentionally lied to a magistrate. *Id.*

In their Brief in Opposition to Norton's Motion to Dismiss, Plaintiffs cite a number of cases that confirm that the fruit of the poisonous tree doctrine is not available to Section 1983 plaintiffs. *See* Pls.' Opp'n to Def. Jason Norton's Mot. to Dismiss 4-5. Plaintiffs admit that they cannot provide any prior cases, in which a court has applied the doctrine in a civil context, but insist that their case is unique. *Id.* at 5. Relying on *Lingo v. City of Salem*, 832 F.3d 953 (9th Cir. 2016), Plaintiffs argue that the doctrine should apply because its deterrence benefits outweigh the resulting social costs. *Id.* Notably, Plaintiffs insist that the costs of applying the doctrine in this and similar cases "would be extraordinarily limited because they would be borne *only* by officers who insisted on willfully deceiving a magistrate." *Id.* at 7 (emphasis in original).

4

In support of their supervisory claims, Plaintiffs argue that they have alleged sufficient facts to show that Defendants "had knowledge that Norton engaged in practices would created [sic] a significant risk that persons in the Plaintiffs' position would be unlawfully detained." Pls.' Br. 17. They claim that the following "major circumstances or events" establish knowledge –

> 1) Norton engaged in highly suspicious activity with a confidential informant – including tipping the informant off to a likely arrest – in April 2010,
>
> 2) Norton was reprimanded in March 2011 for deceit with regard to a confidential informant,
>
> 3) A confidential informant was interviewed about his relationship with Norton in late 2011 as part of an IAD investigation,
>
> 4) The RPD's confidential informant program in mid-2012 lacked basic checks on integrity that would keep an officer from lying about the identity of an informant,
>
> 5) The FBI was investigating Norton for lying about the identity of his informants on warrant applications filed as early as 2009, and
>
> 6) Norton's colleagues and other supervisors thought he played "too fast and too loose," had encountered him lying on numerous occasions, and believed that "management" was letting Norton "hang himself" because he was "producing."

*Id.* at 17-18.

Plaintiffs argue that a reasonable jury could conclude that the Defendants "possessed the requisite knowledge" because the first three events occurred while Gleason, Sipple, and Russell were acting as Norton's supervisors, and such instances of misconduct would have been brought to a supervisor's attention. *Id.* at 18-19. Due to the nature of their positions as supervisors, the jury could also conclude that the Defendants had knowledge of widespread problems in the department's confidential informant program, the FBI's investigation of Norton, and the rumors about Norton circulating within the department (circumstances/events 4-6). *Id.* at 19-21.

5

However, none of these alleged events/circumstances is evidence that that the Defendants knew of any prior constitutional violations by Norton.

Finally, Plaintiffs argue that their non-supervisory claims under the Eighth and Fourteenth Amendments are valid. Citing *Golson v. Department of Corrections*, 914 F.2d 1490 (4th Cir. 1990), Plaintiffs claim that a state actor violates a prisoner's Eighth and/or Fourteenth Amendment rights when he is "deliberately indifferent to the significant risk that a person is entitled to be released from jail." *Id.* at 25. However, *Golson* is clearly distinguishable and inapplicable here. Plaintiffs provide no authority to support that the Defendants violated their rights under the Eighth or Fourteenth Amendments.

Despite the Plaintiffs' extensive revisions, the Amended Complaint does not repair the fatal flaws found in the initial Complaint.

### III. REBUTTAL

**a.  Plaintiffs' argument for applying the fruit of the poisonous tree doctrine in this case is without merit.**

Plaintiffs acknowledge the large volume of case law holding that the fruit of the poisonous tree doctrine is inapplicable, but they insist that the present case presents an issue of first impression. Plaintiffs argue that, "although it is fair to say that the doctrine does not apply in cases of unintentional constitutional violations, there is no law on whether it applies to cases involving intentional acts of deceit like that presented here." Pls.' Opp'n to Def. Jason Norton's Mot. to Dismiss 5. This argument is flawed for several reasons.

