# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**WILBUR ENSLEY,** *et al.***,**

    **Plaintiffs,**

                                              Civil Action No. 3:17-CV-024-MHL

**v.**

**CITY OF RICHMOND, VIRGINIA,** *et al.***,**

    **Defendants.**

## PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

COME NOW Plaintiffs Wilbur Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam, by counsel, and, for their Response to Defendants' Notice of Supplemental Authority, state as follows:

The Defendants contend that *Safar v. Tingle*, No. 16-1420 (June 7, 2017) "reinforces" their defense of qualified immunity because the Fourth Circuit held in that case that there is "no clearly established 'duty requiring police officers to follow some undefined procedure whenever they come across further information that casts doubt on an active arrest warrant.'" Notice, ECF Dkt. No. 67, at 1-2 (quoting *Safar* at 9). *Safar* adds nothing to the Defendants' arguments for two reasons: (1) it does not address any of the constitutional rights implicated in this case and (2) it involves facts materially distinct from those presented in this case.

**A.** ***Safar*** **Does Not Address the Constitutional Rights Implicated Here.**

The Defendants contend that *Safar* "reinforces" their qualified immunity defenses, but a plain reading of the case shows why it *undercuts* their defenses. The first step in a qualified immunity analysis, *Safar* explains, is "identify[ing] the constitutional right at issue." *Safar* at 6. In *Safar*, the court decided that the allegations in that case fell within the Fourth Amendment. As a

result, the defendant's qualified immunity defense depended on whether there existed a "'settled Fourth Amendment principle' that would have put [her] on notice that she was violating the Constitution." *Safar* at 12 (quoting *White*, 137 S. Ct. at 552). Thus, *Safar*—by its *own* explanation of qualified immunity—demonstrates that the case is irrelevant to claims where the "constitutional right at issue" is not the Fourth Amendment. In the instant case, two of the Plaintiffs' three claims are non-Fourth Amendment claims. Those claims include their knowing-and-intelligent-plea claims under the Fourteenth Amendment and their deprivation-of-liberty claims under the Fourteenth and/or Eighth Amendment. *Safar* does nothing to "reinforce" any of the Defendants' qualified immunity defenses on those claims. Respectfully, this Court could hardly declare the non-existence of clearly established law on these claims by citing an illegal seizure case under the Fourth Amendment.

The Plaintiffs' third claim—their malicious prosecution claim—is also unaffected by *Safar*. Although that claim does arise under the Fourth Amendment, malicious prosecution claims are controlled by their own distinct body of law. To state a malicious prosecution claim, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers,* 703 F.3d 636, 647 (4th Cir. 2012). Unlike here, the plaintiffs in *Safar* were not making a malicious prosecution claim and the court there thus had no occasion to declare that such a claim did not lie. Thus, just as with the Plaintiffs' non-Fourth Amendment claims, respectfully, this Court could hardly rely on *Safar*—a case that says nothing about malicious prosecution—to discern whether the Plaintiffs' malicious prosecution claims are based on clearly established law.

In sum, *Safar* is unhelpful to the Court here because it does not address any of the constitutional violations alleged by the Plaintiffs.

**B. *Safar* Involves Facts and Reasoning Inapplicable to Those Presented In This Case.**

Beyond the fact that *Safar* involves rights not implicated here, the case also involves facts and reasoning inapplicable to those presented in this case. The plaintiffs in *Safar* argued that, where a witness's statement leads to the issuance of a warrant, and the witness later recants, an officer has a duty to alert others that the warrant is no longer valid. The problem with this argument, in the mind of the *Safar* Court, was that it would require officers to make difficult evidentiary judgments about whether they believe the recanting witness and whether the witness's new testimony is material to the case. *Safar* at 10. As the Court explained it,

> Given the vagaries of these evidentiary judgments, courts should not lightly enter the business of micromanaging police investigations and impose a categorical duty on officers governing the termination of allegedly stale arrest warrants. Indeed, if every failure of a police officer to act in some unspecified way on the basis of new information gave rise to liability, we would invite a legion of cases urging us to second-guess an officer's decision about whether to second-guess a magistrate's finding of probable cause.
> *Id.*