First, the officer's intent is irrelevant. In *Ware v. James City County* the United States District Court for the Eastern District of Virginia explicitly held that "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." 652 F. Supp. 2d 693, 705 (quoting *Townes v. City of New York*, 176 F.3d 138, 148-49 (2nd Cir. 1999). This rule is simple and

straightforward, not fact specific or dependent on the particular conduct at issue. The *Ware* Court did not find it necessary to analyze the defendant's intent in holding that the fruit of the poisonous tree doctrine does not apply, and this Court should not do so either.

Second, Plaintiffs ignore recent cases following *Townes*, in which the investigating officers either intentionally violated or, at least, deliberately ignored Fourth Amendment protections. In *Hayes v. Perotta*, a 2010 decision from the Southern District of New York, the plaintiff alleged that the defendant officers searched his home without a warrant and that he was wrongfully convicted of multiple charges as a result. 751 F. Supp. 2d 597, 598-99 (S.D.N.Y. 2010). Citing *Townes*, the Court held that the plaintiff could not recover for his conviction or incarceration because the search was not the proximate cause of either event. *Id.* at 603-04.

Warrantless searches are *per se* unreasonable unless they fall under a recognized exception to the warrant requirement. *United States v. Johnson*, 107 Fed. App'x 322, 327 (2004) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). By conducting a search without a warrant, the investigating officers in *Hayes* should have known that their conduct likely violated the plaintiff's Fourth Amendment protections. However, the Court did not consider the officers' state of mind before dismissing the plaintiff's claim.

In *Cabral v. City of New York*, a 2014 decision also from the Southern District of New York, the investigating officer approached a parked car, in which the plaintiff was a passenger, based on a confidential informant's tip that a suspect had fled a nearby residence and entered the vehicle. 12 Civ. 4659 (LGS), 2014 U.S. Dist. LEXIS 131342, *2-3 (S.D.N.Y. Sep. 17, 2014). The officer admitted that the plaintiff was not the person described by the informant and admitted that he did not believe that the occupants of the car were engaged in illegal activity at the time. *Id.* at *3.

7

The investigating officer detained the plaintiff, searched the car, discovered contraband, and arrested the plaintiff for possession. *Id.* The Court held that although the plaintiff was unlawfully detained before the contraband was discovered, he could not recover for false arrest or unlawful detention following his arrest because the presence of contraband established probable cause. *Id.* at 8-11, 17.

Notably, the plaintiff in *Cabral* urged the Court to disregard the *Townes* decision, but the Court recognized *Townes* as binding precedent in the Second Circuit. *Id.* at 21. Although *Townes* is not binding authority here, its holding has been expressly adopted in the Eastern District of Virginia. *See Sommerville v. Dobson*, Civil Action No. 4:10cv67, 2011 U.S. Dist. LEXIS 156380, *36 (E.D. Va. Mar. 8, 2011); *Ware*, 652 F. Supp. 2d at 705-06.

The facts in *Cabral* are analogous to those in the case at bar. The investigating officer in *Cabral* admitted that he had no valid basis to initially detain the plaintiff. Arguably, the officer knowingly violated the plaintiff's Fourth Amendment protections, but the Court did not consider the nature of his conduct in assessing the plaintiff's claim. Plaintiffs' contention that the present case is an outlier, to which the fruit of the poisonous tree doctrine should apply, garners no support from the available precedent. *See also Williams v. City of Tulsa*, Case No. 11-CV-469-TCK-FHM, 2016 U.S. Dist. LEXIS 52066, *7, 23-25 (N.D. Okla. Apr. 19, 2016) (finding that although the investigating officer fabricated information contained a search warrant affidavit, the plaintiff could not rely on the fruit of the poisonous tree doctrine to support his Section 1983 claim for unlawful imprisonment).