Thus, the *Safar* court held that, where a witness recants, leading to difficult "evidentiary judgments," courts should hesitate to "micromanage" police investigation. None of the foregoing logic applies to the instant case because the Plaintiffs' claims do not rest on a complicated evidentiary judgment. Indeed, once Norton's frauds were discovered, the Plaintiffs' rights to the vacations of their convictions were plain—so plain, in fact, that federal and state attorneys *agreed* that the Plaintiffs' convictions should be vacated. When a state actor discovers that a police officer has defrauded a magistrate to obtain a warrant, the state actor *at that point* is in possession of information that conclusively demonstrates that any person detained pursuant to the warrant is entitled to release from jail. A court could hardly be blamed for "micromanaging" police

3

investigations by declaring that, when an officer knows that someone is wrongfully in jail, the officer ought to do something about it.

Additionally, the Plaintiffs do not ask this Court to hold that "*every* failure of a police officer to act in some unspecified way on the basis of new information [should] give rise to liability." *Safar* at 10. (Emphasis added). The Plaintiffs assert only that *some* failures of police officers – i.e., failures to act upon information establishing that a person is unlawfully in jail *due to another officer's intentional lies to a magistrate*– are actionable. Thus, there is no concern here that the Plaintiffs' position "would invite a legion of cases urging [courts] to second-guess an officer's decision" about whether a person is unlawfully in jail. *Id.* The instant case is, by all accounts, a case of uncommon facts and circumstances. Moreover, the *Safar* court could not have meant that it would *never* evaluate an officer's failure to speak up when an unlawful detention is occurring. Were that the case (as the Defendants seem to suggest), state actors would escape liability where an inmate's entitlement to release is common knowledge within a Department. When it is common knowledge among a group of state actors that persons are unlawfully in jail, and the state actors with such knowledge do nothing, a court hardly "micromanages" departmental affairs by declaring that the state actors were constitutionally obliged to blow the whistle on the unlawful detention—whether by informing others with the power to initiate proceedings leading to a release, or by personally initiating proceedings.

Finally, although *Safar* is unhelpful to all the Defendants, it is particularly irrelevant to Norton's claims of qualified immunity. Norton signed on to the Notice of Supplementary Authority and thus appears to be boldly arguing to this Court that it ought not to "micromanage" his police work. If Norton truly contends that judicial review of his intentional frauds leading to the unlawful detention of five persons for 6,220 days is "micromanagement," then he is apparently

4

also proposing a new—and radically limited—role for the federal courts in the field of constitutional enforcement. Such role is without precedent and ought to be squarely rejected.

## CONCLUSION

For the reasons stated above, the Plaintiffs, by counsel, respectfully submit to the Court that the case cited in Defendants' Notice of Supplemental Authority adds nothing to the Defendants' arguments, and, in fact, *undercuts* their defenses.

> Respectfully submitted,
>
> WILBUR ENSLEY, COVEY ANDREWS,
> SHAMAR ARCHER, DEUNTE
> HUMPHRIES and JAMAR GILLIAM
>
> By: \_\_\_\_\_/s/ Mark J. Krudys_____
>    Counsel

Mark J. Krudys (VSB# 30718)
The Krudys Law Firm, PLC
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Email: mkrudys@krudys.com

John Frederick Preis (VSB# 45764)
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: jpreis@richmond.edu

Amy L. Austin (VSB# 46579)
The Law Office of Amy L. Austin, P.L.L.C.
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Email: amyaustinlawyer@gmail.com

*Counsel for Plaintiffs Wilbur Ensley, Covey Andrews, Shamar Archer, Deunte Humphries, and Jamar Gilliam*

## CERTIFICATE OF SERVICE

I certify that on June 22, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

By: /s/ Mark J. Krudys

Mark J. Krudys (VSB# 30718)
The Krudys Law Firm, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com
Web: www.krudys.com