Finally, Plaintiffs' contention that the deterrence benefits of the doctrine outweigh the resulting social costs is misguided. Plaintiffs claim that imposing civil liability is necessary here because "the exclusionary rule has little deterrent effect on officers who are willing to lie to

obtain or preserve an arrest." Pls.' Opp'n to Def. Jason Norton's Mot. to Dismiss 5-6. While Plaintiffs are entitled to their opinion on the issue, several courts have disagreed. *See Black v. Wigington*, 811 F.3d 1259, 1268 ("Police officers are already deterred from violating the *Fourth Amendment* because the evidence they find . . . cannot be used in a criminal prosecution – the primary concern and duty of the police.") (internal quotation marks and citations omitted) (emphasis in original); *see also Ware*, 652 F. Supp. 2d at 705-06; *Townes*, 176 F.3d at 146-48.

Plaintiffs' next argument that the social costs are minimal because they would only be imposed on officers who willfully deceive a magistrate is ironic considering that Plaintiffs filed suit against seven of Norton's supervisors, Chief Norwood, and the City of Richmond in addition to Norton himself. There is no allegation that any of these parties engaged in willful deceit of any kind.

It is the Defendants' position that the holding in *Townes* best articulates why the fruit of the poisonous tree doctrine should not and does not apply in Section 1983 cases – imposing civil liability on an officer for an arrest supported by probable cause, but following a tainted search, would overdeter police conduct and create a windfall for plaintiffs who are plainly guilty of criminal offenses. 176 F.3d at 148. The doctrine is appropriate in the criminal context where the state holds the burden of proving a defendant's guilt. But, a plaintiff can only recover damages directly attributable to the defendant's misconduct. In this case, the Plaintiffs were incarcerated because investigating officers found contraband in their possession and the Plaintiffs themselves pled guilty, not because Norton's search warrant affidavits may have contained incorrect information about confidential informants.

Without the fruit of the poisonous tree doctrine to rely on, Plaintiffs cannot contest the validity of their arrests. As discussed at length in Defendants' Memorandum in Support,

9

probable cause clearly existed at the time. *See* Defs.' Mem. in Supp. 8-10. All of Plaintiffs' claims are predicated on the flawed theory that their arrests were invalid by virtue of the tainted search warrants and are, therefore, without merit.

**b.      Under the facts alleged, a reasonable jury could not conclude that the Defendants had knowledge of Norton's misconduct.**

Plaintiffs recognize the importance of establishing that the Defendants' had knowledge of Norton's misconduct, and they insist throughout their brief that Gleason, Sipple, and Russell likely knew that Norton lied "about informants" in the past. Pl's Br. 12. Even if the Defendants knew that Norton misrepresented something about an informant in the past, and there is no indication that they did, this is insufficient to establish supervisory or non-supervisory liability. Plaintiffs must show that the Defendants knew that Norton had or was likely to violate a suspect's constitutional rights. Plaintiffs point to six specific instances that they believe establish that the Defendants had such knowledge. However, instead of strengthening Plaintiffs' case, this argument highlights its fatal weaknesses.

Plaintiffs cite *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994) in discussing the knowledge requirement for supervisory liability. Pls.' Br. 3. However, they fail to address the facts of *Shaw* or the other cases cited in Defendants Memorandum in Support that demonstrate what is required to establish knowledge. A common finding in these cases is that the supervisor must be aware of prior similar constitutional violations committed by a subordinate. *See Shaw*, 13 F.3d at 795-800 (4th Cir. 1994); *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011).

In another similar case, *Wilkins v. Upton*, a former prison inmate filed suit against the prison warden and a lieutenant, claiming that both parties violated his Fourth and Eighth Amendment rights by deliberately ignoring a subordinate officer's sexual misconduct. 639 Fed.

10

App'x 941, 942-43 (4th Cir. 2016). Although the issue before the Fourth Circuit was whether the defendants were entitled to qualified immunity, the Court found that the plaintiff's Eighth Amendment claim was unsubstantiated because the record did not reflect that either defendant knew of the subordinate officer's misconduct or of any risk he posed to the plaintiff. *Id.* at 946. The Court based its conclusion on the fact that the officer's misconduct was not reported to either defendant and on the lack prior sexual misconduct in the prison. *Id.* at 945.

None of the six events/circumstances cited in Plaintiffs' Brief involve prior instances in which Norton falsified a search warrant affidavit or executed an unlawful search. Further, Plaintiffs do not allege that any instance of misconduct was reported to Gleason, Sipple, or Russell. Plaintiffs argue that the Defendants likely knew about the six events because they supervised Norton. This argument is simply the Plaintiffs' own conjecture and is insufficient to establish knowledge. And even if the Defendants knew of Norton's bad reputation, his prior reprimands, and broader problems in the confidential informant program, these instances do not involve constitutional misconduct. Plaintiffs have failed to allege sufficient facts to meet the basic elements of a supervisory liability claim, and their opposition briefs provide no basis for the Court to find otherwise[1].

c. **Plaintiffs' non-supervisory claims fail because there is no basis to conclude that the Defendants knew that the Plaintiffs were wrongfully convicted.**

Plaintiffs agree that their non-supervisory claims also depend on the Defendants' knowledge of Norton's misconduct. But, these claims also depend on the Defendants'

---

[1] Plaintiffs argue that they have adequately alleged a claim for bystander liability. Pls.' Br. 24. This argument is improper as Plaintiffs did not plead bystander liability in their Amended Complaint. The Defendants addressed this theory of liability in their Memorandum in Support out of an abundance of caution. As discussed, this claim requires <u>actual knowledge</u>, and Plaintiffs do not allege that the Defendants had actual knowledge of any misconduct by Norton.

11

knowledge that the Plaintiffs were unlawfully imprisoned. *See* Am. Compl. ¶¶ 180, 186. No reasonable jury could conclude that the Defendants had such knowledge.

Plaintiffs do not allege that Gleason, Sipple, or Russell was involved in their criminal proceedings in any way. Nor do Plaintiffs allege that the Defendants had any knowledge of the prosecution's cases against them. It is common knowledge that a criminal defendant may plead guilty for any number of reasons; and, further, physical evidence obtained during a search may comprise only one portion of the prosecution's case. Under the facts alleged, there is no basis to conclude that the Defendants knew that Plaintiffs were incarcerated solely because of Norton's misconduct.

**d.     Plaintiffs' Eighth and Fourteenth Amendment rights are not implicated in this case.**

Plaintiffs rely on the case of *Golson v. Department of Corrections* for the proposition that, "when a state actor is deliberately indifferent to the significant risk that a person is entitled to be released from jail, the state actor violations [sic] the Fourteenth and/or Eighth Amendments." Pls.' Br. 25. This argument misconstrues the holding in *Golson*. The plaintiff in that case claimed that he was incarcerated past the termination of his sentence because he did not receive credit for prior time served. Nos. 90-7344, 90-7345, 1990 U.S. App. LEXIS 17452, *1 (4th Cir. Oct. 2, 1990). The Court held that, "[i]ncarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment." *Id.* at *2-3. However, nothing in the Court's opinion suggests that its holding should extend beyond cases in which a prisoner is detained after his sentence terminates.

In the tenth footnote of their brief in opposition to Norton's motion, Plaintiffs cite a number of decisions from other circuits to show that a Fourteenth Amendment claim is appropriate in this context. But, Plaintiffs do not provide any authority from the Fourth Circuit

holding that a plaintiff may pursue a Fourteenth Amendment claim to recover for procedural violations in a criminal case. *Brooks*, in fact, prohibits this theory of recovery. 85 F.3d at 184.

Plaintiffs argue that the holding in *Brooks* applies only to constitutional violations committed prior to trial. But, they do not cite any authority for this proposition, and nothing in the *Brooks* opinion suggests that its holding should be limited in this manner.

Indeed, the decision in *Brooks* follows the United States Supreme Court's reasoning in *Baker v. McCollan* – that the probable cause requirement imposed by the Fourth Amendment satisfies due process requirements as well. 443 U.S. 137, 142-46 (1979). As the *Baker* Court noted, the Fourteenth Amendment does not protect against all deprivations of liberty, but only those committed without due process of law. *Id.* at 145. And "[d]ue process does not require that every conceivable step be taken . . . to eliminate the possibility of convicting an innocent person." *Id.* (internal quotation marks and citation omitted).

Notwithstanding Norton's alleged misconduct, probable cause existed at the time of the Plaintiffs' arrests. State and federal prosecutors chose to pursue charges and grand juries chose to indict. The Plaintiffs were afforded every procedural guarantee, and their contention that they were denied due process is without merit. Plaintiffs' allegation that their arrests were predicated on invalid warrants is strictly a Fourth Amendment claim, which fails for the reasons previously discussed.

e.      **The Defendants are entitled to qualified immunity.**

Plaintiffs claim that the Defendants are not entitled to qualified immunity because they made "the wrong call in a black and white circumstance." However, Plaintiffs do not allege that the Defendants were involved in preparing the search warrant affidavits, executing the searches, or prosecuting the Defendants. Instead they argue that the Defendants' inaction defeats their

13

claim for qualified immunity. As discussed in Defendants' Memorandum in Support, inaction alone does not support a Section 1983 claim. *See* Mem. in Supp. 23. Moreover, the Defendants did not have knowledge of any wrongdoing, on which to act.

The facts alleged do not establish that the Defendants had any reason to believe that the search warrants were tainted. And it is well established that the issuance of a warrant by a neutral magistrate indicates that an officer's actions taken pursuant to the warrant are reasonable. *Smith v. Munday*, 848 F.3d 248, 255-56 (4th Cir. 2017). There is no question that probable cause existed at the time of the Plaintiffs' arrests, the Plaintiffs pled guilty to their charges, and they do not contest their guilt now. Under the facts pled, there is no basis for a jury to conclude that the Defendants violated a clearly established constitutional right of the Plaintiffs. Defendants are entitled to qualified immunity as a matter of law.

## V. CONCLUSION

For the foregoing reasons and those stated in Defendants' Memorandum in Support, Defendants' motion should be granted, and Plaintiffs' claims against Gleason, Sipple, and Russell should be dismissed with prejudice.

CHRISTOPHER GLEASON, CHARLES SIPPLE, and ROGER RUSSELL

    */s/  D. Cameron Beck, Jr.*
D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason, Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile

cbeck@lawmh.com
wterry@lawmh.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of May, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing (NEF) to the following counsel of record:

Mark J. Krudys
The Krudys Law Firm, PLC
Suntrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950 Telephone
(804) 381-4458 Facsimile
mkrudys@krudys.com
*Counsel for Plaintiffs*

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
(804) 289-8682 Telephone
jpreis@richmond.edu
*Counsel for Plaintiffs*

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
(804) 343-1900 Telephone
(804) 343-1901 Facsimile
amyaustinlawyer@gmail.com
*Counsel for Plaintiffs*

Stephen M. Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad Street
Richmond, VA 23219
(804) 646-7953 Telephone
(804) 646-7939 Facsimile
Stephen.Hall@richmondgov.com
Richard.HillJr@richmondgov.com
*Counsel for Defendant City of Richmond*

David P. Corrigan
Jeremy D. Capps
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
(804) 747-5200 Telephone
(804) 747-6085 Facsimile
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com
*Counsel for Defendant Norton*

Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods LLP
Gateway Plaza
800 E. Canal Street
(804) 775-1000 Telephone
(804) 698-2304 Facsimile
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
*Counsel for Defendant Norwood*

Ashley L. Taylor, Jr.
Stephen C. Piepgrass
Brooke K. Conkle
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1286 Telephone
(804) 697-1339 Facsimile
ashley.taylor@troutmansanders.com
stephen.piepgrass@troutmansanders.com
brooke.conkle@troutmansanders.com
*Counsel for Defendants Alston, Corrigan, Harrison, and Blackwell*

And I hereby certify that I will mail a copy of the foregoing by U.S. mail, postage prepaid, to the following non-filing user(s): none.

      */s/*    *D. Cameron Beck, Jr.*
D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason, Sipple, and Russell*
McCandlish Holton Morris
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com